IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF FLORIDA

PENSACOLA DIVISION

WARD DEAN,                    )
                             )
        Plaintiff,           )
                             )
v.                           )   No. 3:03 cv 00065 (LAC/MCR)
                             )
UNITED STATES, *et al.*,     )
                             )
        Defendants.          )
                             )

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR COURT TO DEEM PLAINTIFF'S FIRST
AND SECOND REQUESTS FOR ADMISSIONS AS "ADMITTED"**

ISSUE PRESENTED

Because the United States and the Internal Revenue Service answered the admissions in the agreed upon time frame between the parties and the United States objected to each admission as allowed for by the Fed. R. Civ. P, should the Court grant Dean's request to have his admissions deem admitted?

STATEMENT

The United States and the Internal Revenue Service (collectively, "United States") moved for a stay of this proceeding on the basis that responding to the discovery served by Dean – including the admissions – would interfere with the ongoing criminal investigation. The United States informed Dean that it would not be responding to the discovery requests until after the

-1-

Court ruled on the initial motion to stay because of the threat the civil discovery posed to the

ongoing criminal proceedings.  The United States documented this understanding between the

parties in a July 23, 2003 letter to Dean.  (Ex. 1.)   In response to these discussions and written

correspondence, Dean did not object, or notify the United States or the Court that he considered

the responses to be due.   After the Court denied the motion to stay proceedings, the United States

and Dean discussed the issues of extending the discovery period for 120 days and responding to

the outstanding discovery requests.  Initially, Dean agreed to extend the discovery deadline, but

then reconsidered as set forth in his August 25, 2003 letter.  (Ex. 2.)  In this letter, Dean requested

that responses to his discovery requests be made within two weeks time.  (*Id.*)  The United States

responded to plaintiff's admissions on September 5, 2003 (within two weeks of Dean's August

25th letter) by individually objecting to each admission.  The objections to the admissions were on

the grounds that each request is neither relevant nor reasonable calculated to lead to the discovery

of admissible evidence and is overbroad.

ARGUMENT

The United States makes two arguments in support of denying Dean's motion.  First, the

admissions should not be deemed admitted because the United States responded to them within

an agreed upon time frame between the parties in accordance with Federal Rules of Civil

Procedure 29 and 36(a).  Second, objecting to the admissions is an appropriate response as Dean

is attempting to use civil discovery to interfere with the concurrent criminal investigations.

**A.**      **The United States Timely Responded to Dean's Admissions.**

As set forth above, Dean was informed that the United States would not respond to

Dean's discovery requests until after the initial motion to stay was ruled upon because it was the

United States' position that responding to civil discovery would interfere with the criminal proceedings. This was also the argument presented in the motion to stay. The Court subsequently denied the United States' initial motion to stay the proceedings. And the United States renewed its motion to stay the proceedings in accordance with the Court's opinion and continues to assert that the civil discovery will interfere with the ongoing criminal proceedings.1/ After the Court issued the order, Dean on August 25, 2003 allowed the United States two weeks to answer to the admissions, which was done.

Dean's current argument that the United States' responses are untimely must be rejected. (Mot. Deem Admitted ¶5.) Because Dean agreed that the United States did not have to respond to the admissions within 30 days (Ex. 1) and then gave the United States two weeks from August 25, 2003 to respond (Ex. 2), the parties stipulated to an extension of time as allowed for by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 29 and 36(a). Also, Dean should be precluded from now arguing that the United States' responses are late as the United States relied on Dean representations and acting upon them accordingly.

To the extent Dean is asserting that the United States failed to make any response within the two week period after August 25th because the admissions were objected to (*id.*), this position is unfounded. A party is required to respond to an admission by either "written answer or objection." Fed. R. Civ. P. 36(a). Because the United States served objections to the requests for

---

1/    Further evidence demonstrating that civil discovery will interfere with the criminal proceedings will be submitted when the Court rules on the request to submit the second declaration of Tanya Burgess under restrictions and the third declaration of Tanya Burgess *ex parte* and under seal.

admission, Dean was given a sufficient response in accordance with Federal Rules of Civil Procedure.

**B.     Objecting to the Requests for Admission is Appropriate Because of the Ongoing Criminal Investigation.**

The United States must object to Dean's requests for admissions and any other discovery requests at this time because of the renewed motion to stay the proceedings and the likelihood that any responses to discovery could be used by Dean to interfere with the ongoing criminal investigation. Dean's discovery requests seek information, among other things, related to the United States' underlying authority to conduct a criminal investigation. In particular to the admissions, almost half of them seek responses about the tax code's legal construction and its effect, and the purpose of this information is to form a basis to challenge the United States' underlying authority to conduct a criminal investigation and interfere with the criminal investigation.

There are several facts which support the United States' position. First, Dean through his own admission stated: "the responses and admissions sought within the aforementioned civil discovery pleadings will have a significant impact upon the ongoing criminal investigation." (Renewed Mot. Stay p.3.) Dean also gave the following sworn testimony in connection with the ongoing criminal investigation: "Internal Revenue special agents . . . have no authority whatsoever to enforce Title 26, subtitle A, income tax laws." (Renewed Mot. Stay p.5, Ex. 3, p.20.) On August 23, 2003 while appearing on the American Radio Show, Dean stated that obtaining civil discovery would "undermine their [the United States'] entire criminal investigation" and goes on to describe his civil litigation tactics as a good "strategy" to follow if

-4-

you are under criminal investigation.  (*See* August 22, 2003 interview, hour 2, minute 41:40 at

www.americanradioshow.us/archive.html.)  These statements made by Dean powerfully

demonstrate Dean's intent to use civil discovery to directly affect and interfere with the criminal

matters.

Indeed, after bringing some these admissions to the Court's attention, Dean reversed his

position that "[n]othing about the Plaintiff's discovery requests can be construed as relevant, or

pertinent, to the ongoing criminal investigation."  (Pl. Resp. Mot. Stay. p.4.)  He now, in fact,

concedes that the civil discovery is related to the criminal proceedings in this regard.  (Pl. Opp.

Renewed Mot. Stay pp.2, 4, 7.)  Dean's own concession verifies the United States' position,

which has not altered.

Additionally, the United States' assertion that Dean will use any information received

through civil discovery to challenge the authority of the government in the ongoing criminal

proceedings is also predicated on Dean's past conduct unrelated to the present proceedings.  He

brought a collection due process action against the United States for its alleged failure to assess

Dean in accordance with the law or outside its legal authority.  Dean's arguments were rejected

out of hand, and the case dismissed.  (*See Dean v. United States,* 3:01-CV-430 (LAC).)  On his

website, Dean also discusses how he sued the State of Florida and several individuals alleging,

among other things, that the State's agents did not have the requisite authority to engage in

conduct on behalf of the States.  (Ex. 3, ¶¶38-44, 51-58, 65, 72, 87.)  Based on this past and

present repetitive course of conduct, challenging the underlying authority of the government to

take certain actions is not a new theory or defense to Dean.

These examples demonstrate how Dean's attempt to challenge the underlying authority of the United States to conduct a criminal investigation is directly related to one of Dean's theories for prosecuting the civil matter as well as a defense he has raised in the criminal proceedings. (Pl. Opp. Renewed Mot. Stay pp.3, 5-7; Renewed Mot. Stay pp. 2-10.)   A strong nexus exists between the criminal and civil proceedings, and responding to civil discovery on this matter, would directly impact and interfere with the criminal proceedings.  This is of serious concern, is fully supportable by Dean's conduct, and is why the United States objected to the admissions. Indeed, the United States has a strong interest in protecting its criminal investigations from interference, and its objections to Dean's admissions, therefore, should stand.

CONCLUSION

Because the United States timely responded to plaintiff's requests for admissions within the agreed upon time frame made between the parties and the United States responded to those admissions in accordance with the Fed. R. Civ. P., the admissions should not be deemed admitted.

///

///

///

///

///

///

///

///

DATED: September 26, 2003

Respectfully submitted,

GREGORY R. MILLER
United States Attorney

GERALD A. ROLE
LINDSEY W. COOPER, JR.
(TN Bar No. 020705, DC Bar No. 473895)
Civil Tax, Eastern Region
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, DC  20044
Telephone: (202) 307-6528
Facsimile: (202) 514-6866

*Attorneys for the United States*

**Insert Sheet for Tab Page[1]**

# EXHIBIT 1

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.



U.S. Department of Justice

**Tax Division**

*Civil Trial Section, Eastern Region*

EJO'C:DAH:LC:ceo
5-72-2487
CMN 2003102865

*Post Office Box 227*
*Washington, DC 20044*

*Telephone: (202) 307-6528*
*Telecopier: (202) 514-6866*

July 23, 2003

**VIA FIRST-CLASS MAIL**

Ward Dean, M.D.
8799 Burning Tree Road
Pensacola, Fl 32514

Re:   ***Dean v. United States, et al., No. 3:03 cv 65 (LAC/MCR) (USDC N.D. Fl.)***

Dear Dr. Dean:

As we discussed, the United States at this time will not be responding to either your first or second set of discovery requests until the Court has ruled upon the motion to stay proceedings that will be filed shortly. It is the United States' position that disclosure of information by the United States in a civil proceeding is improper while a concurrent criminal investigation is taking place. Thus, the United States objects to your discovery requests on this ground. However, the United States will respond to your discovery requests should the Court deny the motion to stay.

If you have any questions, I may be reached at (202) 307-6528.

Many thanks.

Sincerely yours,

LINDSEY W. COOPER, JR.
Trial Attorney
Civil Trial Section, Eastern Region

Insert Sheet for Tab Page[1]

# EXHIBIT 2

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.

**Ward Dean, M.D.**
**8799 Burning Tree Road**
**Pensacola, Florida  32514**
**(850) 484-0595 / 474-5255 / 477-8610 (Fax)**
warddeanmd@earthlink.net

25 August, 2003

Lindsey W. Cooper, Jr.
Trial Attorney
Civil Trial Section, Eastern Region
P.O. Box 227
Washington, DC  20044
202-307-6528

Dear Mr. Cooper,

This is a follow-up to the telephone message that I left on your answering machine this morning, within minutes of our discussion.

After reconsideration, I believe that the time that you requested to complete Discovery (four months) is not reasonable in consideration of the fact that you have already had more than two months to obtain responses to my first set of Discovery questions, and over six weeks to ponder the second set.

Consequently, I believe that an additional two weeks from today should be adequate time for the government to respond to my reasonable requests for Discovery.  Admissions can be answered by a simple admission or denial.  Documents requested should all be public documents, and be readily retrievable, if they exist.  The interrogatories are all straight-forward and should not require extensive research.

Consequently, I will object to any delay beyond 8 September, 2003, for completion of Discovery, and will file a Motion to Compel Discovery on 9 September if Discovery is not perfected by that date.

Sincerely,

Ward Dean, M.D.

**Insert Sheet for Tab Page**[1]

# EXHIBIT 3

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.

Case 3:03-cv-00065-MCR-MD   Document 27   Filed 09/30/03   Page 13 of 41





# ESCAMBIA COUNTY CIRCUIT COURT
# STATE OF FLORIDA

Ward Dean, Kumja Dean
Plaintiffs,

vs.

G. THOMAS SMITH, W. D. CHILDERS, MIKE BASS, WILLIE J. JUNIOR, THOMAS G. BANJANIN, TERRY SMITH, CHARLES E. WALKER, JAMES H. MARTIN, TOM FORREST, JANET LANDER, MICHAEL GODWIN, ERNIE LEE MAGAHA, TERESA FRAZIER and unknown and unnamed others,
Defendants

Case No.: 01-377-CA-01

## STATEMENT OF THE CASE

1. The plaintiffs, Ward Dean and Kumja Dean, bring this case due to the actions of the defendants, which include but are not limited to, violation of the plaintiffs' rights to due process, equal protection of the laws and access to courts. To achieve these ends, the defendants have conspired to and in some cases have committed fraud, fraudulent concealment, fraudulent conveyance and conversion.

## JURISDICTION

2. The defendants are subject to the jurisdiction of this Court.

3. Further jurisdiction is invoked pursuant to Chapter 895 of the Florida Statutes (RICO).

4. Jurisdiction is also invoked pursuant to the Declaratory Judgment Act

5. Injunctive relief is sought pursuant to Chapter 895.05 of the Florida Statutes.

# PARTIES
## PLAINTIFFS

6. Plaintiff, Ward Dean, is a private citizen, who is domiciled at 8799 Burning Tree Road, Penascola, Florida 32514.

7. Plaintiff, Kumja Dean, is a private citizen, who is domiciled at 8799 Burning Tree Road, Penascola, Florida 32514.

## DEFENDANTS

8. G. Thomas Smith (hereinafter, "Smith") is a defendant, who has a business address of 510 E. Zaragossa Street, Pensacola, Florida 32501.

9. W. D. Childers is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

10. Mike Bass is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

11. Willie J. Junior is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

12. Thomas G. Banjanin is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

13. Terry Smith (Hereinafter, "T. Smith") is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

14. Charles E. Walker is a defendant, who has a business address of 14 West Leonard Street, Pensacola, Florida 32501.

15. James H. Martin is a defendant, who has a business address of 14 West Leonard Street, Pensacola, Florida 32501.

16. Tom Forrest is a defendant, who has a business address of 223 S. Palafox Place, Pensacola, Florida 32501.

17. Janet Lander is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

18. Michael Godwin is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

19. Ernie Lee Magaha is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

20. Teresa Frazier is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

21. Unknown and unnamed others, who will be identified at the completion of discovery.

## STATEMENT OF FACTS

22. On June 6, 2000, Defendant James Martin filed a Notice of Violation charging the plaintiffs, Ward Dean and Kumja Dean with a violation of a Land Development Code (LDC) 2.02.00, 7.04.00.

23. Charles E. Walker, a letter, which alleged that the plaintiffs violated "State Statute(s)/Escambia County Ordinance(s) No. 96-3." The letter also stated that the Appellants committed a "Land Development Code (L.D.C.) Violation: A. Remove 6' fence from front yard; B. Abate."

24. Plaintiff Ward Dean responded to the correspondence of the defendants Walker and Martin with a letter dated July 13, 2000 pointing out "Florida Statute 588.01 Requirements of general fences requires that 'All fences . . . shall be . . . not less than 5 feet high.'" [emphasis added in letter]. See attached hereto as Exhibit "A."

25. The plaintiff Ward Dean also stated in his letter that he believed there was a conflict between the State statutes and County ordinance governing fences. Exhibit A.

26. On or about July 28, 2000, the plaintiffs received from defendant John Martin a Petition for Hearing Before the Office of Code Enforcement Special Master, County of Escambia, State of Florida, stating the plaintiffs had violated Escambia County Ordinance 96-3.

27. On or about July 31, 2000, defendant G. Thomas Smith sent the plaintiffs a Notice of Code Enforcement Special Master Hearing Subpoena to Alleged Violator to Appear at the Said Hearing.

28. Upon receiving the subpoena, the plaintiffs called the code enforcement office and asked what law covered the Special Master's office and the proceedings of the above-referenced hearing.

29. On Aug 2, 2000, upon inquiry from plaintiffs, the code enforcement office faxed plaintiffs a copy of County Ordinance 97-60 as the authorization for the

Special Master's office and for the jurisdiction of Case No. 99-12-0196. See Attached hereto as Exhibit "B."

30. On or about August 11, 2000, the Plaintiff Ward Dean, in a letter, responded to the Subpoena of Special Master G. Thomas Smith and asked the defendant Walker, the reason why they were not following procedures to "initiate a Special Master Hearing . . . specified in . . . Section 5.1 of County Ordinance of 97-60." See attached hereto as Exhibit "C."

31. The plaintiffs' letter also inquired of the defendant Walker, why the Deans had not received a list of three Special Masters to choose from, as required by county ordinance 97.60 § 6.2 so that he might object to any Special Masters on the list. Exhibit C.

32. The defendants W. D. Childers, Mike Bass, Willie J. Junior, Thomas G. Banjanin and Terry Smith have not provided to the plaintiffs a list of three (3) special masters who were qualified under Section 70.51, Florida Statutes ("the Act").

33. On or about August 11, 2000, the Deans sent another letter to Defendant Walker, stating that according to 15 (b) of S. 70.51 (referenced in Ordinance 97-60) required that "the Special Master must provide notice of the place, date, and time of the hearing to all parties . . . at least 40 days (emphasis added in original letter) prior to the hearing." See Attached hereto as Exhibit "D."

34. The subpoena received from Defendant Smith provided only fifteen days notice - not 40 days.

35. On or about August 13, 2000 the plaintiff Dean wrote a letter to the Defendant Forrest requesting a meeting to discuss the matter that had initiated the hearing. See Attached hereto as Exhibit "E."

36. As of this date, Defendant Forrest has yet to respond to the concerns expressed by the plaintiffs' letter dated August 13, 2000.

37. The defendant G. Thomas Smith conducted a hearing as scheduled, which the plaintiffs attended, on or about August 15, 2000.

38. During the hearing, defendant Smith answered yes in response to the plaintiff Ward Dean's question, "Do you have an oath of office on file with regard to your job?" See Transcript of Proceedings before G. Thomas Smith, Escambia County v. Dean, Case no. 1999-12-0196, page 6, lines 16-17 (August 15, 2000). See Attached hereto as Exhibit "F."

39. In response to another question asked by the plaintiffs, defendant Smith told

Case 3:03-cv-00065-MCR-MD Document 87 Filed 09/30/03 Page 17 of 41

the Deans that "[he] was employed by the county or I was contracted by the county four years ago to undertake the responsibility to be a Special Master." Transcript of Proceedings before G. Thomas Smith, page 7, lines 15-17 (August 15, 2000). Exhibit F.

40. Plaintiff Ward Dean questioned defendant Smith about the law under which the hearing was going to proceed:

**DR. DEAN:** Now, what law authorizes you to do what you are doing in here today?
**SPECIAL MASTER:** The Florida Statutes.
**DR.DEAN:** Which particular statute? I mean I've got the statutes and I've got eight volumes.
**SPECIAL MASTER:** You know, I'm not the one on trial here.
**DR. DEAN:** Well, that's true, but the thing is --
**SPECIAL MASTER:** If you have these questions, you can approach them in the proper manner. I'm not here to answer these questions.

*Transcript of Proceedings before G. Thomas Smith, Dean, supra, page 8, lines 1-12 (August 15, 2000). Exhibit F.*

41. The plaintiffs wanted defendant Smith to name the statutes that the hearings were proceeding under in order to clear up the confusion between the special master and the code enforcement office.

42. After initially refusing the plaintiffs' request for the statutes that governed the hearing, defendant Smith first told the plaintiffs they needed to look in Chapter 160 of the Florida Statutes.

43. Seconds later, defendant Smith told the plaintiffs that they needed to look at Chapter 162 of the Florida Statutes and Escambia County Ordinance 95-9 for the authority as to the performance of the Special Masters' duties.

44. Later in the proceeding, in response to the plaintiffs' question about issuing subpoenas, Defendant Smith cited two Escambia County Ordinances (95-7 and 97-9) as the authority for the Special Master to issue subpoenas.

45. After the hearing, defendant Smith issued an order on or about the 3rd day of October, 2000, finding in favor of Escambia County and against the plaintiffs. See Attached hereto as Exhibit "G."

46. Defendant Smith issued an Amended Order on or about October 16, 2000 finding that the plaintiffs had violated "Section 7.04.00, Escambia County Land Development Code, Ordinance 96-3, as well as the failure to obtain a permit to construct the fence." See Attached hereto as Exhibit "H."

47. Defendant Smith's amended order also changed in pertinent part of paragraph five of the original order to read, "Under authority of § 162.09 (1), F. S. (1995) and Sec. 30.34 (d) of the Code of Ordinances" instead of "[u]nder authority of § 162.09 (1), F. S. (1995) and Sec. 108.5-8 (e) of the Code of Ordinances." Exhibit H.

48. The change made to the Amended Order in paragraph five regarding Sec. 108.5-8 (e) of the Code of Ordinances as authority for actions to be taken by the County was due to the fact that Plaintiffs pointed out that Sec. 108.5-8 (e) does not exist.

49. Defendant Godwin explained that the discrepancies between the original order and the amended order dated October 16, 2000 was that defendant Smith's use of Sec. 108.5-8 (e) in the original order was a "typographical error." See Attached hereto as Exhibit "I."

50. On or about October 25, 2000, the plaintiffs filed their Notice of Appeal in the Escambia County Circuit Court, Escambia County, Florida, as defendant Smith directed the plaintiffs to do in the order issued on October 6, 2000.

51. On December 7, 2000, plaintiffs wrote to the office of Code Enforcement requesting an oath of office, contracts and other information about the Special Master, which would confirm defendant Smith's statements made in the hearing held on August 15, 2000.

52. On or about December 15, 2000 in response to the plaintiffs' questions about special masters, and in particular, defendant Smith, defendant Michael Godwin responded by enclosing a copy of the contracts of G. Thomas Smith as Rezoning Hearing Examiner for Escambia County. See Attached hereto as Exhibit "J."

53. On or about December 19, 2000, Pat Cotton in an e-mail wrote the plaintiffs explaining that she had researched the "Board Minutes" and found that a contract was entered into with Mr. Smith on January 23, 1996 for a two-year period and has not been renewed. See Attached hereto as Exhibit "K."

54. In that same e-mail, Ms. Cotton stated that "[they] do not have an Oath of Office for Mr. Smith because one is not required according to our Assistant County Attorney Janet Lander." Exhibit K.

55. Ms. Cotton provided the minutes of the Escambia County Commissioners to the plaintiffs, which showed that the special masters were serving "pursuant to Ordinance Number 95-9, as well as a copy of defendant Smith's contract as a Code Enforcement Special Master." Defendant Smith's contract as a Code Enforcement Special Master was signed for a two-year period beginning on

January 23, 1996. See Attached hereto as Exhibit "L."

56. The plaintiff wrote defendant Godwin on December 26, 2000 inquiring into the lawful authority that defendant Smith had to act as a Code Enforcement Special Master. See Attached hereto as Exhibit "M."

57. The plaintiffs also wrote to defendant Janet Lander on December 26, 2000 asking for a further explanation as to the comments made by Pat Cotton about the oath of office of defendant Smith, as stated under Florida Statute 92.50 and the bonding requirements. See Attached hereto as Exhibit "N."

58. On or about December 28, 2000 in response to the letter of December 26 from the plaintiffs, defendant Lander sent a letter to the plaintiffs in which she stated that although the "position of Special Master for Code Enforcement is an office," "[t]here is nothing in Article II, § 5(b), Fla. Const., that requires the execution and filing of an oath and "therefore [Lander] would not expect that there be a signed oath on file in this regard." See Attached hereto as Exhibit "O."

59. The statements made by defendant Lander, if defendant Smith is an officer, conflict with the requirements in FS 92.50 § (1).

60. After their case was assigned a number for appeal, the plaintiffs in an attempt to prepare their appeal, recognized that the County Clerk did not have a record for appeal as prescribed by the Florida Rules of Appellate Procedure, Rule 9.110(e).

61. On or about the 5th day of January 2001, the plaintiffs personally filed a Motion to Supplement and Correct the Record.

62. In this motion, the plaintiffs pointed out that the Clerk's Office, under the direction of defendant Ernie Lee Magaha, are required by the Florida Rules of Appellate Procedure to prepare a record for appeal in the following fashion:

Rule 9.200 (d) (1) (B) (2) and (3) of the Florida Rules of Appellate Procedure entitled "Duties of Clerk; Preparation and Transmittal of Record" reads as follows:
"(1) The clerk of the lower tribunal shall prepare the record as follows:
(B) (2) The clerk of the lower tribunal shall prepare a complete index to the record.
(3) The clerk of the lower tribunal shall certify and transmit the record to the court as prescribed by these rules; provided that when the parties stipulate or the lower tribunal orders that the original record be retained, the clerk shall prepare and transmit a certified copy."

63. The only action taken by the clerk's office to prepare the plaintiff's record for an appeal was to write a note on the Appellants' Notice of Appeal, "Sent up on October 27, 2000," which was certified by defendant Frazier, as a true and exact copy of the document found in the record by the plaintiff Dean on his visit to the clerk's office on or about January 5, 2001. See Attached hereto as Exhibit "P."

64. In response to a question by the plaintiffs, defendant Frazier stated that the Florida Rules of Appellate Procedure do not require that the record of an administrative hearing be certified for an appeal.

65. On or about January 27, 2001, the plaintiff Ward Dean sent a letter to defendant Godwin stating, "This is a follow-up to my letter of 26 December, 2000, in which I asked what lawful authority Mr. G. Thomas Smith has had to act for the County as a Code Enforcement Special Master, in view of the fact that his contract expired two years ago? I would appreciate an answer." See Attached hereto as Exhibit "Q."

66. In response to plaintiff Dean's letter of 27 January 2001, defendant Godwin declared, "In response to your letter of January 27, 2001, Special Master G. Thomas Smith is acting under and pursuant to the authority and qualifications set out in Section 30-32 of the Escambia Code of Ordinances as a designated Special Master of the Board of County Commissioners." See Attached hereto as Exhibit "R."

67. Additionally, defendant Godwin, in the same letter states, "As such, Mr. Smith is compensated for his services by the County as authorized in Section 30-32. I am informed by the Purchasing Manager that since Mr. Smith's contract expired in 1998, he was paid in fiscal years 1997 -1999 by Direct Payment Voucher for which there is no competitive purchasing function and the using department makes a request for payment directly to Accounts Payable without processing the transaction throughout the Office of Purchasing." Exhibit R.

68. The defendants, W. D. Childers, Mike Bass, Willie J. Junior, Thomas G. Banjanin, and Terry Smith had an obligation to give written notice to the defendant Smith of any changes in the Agreement between ESCAMBIA COUNTY and G. THOMAS SMITH, ESQUIRE Serving as a Code Enforcement Special Master. (Hereinafter referred to as the "Master Agreement") Exhibit L. See Id. at 6.4.

69. This written notice to defendant Smith was to be sent by registered United States Mail, with return receipt requested, addressed to the party for whom it [was] intended. See Id., 6.4. (Exhibit L).

70. The defendant Smith was under obligation, if he desired to make any changes in the Master Agreement, to notify the defendants W. D. Childers, Mike Bass, Willie J. Junior, Thomas G. Banjanin, and Terry Smith, by registered United States Mail, with return receipt requested. Exhibit L at 6.4.

71. The defendants in this instant action have not provided any evidence that any of the parties of the Master Agreement have complied with the terms of 6.4.

72. The defendant G. Thomas Smith has been acting and is still acting as a Special Master without any agreement since January 23, 1998 with the knowledge and consent of the defendants W. D. Childers, Mike Bass, Willie J. Junior, Thomas G. Banjanin, Terry Smith, Tom Forrest, Janet Lander, and Michael Godwin.

# LEGAL CLAIMS

## FIRST CAUSE OF ACTION - DENIAL OF EQUAL PROTECTION OF THE LAW

73. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

74. The named defendants have by their actions denied the plaintiffs' right to equal protection of the law as guaranteed by Florida Constitution, Article I, § 2.

## SECOND CAUSE OF ACTION- FRAUD

75. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

76. The named defendants did intentionally perverse the truth for the purpose of inducing the plaintiffs to rely upon it to part with some thing belonging to them or to surrender a legal right.

## THIRD CAUSE OF ACTION- FRAUDULENT CONCEALMENT

77. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

78. The named defendants did hide or suppress a material fact or circumstance, which the defendants were legally or morally bound to disclose, and employed an artifice to prevent the plaintiffs' inquiry or to escape the plaintiffs' investigation and to mislead and hinder the plaintiffs' acquisition of information.

Case 3:03-cv-00065-MGR-MD  Document 27  Filed 09/30/03  Page 22 of 41

**FOURTH CAUSE OF ACTION- DENIAL OF DUE PROCESS**

DEFENDANTS JAMES H. MARTIN, CHARLES E. WALKER,
G. THOMAS SMITH, AND TOM FORREST

79. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

80. The named defendants have conspired with one another to deny the plaintiffs' right to due process as guaranteed by the Florida Constitution, Article I, § 9:
a) The defendants, James D. Martin, Charles E. Walker, G. Thomas Smith, by obfuscation, did not tell the plaintiffs exactly what law the hearing conducted on or about August 15, 2000 was operating under.
b) The defendant Tom Forrest refused to meet the plaintiffs as required by law before the hearing was conducted.

**FIFTH CAUSE OF ACTION- DENIAL OF ACCESS TO COURTS**

DEFENDANTS G. THOMAS SMITH, ERNIE LEE MAGAHA,
AND TERESA FRAZIER

81. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

82. These defendants have by their actions denied the plaintiffs meaningful access to courts as guaranteed by the Florida Constitution, Article I, § 21.

**SIXTH CAUSE OF ACTION- DENIAL OF RIGHT TO PETITION FOR REDRESS OF GRIEVANCES**

DEFENDANTS G. THOMAS SMITH, ERNIE LEE MAGAHA,
AND TERESA FRAZIER

83. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

84. These defendants have by their actions denied the plaintiffs their right to redress of grievances as guaranteed by the Florida Constitution, Article I, § 5.

**SEVENTH CAUSE OF ACTION-RICO**

85. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

Case 3:03-cv-00065-MCR-MD Document 27 Filed 09/30/03 Page 23 of 41

86. The defendants, by their action have conspired in a pattern and engaged in an enterprise, which committed at least two incidents of racketeering conduct that had the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise were interrelated by distinguishing characteristics and were not isolated incidents and that said incidents occurred after the effective date of this act and that the last of such incidences occurred within five years after a prior incident of racketeering conduct. To wit:
OBSTRUCTION
DEFENDANT G. THOMAS SMITH

87. This named defendant deliberately impersonated or falsely acted as a public officer or tribunal, including, but not limited to, in connection with or relating to any legal process affecting the plaintiffs and their property, or otherwise took an action under color of law against the plaintiffs and their property in violation of s. 843.0855 § (2).

**EIGHTH CAUSE OF ACTION- MISUSE OF PUBLIC OFFICE**
**G. THOMAS SMITH**

88. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

89. As the Florida RICO statute relates to any conduct defined as "racketeering activity:"

90. This named defendant unlawfully and corruptly requested, solicited, or agreed to accept a pecuniary or other benefit, not authorized by law, for the past, present and future performance or nonperformance of his office, which the plaintiffs believed to have been, or the defendant in violation of a public duty, or in performance of a public duty in that the defendant represented himself to be a Code Enforcement Special Master for at least a period of two years past without a legally binding agreement, continues to occupy said office and as of this date will continue to occupy said office without lawful authority in violation of s. 838.016.

91. As the Florida RICO statute relates to any conduct defined as "racketeering activity" in 18 U.S.C. 1961 (1):

NINTH CAUSE OF ACTION- MAIL FRAUD

DEFENDANTS G. THOMAS SMITH AND MICHAEL GODWIN

92. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

Case 3:03-cv-00065-MCR-MD Document 37 Filed 09/30/03 Page 24 of 41

93. The named defendants did intentionally and willfully deposit on at least two (2) separate occasions in the United States Mail writings, which contained misleading or false statements.

PRAYERS FOR RELIEF

1. Trial by jury on all issues trialable by a jury.

2. That this Court declare that plaintiffs' Constutional rights have been violated by the defendants in the following respects:
A. Denial of the right to equal protection of the law;
B. Denial of the right to due process of law;
C. Denial of access to the courts;
D. Denial of right to redress of greviances.

3. That an injunction be issued to restrain the defendant G. Thomas Smith from acting as a Code Enforcement Special Master until an agreement is issued between Escambia County and G. Thomas Smith.

4. That the judgment issued against the plaintiffs in Escambia County v. Dean, Case no. 1999-12-0196, be set aside.

5. Or, in the alternative, that the Escambia County Clerk's Office be ordered to produce a record of the proceedings in Escambia County v. Dean, Case no. 1999-12-0196, that is certified and ready for appeal.

6. Damages in the amount of $10,000 for each cause of action wherein each of the defendants G. Thomas Smith, W. D. Childers, Mike Bass, Willie J. Junior, Thomas G. Banjanin, Terry Smith, Tom Forrest, Janet Lander, Michael Godwin, Ernie Lee Magaha and Teresa Frazier are named.

7. Punitive damages to be determined by a jury from defendants G. Thomas Smith, W. D. Childers, Mike Bass, Willie J. Junior, Thomas G. Banjanin, Terry Smith, Tom Forrest, Janet Lander, Michael Godwin, Ernie Lee Magaha and Teresa Frazier.

8. That this Court convene a grand jury to investigate the criminal depredations of the defendants named herein.

9. That this Court report the misdeeds of the defendants G. Thomas Smith, Janet Lander and Michael Godwin to the Florida Bar Association.
10. Such other relief as this court deems just, proper, and equitable.

Respectfully submitted,
**Date: March 21, 2001**

Case 3:98-cv-00065-MGR-MD   Document 37   Filed 09/30/03   Page 25 of 41

**Ward Dean**

Home | Meet Dr. Dean | Books | Health Q&A | Articles | Contact

## More Published Works by Ward Dean, MD



---

**Ward Dean, MD**
Copyright ©2003 by Ward Dean, MD / Site Design by Ward Dean, MD
Report discrepancies with this site to the Webmaster

---

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing DEFENDANTS' RESPONSE TO PLAINTIFF'S

MOTION FOR COURT TO DEEM PLAINTIFF'S FIRST AND SECOND REQUESTS FOR

ADMISSIONS AS "ADMITTED" and ORDER were caused to be served on the 29th day of

September 2003, by sending a copy thereof via Federal Express overnight to the following:

WARD DEAN
8799 Burning Tree Road
Pensacola, Fl 32514
Telephone: (850) 484-0595


LINDSEY W. COOPER, JR.



WELCOME TO:
# WARDDEANMD.COM

| HOME PAGE | DR. DEAN | IRS INTRO | IRS UPDATE | PROP. RIGHTS | CONTACT US |
| ANTI-AGING | GHB | HEALTH Q&A | LINKS | NEWSLETTERS | SHOPPING |

# ESCAMBIA COUNTY CIRCUIT COURT
# STATE OF FLORIDA

Ward Dean, Kumja Dean
Plaintiffs,

vs.

G. THOMAS SMITH, W. D. CHILDERS, MIKE BASS, WILLIE J. JUNIOR, THOMAS G. BANJANIN, TERRY SMITH, CHARLES E. WALKER, JAMES H. MARTIN, TOM FORREST, JANET LANDER, MICHAEL GODWIN, ERNIE LEE MAGAHA, TERESA FRAZIER and unknown and unnamed others,
Defendants

Case No.: 01-377-CA-01

## STATEMENT OF THE CASE

1. The plaintiffs, Ward Dean and Kumja Dean, bring this case due to the actions of the defendants, which include but are not limited to, violation of the plaintiffs' rights to due process, equal protection of the laws and access to courts. To achieve these ends, the defendants have conspired to and in some cases have committed fraud, fraudulent concealment, fraudulent conveyance and conversion.

## JURISDICTION

2. The defendants are subject to the jurisdiction of this Court.

3. Further jurisdiction is invoked pursuant to Chapter 895 of the Florida Statutes (RICO).

4. Jurisdiction is also invoked pursuant to the Declaratory Judgment Act

5. Injunctive relief is sought pursuant to Chapter 895.05 of the Florida Statutes

# PARTIES
## PLAINTIFFS

6. Plaintiff, Ward Dean, is a private citizen, who is domiciled at 8799 Burning Tree Road, Penascola, Florida 32514.

7. Plaintiff, Kumja Dean, is a private citizen, who is domiciled at 8799 Burning Tree Road, Penascola, Florida 32514.

## DEFENDANTS

8. G. Thomas Smith (hereinafter, "Smith") is a defendant, who has a business address of 510 E. Zaragossa Street, Pensacola, Florida 32501.

9. W. D. Childers is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

10. Mike Bass is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

11. Willie J. Junior is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

12. Thomas G. Banjanin is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

13. Terry Smith (Hereinafter, "T. Smith") is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

14. Charles E. Walker is a defendant, who has a business address of 14 West Leonard Street, Pensacola, Florida 32501.

15. James H. Martin is a defendant, who has a business address of 14 West Leonard Street, Pensacola, Florida 32501.

16. Tom Forrest is a defendant, who has a business address of 223 S. Palafox Place, Pensacola, Florida 32501.

17. Janet Lander is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

18. Michael Godwin is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

19. Ernie Lee Magaha is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

20. Teresa Frazier is a defendant, who has a business address of 14 West Government Street, Pensacola, Florida 32501.

21. Unknown and unnamed others, who will be identified at the completion of discovery.

## STATEMENT OF FACTS

22. On June 6, 2000, Defendant James Martin filed a Notice of Violation charging the plaintiffs, Ward Dean and Kumja Dean with a violation of a Land Development Code (LDC) 2.02.00, 7.04.00.

23. Charles E. Walker, a letter, which alleged that the plaintiffs violated "State Statute(s)/Escambia County Ordinance(s) No. 96-3." The letter also stated that the Appellants committed a "Land Development Code (L.D.C.) Violation: A. Remove 6' fence from front yard; B. Abate."

24. Plaintiff Ward Dean responded to the correspondence of the defendants Walker and Martin with a letter dated July 13, 2000 pointing out "Florida Statute 588.01 Requirements of general fences requires that 'All fences . . . shall be . . . not less than 5 feet high.'" [emphasis added in letter]. See attached hereto as Exhibit "A."

25. The plaintiff Ward Dean also stated in his letter that he believed there was a conflict between the State statutes and County ordinance governing fences. Exhibit A.

26. On or about July 28, 2000, the plaintiffs received from defendant John Martin a Petition for Hearing Before the Office of Code Enforcement Special Master, County of Escambia, State of Florida, stating the plaintiffs had violated Escambia County Ordinance 96-3.

27. On or about July 31, 2000, defendant G. Thomas Smith sent the plaintiffs a Notice of Code Enforcement Special Master Hearing Subpoena to Alleged Violator to Appear at the Said Hearing.

28. Upon receiving the subpoena, the plaintiffs called the code enforcement office and asked what law covered the Special Master's office and the proceedings of the above-referenced hearing.

29. On Aug 2, 2000, upon inquiry from plaintiffs, the code enforcement office faxed plaintiffs a copy of County Ordinance 97-60 as the authorization for the

Special Master's office and for the jurisdiction of Case No. 99-12-0196. See Attached hereto as Exhibit "B."

30. On or about August 11, 2000, the Plaintiff Ward Dean, in a letter, responded to the Subpoena of Special Master G. Thomas Smith and asked the defendant Walker, the reason why they were not following procedures to "initiate a Special Master Hearing . . . specified in . . . Section 5.1 of County Ordinance of 97-60." See attached hereto as Exhibit "C."

31. The plaintiffs' letter also inquired of the defendant Walker, why the Deans had not received a list of three Special Masters to choose from, as required by county ordinance 97.60 § 6.2 so that he might object to any Special Masters on the list. Exhibit C.

32. The defendants W. D. Childers, Mike Bass, Willie J. Junior, Thomas G. Banjanin and Terry Smith have not provided to the plaintiffs a list of three (3) special masters who were qualified under Section 70.51, Florida Statutes ("the Act").

33. On or about August 11, 2000, the Deans sent another letter to Defendant Walker, stating that according to 15 (b) of S. 70.51 (referenced in Ordinance 97-60) required that "the Special Master must provide notice of the place, date, and time of the hearing to all parties . . . at least 40 days (emphasis added in original letter) prior to the hearing." See Attached hereto as Exhibit "D."

34. The subpoena received from Defendant Smith provided only fifteen days notice - not 40 days.

35. On or about August 13, 2000 the plaintiff Dean wrote a letter to the Defendant Forrest requesting a meeting to discuss the matter that had initiated the hearing. See Attached hereto as Exhibit "E."

36. As of this date, Defendant Forrest has yet to respond to the concerns expressed by the plaintiffs' letter dated August 13, 2000.

37. The defendant G. Thomas Smith conducted a hearing as scheduled, which the plaintiffs attended, on or about August 15, 2000.

38. During the hearing, defendant Smith answered yes in response to the plaintiff Ward Dean's question, "Do you have an oath of office on file with regard to your job?" See Transcript of Proceedings before G. Thomas Smith, Escambia County v. Dean, Case no. 1999-12-0196, page 6, lines 16-17 (August 15, 2000). See Attached hereto as Exhibit "F."

39. In response to another question asked by the plaintiffs, defendant Smith told

the Deans that "[he] was employed by the county or I was contracted by the county four years ago to undertake the responsibility to be a Special Master." Transcript of Proceedings before G. Thomas Smith, page 7, lines 15-17 (August 15, 2000). Exhibit F.

40. Plaintiff Ward Dean questioned defendant Smith about the law under which the hearing was going to proceed:

DR. DEAN: Now, what law authorizes you to do what you are doing in here today?
SPECIAL MASTER: The Florida Statutes.
DR.DEAN: Which particular statute? I mean I've got the statutes and I've got eight volumes.
SPECIAL MASTER: You know, I'm not the one on trial here.
DR. DEAN: Well, that's true, but the thing is --
SPECIAL MASTER: If you have these questions, you can approach them in the proper manner. I'm not here to answer these questions.

*Transcript of Proceedings before G. Thomas Smith, Dean, supra, page 8, lines 1-12 (August 15, 2000). Exhibit F.*

41. The plaintiffs wanted defendant Smith to name the statutes that the hearings were proceeding under in order to clear up the confusion between the special master and the code enforcement office.

42. After initially refusing the plaintiffs' request for the statutes that governed the hearing, defendant Smith first told the plaintiffs they needed to look in Chapter 160 of the Florida Statutes.

43. Seconds later, defendant Smith told the plaintiffs that they needed to look at Chapter 162 of the Florida Statutes and Escambia County Ordinance 95-9 for the authority as to the performance of the Special Masters' duties.

44. Later in the proceeding, in response to the plaintiffs' question about issuing subpoenas, Defendant Smith cited two Escambia County Ordinances (95-7 and 97-9) as the authority for the Special Master to issue subpoenas.

45. After the hearing, defendant Smith issued an order on or about the 3rd day of October, 2000, finding in favor of Escambia County and against the plaintiffs. See Attached hereto as Exhibit "G."

46. Defendant Smith issued an Amended Order on or about October 16, 2000 finding that the plaintiffs had violated "Section 7.04.00, Escambia County Land Development Code, Ordinance 96-3, as well as the failure to obtain a permit to construct the fence." See Attached hereto as Exhibit "H."

47. Defendant Smith's amended order also changed in pertinent part of paragraph five of the original order to read, "Under authority of § 162.09 (1), F. S. (1995) and Sec. 30.34 (d) of the Code of Ordinances" instead of "[u]nder authority of § 162.09 (1), F. S. (1995) and Sec. 108.5-8 (e) of the Code of Ordinances." Exhibit H.

48. The change made to the Amended Order in paragraph five regarding Sec. 108.5-8 (e) of the Code of Ordinances as authority for actions to be taken by the County was due to the fact that Plaintiffs pointed out that Sec. 108.5-8 (e) does not exist.

49. Defendant Godwin explained that the discrepancies between the original order and the amended order dated October 16, 2000 was that defendant Smith's use of Sec. 108.5-8 (e) in the original order was a "typographical error." See Attached hereto as Exhibit "I."

50. On or about October 25, 2000, the plaintiffs filed their Notice of Appeal in the Escambia County Circuit Court, Escambia County, Florida, as defendant Smith directed the plaintiffs to do in the order issued on October 6, 2000.

51. On December 7, 2000, plaintiffs wrote to the office of Code Enforcement requesting an oath of office, contracts and other information about the Special Master, which would confirm defendant Smith's statements made in the hearing held on August 15, 2000.

52. On or about December 15, 2000 in response to the plaintiffs' questions about special masters, and in particular, defendant Smith, defendant Michael Godwin responded by enclosing a copy of the contracts of G. Thomas Smith as Rezoning Hearing Examiner for Escambia County. See Attached hereto as Exhibit "J."

53. On or about December 19, 2000, Pat Cotton in an e-mail wrote the plaintiffs explaining that she had researched the "Board Minutes" and found that a contract was entered into with Mr. Smith on January 23, 1996 for a two-year period and has not been renewed. See Attached hereto as Exhibit "K."

54. In that same e-mail, Ms. Cotton stated that "[they] do not have an Oath of Office for Mr. Smith because one is not required according to our Assistant County Attorney Janet Lander." Exhibit K.

55. Ms. Cotton provided the minutes of the Escambia County Commissioners to the plaintiffs, which showed that the special masters were serving "pursuant to Ordinance Number 95-9, as well as a copy of defendant Smith's contract as a Code Enforcement Special Master." Defendant Smith's contract as a Code Enforcement Special Master was signed for a two-year period beginning on

January 23, 1996. See Attached hereto as Exhibit "L."

56. The plaintiff wrote defendant Godwin on December 26, 2000 inquiring into the lawful authority that defendant Smith had to act as a Code Enforcement Special Master. See Attached hereto as Exhibit "M."

57. The plaintiffs also wrote to defendant Janet Lander on December 26, 2000 asking for a further explanation as to the comments made by Pat Cotton about the oath of office of defendant Smith, as stated under Florida Statute 92.50 and the bonding requirements. See Attached hereto as Exhibit "N."

58. On or about December 28, 2000 in response to the letter of December 26 from the plaintiffs, defendant Lander sent a letter to the plaintiffs in which she stated that although the "position of Special Master for Code Enforcement is an office," "[t]here is nothing in Article II, § 5(b), Fla. Const., that requires the execution and filing of an oath and "therefore [Lander] would not expect that there be a signed oath on file in this regard." See Attached hereto as Exhibit "O."

59. The statements made by defendant Lander, if defendant Smith is an officer, conflict with the requirements in FS 92.50 § (1).

60. After their case was assigned a number for appeal, the plaintiffs in an attempt to prepare their appeal, recognized that the County Clerk did not have a record for appeal as prescribed by the Florida Rules of Appellate Procedure, Rule 9.110(e).

61. On or about the 5th day of January 2001, the plaintiffs personally filed a Motion to Supplement and Correct the Record.

62. In this motion, the plaintiffs pointed out that the Clerk's Office, under the direction of defendant Ernie Lee Magaha, are required by the Florida Rules of Appellate Procedure to prepare a record for appeal in the following fashion:

Rule 9.200 (d) (1) (B) (2) and (3) of the Florida Rules of Appellate Procedure entitled "Duties of Clerk; Preparation and Transmittal of Record" reads as follows:
"(1) The clerk of the lower tribunal shall prepare the record as follows:
(B) (2) The clerk of the lower tribunal shall prepare a complete index to the record.
(3) The clerk of the lower tribunal shall certify and transmit the record to the court as prescribed by these rules; provided that when the parties stipulate or the lower tribunal orders that the original record be retained, the clerk shall prepare and transmit a certified copy "

63. The only action taken by the clerk's office to prepare the plaintiff's record for an appeal was to write a note on the Appellants' Notice of Appeal, "Sent up on October 27, 2000," which was certified by defendant Frazier, as a true and exact copy of the document found in the record by the plaintiff Dean on his visit to the clerk's office on or about January 5, 2001. See Attached hereto as Exhibit "P."

64. In response to a question by the plaintiffs, defendant Frazier stated that the Florida Rules of Appellate Procedure do not require that the record of an administrative hearing be certified for an appeal.

65. On or about January 27, 2001, the plaintiff Ward Dean sent a letter to defendant Godwin stating, "This is a follow-up to my letter of 26 December, 2000, in which I asked what lawful authority Mr. G. Thomas Smith has had to act for the County as a Code Enforcement Special Master, in view of the fact that his contract expired two years ago? I would appreciate an answer." See Attached hereto as Exhibit "Q."

66. In response to plaintiff Dean's letter of 27 January 2001, defendant Godwin declared, "In response to your letter of January 27, 2001, Special Master G. Thomas Smith is acting under and pursuant to the authority and qualifications set out in Section 30-32 of the Escambia Code of Ordinances as a designated Special Master of the Board of County Commissioners." See Attached hereto as Exhibit "R."

67. Additionally, defendant Godwin, in the same letter states, "As such, Mr. Smith is compensated for his services by the County as authorized in Section 30-32. I am informed by the Purchasing Manager that since Mr. Smith's contract expired in 1998, he was paid in fiscal years 1997 -1999 by Direct Payment Voucher for which there is no competitive purchasing function and the using department makes a request for payment directly to Accounts Payable without processing the transaction throughout the Office of Purchasing." Exhibit R.

68. The defendants, W. D. Childers, Mike Bass, Willie J. Junior, Thomas G. Banjanin, and Terry Smith had an obligation to give written notice to the defendant Smith of any changes in the Agreement between ESCAMBIA COUNTY and G. THOMAS SMITH, ESQUIRE Serving as a Code Enforcement Special Master. (Hereinafter referred to as the "Master Agreement") Exhibit L. See Id. at 6.4.

69. This written notice to defendant Smith was to be sent by registered United States Mail, with return receipt requested, addressed to the party for whom it [was] intended. See Id., 6.4. (Exhibit L).

70. The defendant Smith was under obligation, if he desired to make any changes in the Master Agreement, to notify the defendants W. D. Childers, Mike Bass, Willie J. Junior, Thomas G. Banjanin, and Terry Smith, by registered United States Mail, with return receipt requested. Exhibit C at 6.4.

71. The defendants in this instant action have not provided any evidence that any of the parties of the Master Agreement have complied with the terms of 6.4.

72. The defendant G. Thomas Smith has been acting and is still acting as a Special Master without any agreement since January 23, 1998 with the knowledge and consent of the defendants W. D. Childers, Mike Bass, Willie J. Junior, Thomas G. Banjanin, Terry Smith, Tom Forrest, Janet Lander, and Michael Godwin.

# LEGAL CLAIMS

## FIRST CAUSE OF ACTION - DENIAL OF EQUAL PROTECTION OF THE LAW

73. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

74. The named defendants have by their actions denied the plaintiffs' right to equal protection of the law as guaranteed by Florida Constitution, Article I, § 2.

## SECOND CAUSE OF ACTION- FRAUD

75. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

76. The named defendants did intentionally perverse the truth for the purpose of inducing the plaintiffs to rely upon it to part with some thing belonging to them or to surrender a legal right.

## THIRD CAUSE OF ACTION- FRAUDULENT CONCEALMENT

77. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

78. The named defendants did hide or suppress a material fact or circumstance, which the defendants were legally or morally bound to disclose, and employed an artifice to prevent the plaintiffs' inquiry or to escape the plaintiffs' investigation and to mislead and hinder the plaintiffs' acquisition of information.

## FOURTH CAUSE OF ACTION- DENIAL OF DUE PROCESS

DEFENDANTS JAMES H. MARTIN, CHARLES E. WALKER,
G. THOMAS SMITH, AND TOM FORREST

79. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

80. The named defendants have conspired with one another to deny the plaintiffs' right to due process as guaranteed by the Florida Constitution, Article I, § 9:
a) The defendants, James D. Martin, Charles E. Walker, G. Thomas Smith, by obfuscation, did not tell the plaintiffs exactly what law the hearing conducted on or about August 15, 2000 was operating under.
b) The defendant Tom Forrest refused to meet the plaintiffs as required by law before the hearing was conducted.

## FIFTH CAUSE OF ACTION- DENIAL OF ACCESS TO COURTS

DEFENDANTS G. THOMAS SMITH, ERNIE LEE MAGAHA,
AND TERESA FRAZIER

81. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

82. These defendants have by their actions denied the plaintiffs meaningful access to courts as guaranteed by the Florida Constitution, Article I, § 21.

## SIXTH CAUSE OF ACTION- DENIAL OF RIGHT TO PETITION FOR REDRESS OF GRIEVANCES

DEFENDANTS G. THOMAS SMITH, ERNIE LEE MAGAHA,
AND TERESA FRAZIER

83. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

84. These defendants have by their actions denied the plaintiffs their right to redress of grievances as guaranteed by the Florida Constitution, Article I, § 5.

## SEVENTH CAUSE OF ACTION-RICO

85. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

86. The defendants, by their action have conspired in a pattern and engaged in an enterprise, which committed at least two incidents of racketeering conduct that had the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise were interrelated by distinguishing characteristics and were not isolated incidents and that said incidents occurred after the effective date of this act and that the last of such incidences occurred within five years after a prior incident of racketeering conduct. To wit:
OBSTRUCTION
DEFENDANT G. THOMAS SMITH

87. This named defendant deliberately impersonated or falsely acted as a public officer or tribunal, including, but not limited to, in connection with or relating to any legal process affecting the plaintiffs and their property, or otherwise took an action under color of law against the plaintiffs and their property in violation of s. 843.0855 § (2).

**EIGHTH CAUSE OF ACTION- MISUSE OF PUBLIC OFFICE**
G. THOMAS SMITH

88. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

89. As the Florida RICO statute relates to any conduct defined as "racketeering activity:"

90. This named defendant unlawfully and corruptly requested, solicited, or agreed to accept a pecuniary or other benefit, not authorized by law, for the past, present and future performance or nonperformance of his office, which the plaintiffs believed to have been, or the defendant in violation of a public duty, or in performance of a public duty in that the defendant represented himself to be a Code Enforcement Special Master for at least a period of two years past without a legally binding agreement, continues to occupy said office and as of this date will continue to occupy said office without lawful authority in violation of s. 838.016.

91. As the Florida RICO statute relates to any conduct defined as "racketeering activity" in 18 U.S.C. 1961 (1):

NINTH CAUSE OF ACTION- MAIL FRAUD

DEFENDANTS G. THOMAS SMITH AND MICHAEL GODWIN

92. Plaintiffs reallege and adopt paragraphs one through seventy-two as if fully set forth herein.

93  The named defendants did intentionally and willfully deposit on at least two (2) separate occasions in the United States Mail writings, which contained misleading or false statements.

PRAYERS FOR RELIEF

1. Trial by jury on all issues trialable by a jury.

2. That this Court declare that plaintiffs' Constutional rights have been violated by the defendants in the following respects:
A. Denial of the right to equal protection of the law;
B. Denial of the right to due process of law;
C. Denial of access to the courts;
D. Denial of right to redress of greviances.

3. That an injunction be issued to restrain the defendant G. Thomas Smith from acting as a Code Enforcement Special Master until an agreement is issued between Escambia County and G. Thomas Smith.

4. That the judgment issued against the plaintiffs in Escambia County v. Dean, Case no. 1999-12-0196, be set aside.

5. Or, in the alternative, that the Escambia County Clerk's Office be ordered to produce a record of the proceedings in Escambia County v. Dean, Case no. 1999-12-0196, that is certified and ready for appeal.

6. Damages in the amount of $10,000 for each cause of action wherein each of the defendants G. Thomas Smith, W. D. Childers, Mike Bass, Willie J. Junior, Thomas G. Banjanin, Terry Smith, Tom Forrest, Janet Lander, Michael Godwin, Ernie Lee Magaha and Teresa Frazier are named.

7. Punitive damages to be determined by a jury from defendants G. Thomas Smith, W. D. Childers, Mike Bass, Willie J. Junior, Thomas G. Banjanin, Terry Smith, Tom Forrest, Janet Lander, Michael Godwin, Ernie Lee Magaha and Teresa Frazier.

8. That this Court convene a grand jury to investigate the criminal depredations of the defendants named herein.

9. That this Court report the misdeeds of the defendants G. Thomas Smith, Janet Lander and Michael Godwin to the Florida Bar Association.
10. Such other relief as this court deems just, proper, and equitable.

Respectfully submitted,
**Date: March 21, 2001**

Ward Dean

Home | Meet Dr. Dean | Books | Health Q&A | Articles | Contact

# More Published Works by Ward Dean, MD



**Ward Dean, MD**
Copyright ©2003 by Ward Dean, MD / Site Design by Ward Dean, MD
Report discrepancies with this site to the Webmaster

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| WARD DEAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 3:03 cv 00065 (LAC/MCR) |
| | ) |
| UNITED STATES, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER

Having considered the motion for the Court to deem plaintiff's first and second requests for admissions as admitted, the United States' and the Internal Revenue Service's response thereto and the entire record herein, and good cause having been shown, this _____ day of October 2003, it is

ORDERED that plaintiff's request for the Court to deem his first and second requests for admissions as admitted is DENIED; and it is further

ORDERED that the Clerk shall distribute copies of this signed order to all necessary parties.

_____
UNITED STATES DISTRICT JUDGE

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing DEFENDANTS' RESPONSE TO PLAINTIFF'S

MOTION FOR COURT TO DEEM PLAINTIFF'S FIRST AND SECOND REQUESTS FOR

ADMISSIONS AS "ADMITTED" and ORDER were caused to be served on the 29th day of

September 2003, by sending a copy thereof via Federal Express overnight to the following:


WARD DEAN
8799 Burning Tree Road
Pensacola, Fl 32514
Telephone: (850) 484-0595


LINDSEY W. COOPER, JR.