IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

|  |  |  |
|---|---|---|
| WARD DEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:03 cv 00065 (LAC/MCR) |
| | ) | |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Special Agent Tanya Burgess, while investigating Ward Dean for potential violations of

the Internal Revenue Code for the tax years 1997 through 2001, issued summonses and as well as

talked to third parties.  During these contacts, Special Agent Burgess, in one form or another,

disclosed that Dean was under investigation by IRS Criminal Investigation.  Dean alleges that, by

disclosing he was under investigation by Criminal Investigation, Special Agent Burgess made

unauthorized disclosures of return information in violation of Section 6103 of the Internal

Revenue Code.  But a special agent may disclose taxpayer return information to a third party if

necessary to obtain information not otherwise reasonably available.  In addition, if the disclosure

is unauthorized but is made in good faith reliance on IRS regulation, policy, and procedure, there

is no cause of action.  Because contacting third parties was necessary and because IRS policy and

procedure allows a special agent to disclose that a person is under investigation by IRS Criminal

Investigation, there was no violation of Section 6103, and the defendants are entitled to summary

judgment.

## STATEMENT OF FACTS[1]

IRS began its investigation of Dean's income tax liability by conducting a civil examination.  In October 2002, the civil examination was referred to IRS Criminal Investigation, and an investigation of Dean for the years 1997 through 2001 was initiated in order to determined if Dean committed any offense under the Internal Revenue Code.  The basis for both the investigations was that Dean filed income tax returns indicating that he earned zero income for the years 1997 through 2001, except for 2000 when he did not file any income tax return.  (Undisputed Facts ¶2.)

Tanya D. Burgess, a special agent with the IRS Criminal Investigation in Pensacola, Florida, was assigned to the Dean investigation as part of her official duties.  (*Id.* ¶1.)  In conducting her investigation, Special Agent Burgess took necessary steps to gather needed information.  Initially, on October 3, 2002, she went in person with Revenue Agent Wayne Jackson to Dean's residence to inform him that he was under investigation and attempted to interview him.  (*Id.* ¶3; Burgess Decl. ¶6.)  Dean refused and ordered the IRS agents to leave his property.  (Undisputed Facts ¶3.)

In response to a letter that Dean sent to Special Agent Burgess after the visit to Dean's residence shortly after October 3rd, Special Agent Burgess informed Dean that he could provide the Service with any information that he would like to be considered as part of the investigation.  (*Id.* ¶4.)  He has yet to provide any information to the IRS to date.  (*Id.*)  Not only has Dean not provided information, he has continually challenged the IRS's authority to conduct both its civil

---

[1]      This section briefly summarizes the facts, which are listed in greater detail in the Statement of Undisputed Facts.

examination and subsequent criminal investigation.  (*Id.* ¶¶5-8.)  Because Special Agent Burgess

reasonably believed that Dean would not cooperate based upon Dean's conduct, she had no other

choice but to obtain information from third parties.  (*Id.* ¶8.)  Even if Dean was cooperating with

the investigation, for argument's sake, Special Agent Burgess' practice is to issue summonses to

and conduct interviews with third parties because IRS regulation, policy, and procedure requires

special agents to do so.  (*Id.* ¶¶9-11.)

In order to obtain needed information from third parties, Special Agent Burgess used two

typical methods: (1) issuing administrative summons; and (2) interviewing witness.  (*Id.* ¶¶12-

14.)  Thus, there are two distinct categories of disclosures: written and oral.  It was from these

two types of contacts that occurred during the investigation, which resulted in Dean filing his

complaint on February 2003 for unlawful disclosure of return information under Section 6103.

For the written disclosures, Dean alleges, and it is undisputed, that Special Agent Burgess

issued administrative summonses that indicated that they were issued from IRS "Criminal

Investigation."  (*Id.* ¶¶13, 20.)  Copies of three of the summonses are attached as Exhibits A

through C to the complaint, which were issued in October 2002.  It is further alleged that

"Criminal Investigation Division" appeared on the return address of the envelopes in which the

summons were sent.  (*Id.* ¶23; Compl. ¶9.)  Dean alleges that by placing "Criminal Investigation"

or "Criminal Investigation Division" or some other variation thereof on IRS summonses and

envelopes, illegal disclosures occurred.  (Compl. ¶¶10, 12, 15.)

For the oral disclosures, Special Agent Burgess spoke with third parties by telephone and

in person.  (Undisputed Facts ¶¶14, 17.)  In accordance with standard procedures, she identified

herself as a special agent from the Criminal Investigation Division and informed them that she

was conducting an investigation of Dean.  (*Id.* ¶¶16-18.)  She did not say Dean was under

"criminal investigation."  (*Id.* ¶25.)  Simply, Special Agent Burgess identified herself from the

Criminal Investigation Division, Dean asserts that those third parties were informed that Dean

was under criminal investigation.   (*Id.* ¶19; Compl. ¶¶6, 11.)  These types of oral disclosures are

what allegedly resulted in the violation of Section 6103.  Dean alleges that it was not necessary

for Special Agent Tanya Burgess to identify herself as being from the Criminal Investigation

Division or that she was conducting an investigation of Dean in order to secure the information

sought.  (Compl. ¶¶17-18.)

Both the oral and written third party contacts were made for specific and discrete

purposes.  All of the third parties were identified in Dean's bank records and had engaged in

financial transactions with him.  Special Agent Burgess specifically contacted these third parties,

as part of her investigative activities, to corroborate the bank records and to determine if Dean

had received unreported income.  (Undisputed Facts ¶¶15, 21.)  The purpose for these contacts

was to obtain necessary information relevant to the investigation.

For the reasons discussed below, the defendants will show that all the disclosures listed

above were either authorized by Section 6103 or, in the alternative, that the disclosures were

made pursuant to a good faith interpretation of Section 6103.  Because there is no dispute of

material fact, summary judgment for the defendants is appropriate as a matter of law.

<u>ARGUMENT</u>

I.   **THE DISCLOSURE OF RETURN INFORMATION WAS AUTHORIZED BY SECTION 6103**

    A.   **Controlling Statutes, Regulations, and Case Law.**

    A review of the relevant statutes, regulations and case law demonstrates that Special Agent Burgess' disclosures of Dean's return information was authorized. Section 6103(a) of the Internal Revenue Code provides, in general, that tax returns and "return information" are confidential and, except as authorized by the Internal Revenue Code, shall not be disclosed by any officer or employee of the Internal Revenue Service. Section §6103(b)(2) defines "return information" broadly, and includes the fact that a taxpayer's return is under examination or investigation. Section 6103(b)(8) defines "disclosure" to mean, "the making known to any person in any manner whatever a return or return information."

    Dean alleges, and the defendants acknowledge, that by issuing summonses and conducting interviews with third party witnesses, Special Agent Burgess disclosed that the plaintiff was under investigation by the Criminal Investigation Division of the Internal Revenue Service. (Undisputed Facts ¶¶14-15.) The fact that a taxpayer is being investigated falls within the definition of "return information" in Section 6103(b)(2)(A), which includes "whether the taxpayer's return was, is being, or will be examined or subject to other investigation." It is not disputed that a disclosure of Dean's return information was made. The issue before the Court is whether such a disclosure is authorized by the Internal Revenue Code.

    Section 6103(k)(6) is the provision that directly impacts whether disclosures of return information are authorized. That section states that a special agent may as part of a investigation,

- 5 -

> disclose return information <u>to the extent that such disclosure is</u>
> <u>necessary in obtaining information, which is not otherwise</u>
> <u>reasonably available,</u> with respect to the correct determination of
> tax, liability for tax, or the amount to be collected or with respect to
> the enforcement of any other provision of this title.  Such
> disclosures shall be made only in such situations and under such
> conditions as the Secretary may prescribe by regulation.

26 U.S.C. §6103(k)(6) (emphasis inserted).

Pursuant to this express grant of rule-making authority, the Secretary promulgated *Treas. Reg.* (26 C.F.R.) §301.6103(k)(6)-1, attached as Ex. 1.[2]  The regulation authorizes an IRS officer within the scope of her criminal law duties to make disclosures of "taxpayer identity information . . ., the fact that the inquiry pertains to the performance of official duties, and <u>the nature of the official duties.</u>"  *Treas. Reg.* §301.6103(k)(6)-1(a) (emphasis inserted); *Comyns v. United States,* 155 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001), *affirmed,* 287 F.3d 1034 (11th Cir. 2002).  The regulation further defines "official duties" as any activities "to establish or verify misconduct (or possible misconduct) or other activity prohibited by the internal revenue laws", which would include a special agent's investigation.  *Treas. Reg.*  §301.6103(k)(6)-1(b)(4); *Comyns,* 155 F. Supp. 2d at 1349.

---

[2]        This regulation was superceded by a new, temporary regulation on July 10, 2003. *Treas. Reg.* §301.6103(k)(6)-1T.  The purpose of the new regulation was to further "clarify and elaborate on the facts and circumstances in which disclosure pursuant to Section 6103(k)(6) is authorized." *See* Disclosure of Return Information by Certain Officers and Employees for Investigation Purposes, 68 Fed. Reg. 41,073, at 41,074 (July 10, 2003), attached as Ex. 2. Because the purpose of the temporary regulation is to add clarity to the old regulation that was in effect at the time the alleged disclosures occurred, the defendants will refer to the new regulation and the Federal Register as useful insight as to the intent and purpose of the statute and regulations.

Based upon an analysis of the statutes and regulations cited above, the *Comyns* court articulated this Circuit's rule[3] pertaining to a special agents' disclosures during an investigation :

> Tax return information, including the fact that a taxpayer is under investigation may not be disclosed, *unless* such disclosure is necessary in obtaining information not otherwise reasonably available, in which case (pursuant to the Secretary's regulation) such agent may reveal 1) the taxpayer's identity, 2) the fact that the agent's inquiry pertains to an official investigation, and 3) the nature of that investigation.

*Comyns,* 155 F. Supp. 2d at 1349 (underlining inserted).  Thus, for Special Agent Burgess' disclosures to be authorized, the defendants must show that the information was not otherwise reasonably available and that the disclosure of the return information was necessary.  If these two prongs are satisfied, Special Agent Burgess was authorized to disclose to third parties the nature of her investigation.  (*Id.*)  Applying this Circuit's rule to the facts at hand demonstrate that Tanya Burgess' disclosures were authorized as a matter of law.[4]

---

[3]     The Eleventh Circuit affirmed and adopted the lower court's decision in every regard.  "[I]t is unnecessary for us to write a full-blown opinion because the opinion by District Judge Kenneth L. Ryskamp . . . adequately reflects the facts, the law and the reasoning that supports that holding." *Comyns*, 287 F.3d at 1034.

[4]     Before applying the facts to the law, the temporary regulations provide an example of an authorized disclosure permitted under Section 6103.  This example is particularly helpful because the facts are uncannily similar to the facts before the Court.  In whole, the example explains,

> A special agent is conducting a criminal investigation of a taxpayer, a doctor, for tax evasion.  Notwithstanding the records provided by the taxpayer and the taxpayer's bank, the special agent decided to obtain information from the taxpayer's patients to verify amounts paid to the taxpayer for his services. Accordingly, the special agent sent letters to the taxpayer's patients to verify these amounts.  In the letters, the agent disclosed that he was a special agent with IRS-CI and that he was conducting a criminal investigation of the taxpayer.  Section 6103(k)(6) permits these disclosures to confirm the taxpayer's income.  the decision of whether to verify information already obtained is a matter of investigative judgment and is not limited by section 6103(k)(6).

**B.     The Information the Special Agent Sought from Third Parties was not Otherwise Reasonably Available.**

1.     <u>Dean's Failure to Cooperate.</u>

When a taxpayer is not cooperating with the investigation, it is reasonable for information to be sought from third parties. *Roebuck v. United States,* 1999 WL 501003, at * (E.D.N.C. June 8, 1999, *affirmed,* 84 A.F.T.R.2d 99-7051 (4th Cir. 1999). Indeed, if a special agent could not contact third parties under these circumstances, a special agent could not conduct an investigation.

This is the case here because the facts at hand affirmatively demonstrate that Dean was not cooperating, as shown by several occurrences. When Special Agent Burgess and Revenue Agent Jackson contacted Dean on October 3rd, Dean declined to be interviewed and ordered them to leave his property. (Undisputed Facts ¶3.) After this initial contact, Special Agent Burgess informed Dean in writing that he could voluntarily provide the IRS with any information that he would like to be considered as part of the investigation. To date, Dean has not provided any information and has refused to cooperate with the investigation. (*Id.* ¶4.) Dean also sought to quash the summons issued to Dillon Vickery by Special Agent Burgess asserting that the summons was improper. Dean's basis was that the IRS did not have authority over him because he is not required to pay income tax. (*Id.* ¶6.) Dean also refused to comply with a subpoena to provide a handwriting exemplar, challenging Special Agent Burgess' authority to conduct the investigation. (*Id.* ¶7.) He provided the handwriting exemplar only after the Court ordered him to comply, and he then only did so under "threat, duress and coercion." (*Id.*)

--------------------------------

*Treas. Reg.* §301.6103(k)(6)-1T(d), Example 3 (emphasis inserted).

Adding to her belief that Dean would not cooperate with the investigation, Dean contacted third parties that were issued summonses during the civil examination and threatened to instigate litigation if they compiled with the summonses because they were "*phony document*[s]." (*Id.* ¶5.) The basis for this assertion is Dean's expressed belief that the revenue agent did not have the authority to issue the summonses. (*Id.*) These actions would belie any claim asserted by Dean that he was cooperating with the investigation. To the contrary, Dean has continually challenged the IRS's authority to conduct its investigation.

Based on Dean's course of conduct and his refusal to voluntarily provide information to the IRS, it was reasonable for Special Agent Burgess to believe that Dean would not cooperate, which required her to seek information from third parties. (*Id.* ¶8.)

2. Special Agents Are Required to Contact Third Parties to Obtain, Corroborate and Verify Information.

For argument's sake, even assuming that Dean was cooperating with the investigation and providing information, there is no rule requiring a special agent to seek the information directly or solely from the taxpayer who is under investigation. *Roebuck,* 1999 WL 501003, at *3.[5] In fact, standard operating procedures for special agents require them to make third party contacts. The portion of the Internal Revenue Manual pertaining to criminal investigations makes it the special agent's duty to interview the taxpayer and witnesses with relevant information to obtain leads,

---

[5] The temporary regulations now provide a definition for "information not otherwise reasonably available" which explains: "This definition does not require or create the presumption or expectation that an internal revenue or TIGTA employee must seek information from a taxpayer or authorize representative prior to contacting a third party witness in an investigation. Moreover, an internal revenue or TIGTA employee may make a disclosure to a third party witness to corroborate information provided by a taxpayer." *See Treas. Reg.* §301.6103(k)(6)-1T(c)(3).

develop information and establish evidence.  (Undisputed Facts ¶10 (citing Int. Rev. Man.

§9.4.5.3.)

Two other pertinent sections of the Internal Revenue Manual set forth situations where

"necessary information generally will not be available from the taxpayer or will not be in a usable

form."  (*Id.* ¶11 (citing Int. Rev. Man. §§9.3.1.3.1(2)(a.) and §11.3.21.3(5)(a.).)  One of the

situations set forth is when "corroboration is needed for a taxpayer's statement or records."  (*Id.*)

As set forth in Special Agent Burgess' declaration, she was able to identify third parties from

Dean's bank records with which Dean had engaged in financial transactions.  She then contacted

these specific entities in order to verify the transactions and determine if the transactions were a

source of income which Dean failed to report.  (Undisputed Facts ¶¶11, 15, 21; Burgess Decl.

¶¶18, 24.)  Thus, all of the third party contacts were, by definition, necessary because Special

Agent Burgess had to corroborate, verify and obtain additional information based upon Dean's

records. (Undisputed Facts ¶9; Burgess Decl. ¶¶12-13.)

Obtaining, verifying and corroborating information directly with a third party has other

direct benefits to an investigation.  It better ensures that the information would be admissible at

trial, for example, if Dean claimed his Fifth Amendment privilege.  It further ensures, should the

information be presented at trial, that it is reliable.  Verification and corroboration keep an

investigation from being solely based on the taxpayer's representations and information, which

may be inherently unreliable because of the conflict of interest that exists between the IRS and the

taxpayer being investigated.  (Burgess Decl. ¶14.)[6]  These are tangible benefits necessitating third party contacts during an investigation.

The district court in *Roebuck* agreed with this analysis – special agents, regardless of the circumstances, must contact third parties as part of the investigative procedures.  "[E]ven if Plaintiff had provided Special Agent Taggart with the requested information, under standard operating procedure the third parties still would have been contacted in the interest of verifying the accuracy of the information."  *Roebuck*, 1999 WL 501003, at *3 (emphasis inserted); *but cf. Payne v. United States,* 289 F.3d 377, 382-84 (5th Cir. 2002) (determination if taxpayer is a reasonable source of information is made under the facts of each case, and the taxpayer's cooperation is a factor).  The Internal Revenue Manual and case law confirm that it was required, and thus reasonable, for Special Agent Burgess to have sought information from third parties even if Dean was cooperating with the investigation.

It was reasonable under the facts and circumstances for Special Agent Burgess to seek information from third-parties because Dean was not cooperating with the investigation.  But even if Dean was cooperating, a special agent is required by the Internal Revenue Manual to seek information from third parties to obtain, verify and corroborate information.  As a matter of law, the information sought from the third parties was not otherwise reasonably available.

---

[6]        The background notes to the new temporary regulations affirm this conclusion: "The facts and circumstances will help determine the necessity of the disclosures, but IRS and TIGTA officers of employees have wide latitude to determine whether the taxpayer is a reasonable source of information.  The temporary regulations clarify that disclosures are authorized to verify independently, or to corroborate, from third party sources, information obtained from or concerning the taxpayer." *See* 68 Fed. Reg. at 41,075 (emphasis inserted).

**C.     The Disclosure of Return Information Made to the Third-Parties Was Necessary.**

The second question that must be answered, then, is whether it was "necessary" for Special Agent Burgess to identify herself as a special agent from the IRS Criminal Investigation Division, to inform third parties that she was conducting an investigation of Dean and to display the words "Criminal Investigation" on the summonses and on the return addresses of envelopes.

A District Court in the Eastern District of North Carolina, which was affirmed by the Fourth Circuit, has considered whether IRS special agents violate Section 6103 when they disclose to third party witnesses that the taxpayer is the subject of an investigation. *See Roebuck*, 1999 WL 501003, *affirmed,* 84 A.F.T.R.2d 99-7051 (4th Cir.).  In *Roebuck,* the plaintiff alleged that the special agent violated Section 6103 when she disclosed to third party witnesses that he was under investigation by IRS Criminal Investigation Division.  The Special Agent served summonses by mail on two companies.  In the envelopes, she included her business card, which identified her as a special agent with the IRS Criminal Investigation Division.  She also interviewed two witnesses in person, identifying herself by displaying her credentials, giving them her business card and identifying Mr. Roebuck as the subject of the investigation.  Finally, the agent routinely sent correspondence in envelopes with a return address bearing the words "Criminal Investigation Division."

On these similar facts, the Court awarded summary judgment for the United States, holding that the disclosures were authorized by Section 6103(k)(6).  Citing the regulation quoted above, the court spoke to the necessity of disclosures.

> Necessity . . . must be determined by the particular circumstances
> surrounding the disclosures in question.  In the case at bar, Special
> Agent Taggart could not have otherwise reasonably obtained the

- 12 -

> information sought without impairing the proper performance of her
> official duties. . . . Special Agent Taggart indirectly informed the
> parties of the nature of the investigation as a service, in order to
> ensure that the parties knew who she was and what she was doing.
> Indeed, responding to a similar scenario in *Fostvedt v. United
> States*, 824 F.Supp. 978, 983 (D. Colo. 1993), *aff'd*, 16 F.3d 416
> (10th Cir. 1994), that court noted that "no investigation could ever
> proceed without disclosure of such minimal 'nonsensitive' facts as
> the taxpayer's name, tax number, and the reason for the letter of
> inquiry."

*Id.*, 1999 WL 501003 at *2. This court established the rule that special agents – when contacting

third parties for specific information – can disclose who they are, the fact that they are conducting

an investigation and the taxpayer's name who they are investigating as <u>necessary</u> disclosures of

return information.

The *Roebuck* court went on to explain the dangers that would likely occur if an agent did

not make these necessary disclosures. For example, if the agent did not identify the taxpayer

under investigation, third parties might erroneously assume that they were under investigation.

More significantly, the Service's refusal to identify the "nature of its inquiries, would be

remarkably similar to the very type of 'intolerable' and 'widespread' government intrusion" that

the Section 6103 amendments of 1976 were enacted to prevent. *Id.*, 1999 WL 501003, at *4.

Indeed, the court noted, had Special Agent Taggart not identified herself, she might have faced

misrepresentation charges, and the government might have had the evidence excluded in the

criminal trial. *See id.* (citing *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977)).

This case is identical to *Roebuck*. The IRS policy and procedure in effect at the time

Special Agent Burgess made these authorized disclosures required that "Criminal Investigation"

be inserted on line two of the summonses. (Undisputed Facts ¶22; Burgess Decl. ¶25, Exs. 10-

11.)  IRS policy and procedure require that a special agent identify herself as a special agent from

IRS Criminal Investigation and inform a third party to whom she is talking that she is conducting

an investigation of the taxpayer.  (Undisputed Facts ¶18; Burgess Decl. ¶21, Ex. 9.)  IRS policy

and procedure made it necessary for Special Agent Burgess to make the disclosures that Dean

asserts were illegal.

In conclusion, it <u>was reasonable</u> for special agent Burgess to seek information from the

third parties, if not required, and it <u>was necessary</u> for her to introduce herself to third party

witnesses as an agent from IRS Criminal Investigation, identify the taxpayer under investigation

and describe the nature of the official inquiry she was conducting.  As such, all of the disclosures

that Dean complains of were authorized by Section 6103(k)(6), and the defendants are entitled to

judgment as a matter of law.

## II.    IN THE ALTERNATIVE, THE DISCLOSURES OF DEAN'S RETURN INFORMATION WERE MADE PURSUANT TO A GOOD FAITH INTERPRETATION OF SECTION 6103.

Section 7431(b) provides that a taxpayer may not recover damages for any disclosure that

"results from a good faith, but erroneous, interpretation of section 6103."  This exception is

considered under an objective standard of whether an agent's conduct "violates clearly established

statutory or constitutional rights of which a reasonable person would have known." *Comyns*, 155

F. Supp. 2d at 1349 (citations omitted) (quoting *Huckaby v. United States,* 794 F.2d 1041, 1048

(5th Cir. 1986)).  The Court should examine whether the agent "followed the procedures and rules

that are found in the IRS's Special Agent Handbook" *Id.*  Only those procedures directly applying

to the disclosures at issue are relevant.  For example, procedures and rules concerning circular

letters or other non-discriminatory contacts should be disregarded.  *Id.*  For instance, the portion

- 14 -

of the Handbook for Special Agents cited by Dean in his complaint pertains to circular letters and should be disregarded.  (Compl. ¶23.)

The Eleventh Circuit has had the opportunity to apply this good faith exception under its own methodology in the *Comyns* case.  The facts of the *Comyns* case are very similar to the facts before this Court and provide a compelling basis for finding that Special Agent Burgess' alleged unauthorized disclosures were made in good faith.

In *Comyns,* the written disclosures at issue concerned summonses issued by special agents compelling the disclosure of documents related to the plaintiff, and letters accompanying the summonses and follow up letters.  Some of the letters were written on IRS/Department of Treasury letterhead containing "Criminal Investigation Division", but others were not.  There were also other alleged illegal disclosures that occurred when the agents personally contacted third parties during their criminal investigation.  During these personal contacts, the agents produced their business cards identifying themselves from the Criminal Investigation Division and disclosed to the third parties that they were investigating the plaintiff.  *See id.*, 155 F. Supp. 2d at 1346-47.  The district court found, and the Eleventh Circuit affirmed, that all of these disclosures were made in good faith.

In coming to this conclusion the court adopted a two prong analysis: "1) the agent or agents who disclosed tax return information in violation of §6103 followed the relevant agency regulations and/or manuals, and 2) the regulations and/or manuals followed by those agents constituted a reasonable interpretation of the law." *Id.* at 1350.  In applying this two pronged test to Special Agent Burgess' actions, it is without dispute that she followed the policies and

procedures of the IRS, and those policies and procedures are a reasonable interpretation of Section 6103 as a matter of law.

### A.     The Written Disclosures.

Dean asserts that issuing summonses that indicated that they are sent from the Criminal Investigation Division are, in themselves, unlawful disclosures in violation of Section 6103. (Undisputed Facts ¶24.)  But Dean could not be more wrong.  None of the statutes, regulations, manuals, handbooks or otherwise prohibit a special agent from including "Criminal Investigation", "Criminal Investigation Division" or "CI" on summonses.  Quite to the contrary, IRS regulation, policy, and procedure requires that "Criminal Investigation" be inserted on all summonses.  Indeed, the very nature of the summons' form on its face requires that the issuer of the summons provide the Division from which is was issued on line two.  (*See* Compl., Exs. A-C.)

The Service issued a memorandum dated March 5, 2001 advising its special agents that they should insert Criminal Division as the issuing division on line two of the summonses.  The IRS came to this decision based upon its analysis of the law and relevant statutes.  (Undisputed Fact ¶25.)  The IRS then reconfirmed this position in a subsequent memorandum dated December 3, 2002.  (*Id.*)  The policy set forth in these two memorandum was the policy in effect when Special Agent Burgess issued the summonses in connection with the Dean investigation.  As Special Agent Burgess is a special agent with Criminal Investigation, she filled out the summonses in accordance with this policy by inserting "Criminal Investigation" on line two.

The second type of written disclosure involves the envelopes in which the summonses were sent.  On the envelope it is alleged that the return address contained "Criminal

- 16 -

Investigation", "CI" or some other derivation thereof. (Compl. ¶9; Undisputed Facts ¶23.) The disclosure of criminal investigation on the envelopes is an authorized disclosure just like the disclosures made on line two of the summonses. These are the envelopes provided by the Service for mailing official correspondence. Using official envelopes to send summonses also apprises the recipient as to the nature of its contents, protects the correspondence from being summarily discarded, and ensure that the mail is timely handled. Special Agent Burgess believed that it was necessary to use the Service's official envelopes when mailing the summonses issued to the third parties. (*Id.*) The envelopes should not be treated any different than the summonses because the type of disclosure is the same – the disclosure is made to the same third parties and the summonses were in these very envelopes. The *Roebuck* court granted summary judgment for the defendant when this type of disclosure was at issue. *Roebuck,* 1999 WL 501003, at *1, 4; *see also Comyns,* 155 F. Supp. 2d at 1346, 1352 (similarly granting summary judgment when "Criminal Investigation Division" appeared on official letterhead).

Applying the Eleventh Circuit's precedent in *Comyns* to the facts at hand mandates the conclusion that Special Agent Burgess' writing "Criminal Investigation Division" on the summonses and envelopes was made in reliance on IRS policy and procedure, and the IRS policy and procedure is a reasonable interpretation of the law. Summary Judgment must be granted for the defendants on the written disclosures.

> 2.      **The Oral Disclosures.**

Dean also alleges that Special Agent Burgess illegally disclosed that she was from IRS Criminal Investigation conducting an investigation of Dean when speaking with third parties either in person or by telephone. (Undisputed Fact ¶19.) Special Agent Burgess confirms that

when she spoke with third parties whether by telephone or in person it is her standard practice to

do the following: (1) state her name; (2) state her title and agency and division with which she

works; (3) display her badge and credentials; and (4) identify the subject of the investigation

about whom she is seeking information.  (Undisputed Facts ¶16.)  She made these oral disclosures

during her telephone conversations and when she met with Dillon Vickery in person.  (*Id.* ¶17.)

She never said that Dean was under "criminal investigation."  (*Id.* ¶25.)

These disclosures that Special Agent Burgess made are specifically authorized by IRS

policy and procedure.  In a memorandum addressed to CI agents, the IRS gives an example of an

authorized disclosure that a special agent can make when contacting third parties in person in the

form of a dialogue.

> Mr. or Ms. XXXXXX my name is John Doe, I am a special agent with
> Internal Revenue Service, Criminal Investigation (display credentials for
> examination and introduce any other officials present).  I am conducting
> an investigation of Mr. or Ms. XXXXX and I would like to ask you some
> questions regarding this matter.

(Undisputed Facts ¶18; Burgess Decl. ¶21, Ex. 8.)  Special Agents Burgess was squarely in

compliance with this memorandum's directions, and this memorandum reflects the IRS policy

and procedure that was in effect at the time Special Agent Burgess spoke with third parties in

connection with the Dean investigation.

The Fifth Circuit in *Gandy* also came to the same conclusion.  In this case, the plaintiff

alleged the special agent violated Section 6103 when he introduced himself in person to third-

party witnesses, and when he mailed letters to four other witnesses, where he identified himself as

a special agent with the IRS Criminal Investigation Division, and identified Mr. Gandy as the

subject of the criminal investigation.  The Court, after determining that the disclosures were made

in good faith, observed:

> . . . it is clear to us that agents are authorized to display their
> credentials and badges identifying them as Criminal Investigation
> Division agents when interviewing a third party.  Knowledgeable
> persons know that agents in the criminal division conduct only
> criminal investigations.  An agent's knowledge that his badge
> identifies his area of investigation further supports a reasonable
> agent's conclusion that he is authorized to orally disclose – what the
> third party probably already knows – that the agent is conducting a
> criminal investigation.

*Id.,* 234 F.3d at 286-287.  The *Gandy* court acknowledged that special agents should not be

prohibited from stating the obvious – the investigations that special agents from IRS Criminal

Investigation conduct are criminal in nature.  Although Special Agent Burgess did not disclose

that Dean was under "criminal investigation"  (Undisputed Facts ¶25), according to *Gandy*, even if

Special Agent Burgess did say that she was conduct a "criminal investigation", the disclosure was

made in good faith and did not constitute a violation of Section 7431.  The defendants believe this

common sense approach is preferable.  Special Agent Burgess' verbal disclosures were in

accordance with IRS regulation, policy, and procedure.

The question then turns to whether the IRS regulation, policy, and procedure allowing for

these disclosures is a reasonable interpretation of the law.  The statute, regulations, and Internal

Revenue Manual all allow for the disclosure of return information during an investigation to the

extent necessary to gain information not otherwise reasonably available.  *See* 26 U.S.C.

§6103(k)(6); C.F.R. 301.6103(k)(6)-1; Int. Rev. Man. §§I.R.M. § 9.3.1.3 and 11.3.21.3.  If a

special agent could not make these basic disclosures to a third party, it would very difficult for the

special agent to gather needed information if the third party was not informed of who they are,

what they are doing and the purpose of the meeting.  As discussed above, without making these

disclosures, the IRS could be accused of misrepresentations.  Thus, these would be the types of

disclosures that a special agent would believe are necessary to obtain information from a witness,

which is allowable under the Internal Revenue Manual.   (Undisputed Facts ¶24; Burgess Decl.

¶¶14, 27 (citing I.R.M. § 9.3.1.3).)  For these same reasons, the *Comyns* court expressly affirmed

that these were the type of disclosures that fall within the good faith exception of Section 7431(b).

*See Comyns,* 155 F. Supp. 2d at 1351-52.  The IRS regulation, policy, and procedure allowing for

the disclosure that a taxpayer is the subject of an investigation by IRS Criminal Investigation is a

reasonable interpretation of the law.

     The relevant statute, regulations, the Internal Revenue Manual, and the internal

memorandum lead one to the conclusion that, if the disclosures of Dean's return information were

unauthorized, the disclosure, although erroneous, was made in reliance upon IRS regulation,

policy, and procedure that are reasonable interpretations of the law.

CONCLUSION

     The disclosures that form the basis of Dean's complaint were not only authorized, but they

were also made in accordance with IRS policy, and procedure, which was based upon an

objective, good faith, interpretation of §6103(k)(6).  As such, the United States and the Internal

Revenue Service are entitled to judgment as a matter of law.

///

///

///

///

-  20  -

DATED: October 16, 2003

Respectfully submitted,

GREGORY R. MILLER
United States Attorney


MICHAEL J. SALEM
LINDSEY W. COOPER, JR.
(TN Bar No. 020705, DC Bar No. 473895)
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, DC  20044
Telephone: (202) 307-6528
Facsimile: (202) 514-6866

*Attorneys for the United States and
Internal Revenue Service*

Insert Sheet for Tab Page[1]

# EXHIBIT 1

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.

Source: Legal > Federal Legal - U.S. > Archived Code of Federal Regulations > CFR 2002
Terms: 301.6103(k)(6)-1  (Edit Search)

*26 CFR 301.6103(k)(6)-1*

LEXIS PUBLISHING'S CODE OF FEDERAL REGULATIONS
Copyright © 2002, LEXIS Publishing

TITLE 26 -- INTERNAL REVENUE
REVISED AS OF APRIL 1, 2002
CHAPTER I -- INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY
SUBCHAPTER F -- PROCEDURE AND ADMINISTRATION
PART 301 -- PROCEDURE AND ADMINISTRATION
INFORMATION AND RETURNS
RETURNS AND RECORDS
MISCELLANEOUS PROVISIONS

26 CFR **301.6103(k)(6)-1**

§ **301.6103(k)(6)-1** Disclosure of return information by Internal Revenue officers and employees for investigative purposes.

(a) Disclosure of taxpayer identity information and fact of investigation in connection with official duties relating to examination, collection activity, civil or criminal investigation, enforcement activity, or other offense under the internal revenue laws. In connection with the performance of official duties relating to any examination, collection activity, civil or criminal investigation, enforcement activity, or other offense under the internal revenue laws, or in connection with preparation for any proceeding (or investigation which may result in such a proceeding) described in section 6103(h)(2) of the Internal Revenue Code, an officer or employee of the Internal Revenue Service or Office of the Chief Counsel therefor is authorized to disclose taxpayer identity information (as defined in section 6103(b)(6)), the fact that the inquiry pertains to the performance of official duties, and the nature of the official duties in order to obtain necessary information relating to performance of such official duties or where necessary in order to properly accomplish any activity described in subparagraph (6) of paragraph (b) of this section. Disclosure of taxpayer identity information to a person other than the taxpayer to whom such taxpayer identity information relates or such taxpayer's legal representative for the purpose of obtaining such necessary information or otherwise properly accomplishing such activities as authorized by this paragraph should be made, however, only if the necessary information cannot, under the facts and circumstances of the particular case, otherwise reasonably be obtained in accurate and sufficiently probative form, or in a timely manner, and without impairing the proper performance of the official duties, or if such activities cannot otherwise properly be accomplished without making such disclosure.

(b) Disclosure of return information in connection with official duties relating to examination, collection activity, civil or criminal investigation, enforcement activity, or other offense under the internal revenue laws. In connection with the performance of official duties relating to any examination, collection activity, civil or criminal investigation, enforcement activity, or other offense under the internal revenue laws, an officer or employee of the Service or Office of the Chief Counsel therefor is authorized to disclose return information (as defined in section 6103(b)(2)) in order to obtain necessary information relating to the following--

(1) To establish or verify the correctness or completeness of any return (as defined in section 6103(b)(1) of the Code) or return information;

(2) To determine the responsibility for filing a return, for making a return where none has been made, or for performing such acts as may be required by law concerning such matters,

(3) To establish or verify the liability (or possible liability) of any person, or the liability (or possible liability) at law or in equity of any transferee or fiduciary of any person, for any tax, penalty, interest, fine, forfeiture, or other imposition or offense under the internal revenue laws or the amount thereof to be collected;

(4) To establish or verify misconduct (or possible misconduct) or other activity proscribed by the internal revenue laws;

(5) To obtain the services of persons having special knowledge or technical skills (such as, but not limited to, knowledge of particular facts and circumstances relevant to a correct determination of a liability described in subparagraph (3) of this paragraph or skills relating to handwriting analysis, photographic development, sound recording enhancement, or voice identification) or having recognized expertise in matters involving the valuation of property where relevant to proper performance of a duty or responsibility described in this paragraph;

(6) To establish or verify the financial status or condition and location of the taxpayer against whom collection activity is or may be directed, to locate assets in which the taxpayer has an interest, to ascertain the amount of any liability described in subparagraph (3) of this paragraph to be collected, or otherwise to apply the provisions of the Code relating to establishment of liens against such assets, or levy on, or seizure, or sale of, the assets to satisfy any such liability; or

(7) To prepare for any proceeding described in section 6103(h)(2) or conduct an investigation which may result in such a proceeding, or where necessary in order to accomplish any activity described in subparagraph (6) of this paragraph.

Disclosure of return information to a person other than the taxpayer to whom such return information relates or such taxpayer's legal representative for the purpose of obtaining information necessary to properly carry out the foregoing duties and responsibilities as authorized by this paragraph or for the purpose of otherwise properly accomplishing any activity described in subparagraph (6) of this paragraph should be made, however, only if such necessary information cannot, under the facts and circumstances of the particular case, otherwise reasonably be obtained in accurate and sufficiently probative form, or in a timely manner, and without impairing the proper performance of such duties and responsibilities, or if the activities described in subparagraph (6) of this paragraph cannot otherwise properly be accomplished without making such disclosure.

(c) Disclosure of return information in connection with certain personnel or claimant representative matters. In connection with the performance of official duties relating to any investigation concerned with the enforcement of any provision of the Code, including enforcement of any rules, directives, or manual issuances prescribed by the Secretary or his delegate under section 7803 or any other provision of the Code, which affect or may affect the personnel or employment rights or status, or civil or criminal liability, of any employee or former or prospective employee of the Treasury Department or the rights of any person who is or may be a party to an administrative action or proceeding pursuant to 31 U.S.C. 1026, an officer or employee of the Service or Office of the Chief Counsel therefor is authorized to disclose return information (as defined in section 6103(b)(2)) for the purpose of obtaining, verifying, or establishing other information which is or may be relevant and material to such investigation. Disclosure of return information to a person other than the taxpayer to whom such return information relates or such taxpayer's legal representative for the purpose of obtaining information necessary to properly carry out the foregoing duties and responsibilities as authorized by this paragraph should be made, however, only if such necessary information cannot, under the facts and circumstances of the particular case, otherwise reasonably be

obtained in accurate and sufficiently probative form, or in a timely manner, and without impairing the proper performance of such duties and responsibilities.

**HISTORY:**
[T.D. 7723, 45 FR 65569, Oct. 3, 1980]

**AUTHORITY:**
(Secs. 6103 and 7805 of the Internal Revenue Code of 1954 (90 Stat. 1667, 68A Stat. 917; 26 U.S.C. 6103 and 7805))

**NOTES:**
NOTES APPLICABLE TO ENTIRE CHAPTER:
EDITORIAL NOTE: IRS published a document at 45 FR 6088, Jan. 25, 1980, deleting statutory sections from their regulations. In Chapter I, cross references to the deleted material have been changed to the corresponding sections of the IRS Code of 1954 or to the appropriate regulations sections. When either such change produced a redundancy, the cross reference has been deleted. For further explanation, see 45 FR 20795, March 31, 1980. [The OMB control numbers for title 26 appear in §§ 601.9000 and 602.101 of this chapter.]


NOTES APPLICABLE TO ENTIRE PART:
EDITORIAL NOTE: In the text of this part, integral section references are to sections of the Internal Revenue Code of 1954; decimal section references are to the Code of Federal Regulations.
References in the text to the "Code" are references to sections of the Internal Revenue Code of 1954.

Source: Legal > Federal Legal - U.S. > Archived Code of Federal Regulations > CFR 2002 🛈
Terms: **301.6103(k)(6)-1**  (Edit Search)
View: Full
Date/Time: Thursday, October 2, 2003 - 12:17 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Insert Sheet for Tab Page[1]

# EXHIBIT 2

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.

Citation                    Found Document              Rank 1 of 1                    Database
68 FR 41073-01                                                                         FR
2003 WL 21542237 (F.R.)
**(Cite as: 68 FR 41073)**

RULES and REGULATIONS

DEPARTMENT OF THE TREASURY

Internal Revenue Service

26 CFR Part 301

[TD 9073]

RIN 1545-BB17

Disclosure of Return Information by Certain Officers and Employees for
Investigative Purposes

Thursday, July 10, 2003

**\*41073**  AGENCY: Internal Revenue Service (IRS), Treasury.

ACTION: Temporary regulations and removal of final regulations.

SUMMARY: This document contains temporary regulations relating to the disclosure
of return information pursuant to section 6103(k)(6) of the Internal Revenue
Code.  The temporary regulations describe the circumstances under which officers
or employees of the IRS, the IRS Office of Chief Counsel, and the Office of
Treasury Inspector General for Tax Administration (TIGTA), in connection with
official duties relating to any examination, administrative appeal, collection
activity, administrative, civil, or criminal investigation, enforcement
activity, ruling, negotiated agreement, prefiling activity, or other proceeding
or offense under the internal revenue laws or related statutes, or in
preparation for any proceeding described in section 6103(h)(2) (or investigation
which may result in such a proceeding), may disclose return information to the
extent necessary to obtain information relating to such official duties or to
accomplish properly any activity connected with **\*41074**  such official duties.
The temporary regulations amend the existing regulations to clarify and
elaborate on the facts and circumstances in which disclosure pursuant to section
6103(k)(6) is authorized.  The temporary regulations clarify that IRS and TIGTA
officers and employees make the determination, based on the facts and
circumstances, at the time of the disclosure, whether a disclosure is necessary
to obtain the information sought, and that section 6103(k)(6) does not affect
the authority or decision of IRS and TIGTA officers and employees to initiate,
or to conduct, an investigation, or to determine the nature of the
investigation.  The temporary regulations clarify that the return information of
any taxpayer, not only the taxpayer under investigation, may be disclosed when
necessary to obtain the information sought in an investigation.  The temporary

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

68 FR 41073-01
**(Cite as: 68 FR 41073, \*41074)**

regulations clarify that section 6103(k)(6) permits IRS and TIGTA officers and employees to identify themselves, their organizational affiliation with the IRS (e.g., Criminal Investigation (CI)) or TIGTA (e.g., Office of Investigations (OI)), and the nature of their investigation when making oral, written, or electronic contacts with third party witnesses.  The text of the temporary regulations also serves as the text of the proposed regulations set forth in the notice of proposed rulemaking on this subject in the Proposed Rules section in this issue of the Federal Register.

DATES: Effective Date: These temporary regulations are effective July 10, 2003.

FOR FURTHER INFORMATION CONTACT: Helene R. Newsome, 202-622-4570 (not a toll-free number).

SUPPLEMENTARY INFORMATION:

Background

 Under section 6103(a), returns and return information are confidential unless the Code authorizes disclosure.  Section 6103(k)(6) authorizes an internal revenue officer or employee and an officer or employee of TIGTA, in connection with official duties relating to any audit, collection activity, civil or criminal tax investigation, or offense under the internal revenue laws or related statutes, to disclose return information to a person other than the taxpayer to whom such return information relates (or his or her representative) to the extent that such disclosure is necessary to obtain information not otherwise reasonably available with respect to the correct determination of tax, liability for tax, or the amount to be collected, or with respect to the enforcement of any other provision of the Code or related statutes.  Disclosure is subject to situations and conditions prescribed by regulation.
 The temporary regulations amend the existing regulations to reflect a recent legislative amendment to section 6103(k)(6).  The Consolidated Appropriations Act, 2001, Public Law 106-554 (114 Stat. 2763), was signed into law on December 21, 2000.  Section 1 of that Act enacted into law H.R. 5662, the Community Renewal Tax Relief Act of 2000.  Section 313(c) of the Community Renewal Tax Relief Act of 2000 amended section 6103(k)(6) to clarify that officers or employees of TIGTA are among those persons authorized to make disclosures under section 6103(k)(6).
 The temporary regulations also clarify the standard used in determining whether disclosures are authorized under section 6103(k)(6).  Recent litigation indicates that there is some confusion as to the authority of IRS (and now TIGTA) officers and employees to make disclosures in certain situations under section 6103(k)(6).  The temporary regulations seek to address these issues. In particular, the temporary regulations address the issues surrounding the disclosures that occur when IRS or TIGTA officers and employees introduce themselves to third party witnesses or communicate in writing using, e.g., official letterhead that reveals affiliation with IRS or TIGTA.  The temporary regulations also clarify that section 6103(k)(6) does not limit IRS or TIGTA

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

68 FR 41073-01
**(Cite as: 68 FR 41073, \*41074)**

officers and employees with respect to the initiation or conduct of an
investigation.  Finally, the temporary regulations clarify that section 6103
does not require IRS and TIGTA officers or employees to contact a taxpayer for
information before contacting third party witnesses.

Explanation of Provisions

 The temporary regulations amend the existing regulations to clarify that there
is a single, objective standard for all disclosures under section 6103(k)(6).
This standard is embodied in the definitions of the terms disclosure of return
information to the extent necessary and information not otherwise reasonably
available.
 The definition of disclosure of return information to the extent necessary is a
disclosure of return information that an IRS or TIGTA officer or employee, based
on the facts and circumstances known to the officer or employee at the time of
the disclosure, reasonably believes is necessary to obtain information to
perform properly the official duties described by the temporary regulations, or
to accomplish properly the activities connected with carrying out those official
duties.  The term necessary in this context does not mean essential or
indispensable, but rather appropriate and helpful in obtaining the information
sought.
 The definition of information not otherwise reasonably available is information
that an IRS or TIGTA officer or employee reasonably believes, under the facts
and circumstances known to the officer or employee at the time of a disclosure,
cannot be obtained in a sufficiently accurate or probative form, or in a timely
manner, and without impairing the proper performance of the official duties
described by the temporary regulations, without making the disclosure.
Corroboration of information provided by, or concerning, a taxpayer is, by
definition, information not otherwise reasonably available from the taxpayer.
In criminal cases, corroboration of information provided by the taxpayer is
essential.  See Smith v.  United States, 348 U.S. 147 (1954).
 The temporary regulations clarify that section 6103(k)(6) does not alter or
affect the authority of IRS and TIGTA officers or employees to decide whether or
how to conduct an investigation.  For example, in an action for wrongful
disclosure under section 7431, the inquiry is whether the particular disclosure
at issue was consistent with section 6103(k)(6), not the necessity of conducting
an investigation or the appropriateness of the means or methods chosen to
conduct the investigation.  Thus, the temporary regulations remove the term
necessary from several places in the existing regulations where the term may
have implied a requirement, under section 6103(k)(6), that the information
sought be necessary to or for an investigation (e.g., §
301.6103(k)(6)-1(a) ("disclose * * * to obtain necessary information")).  Removal
of the term necessary in these instances clarifies that the standard is whether
disclosure is necessary to obtain the information sought, not whether the
information sought is necessary for the investigation.  See Barrett v. United
States, 795 F.2d 446 (5th Cir. 1986).
 The temporary regulations also address certain issues that have arisen in
criminal investigations, although similar issues may arise in civil

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Page 4

68 FR 41073-01
**(Cite as: 68 FR 41073, \*41074)**

investigations.  Criminal investigations typically involve obtaining evidence
and verifying taxpayer-supplied information through contacts with third party
witnesses.  A disclosure that a taxpayer is under criminal investigation may
occur by various means including, but not limited to, direct oral, written, or
electronic disclosure, or indirect **\*41075**  disclosure by the introduction of the
special agent through the presentation of a CI or OI badge, credential, or
business card, or through the use of information document requests, summonses,
or correspondence, about an identified taxpayer, on CI or OI letterhead or that
bears a CI or OI return address or signature block.  In litigation, taxpayers
have asserted that CI special agents, by various means, wrongfully disclosed the
criminal nature of the investigation of the taxpayers in the course of
conducting third party witness interviews or inquiries.  See, e.g., Comyns v.
United States, 155 F. Supp. 2d 1344 (S.D. Fla. 2001), aff'd, 287 F.3d 1034 (11th
Cir. 2002); Payne v.  United States, 91 F. Supp. 2d 1014 (S.D. Tex. 1999),
rev'd, 289 F.3d 377 (5th Cir. 2002); Gandy v.  United States, 99-1 U.S. Tax Cas.
(CCH) 50,237 (E.D. Tex. 1999), aff'd, 234 F.3d 281 (5th Cir. 2000); Rhodes v.
United States, 903 F. Supp. 819 (M.D. Pa. 1995); Diamond v.  United States, 944
F.2d 431 (8th Cir. 1991).
 When CI special agents disclose to third party witnesses that a taxpayer is
under criminal investigation, there is a risk that the disclosure may adversely
affect the taxpayer's reputation, particularly if the third party witnesses have
no prior independent knowledge of the investigation.  The government and third
party witnesses have equally important interests at stake: The CI special
agents' authority to accurately identify themselves so as not to mislead third
party witnesses, and the third party witnesses' interest in knowing that the
inquiry involves a criminal investigation to fairly assess the situation and
protect their own interests.  See Roebuck v.  United States, 83 A.F.T.R.2d (RIA)
99-2947 (E.D.N.C. 1999), aff'd, 84 A.F.T.R.2d (RIA) 99- 7051 (4th Cir. 1999).
This issue has concerned the Department of the Treasury and the Staff of the
Joint Committee on Taxation, both of which have recommended legislation to
clarify that CI special agents may identify themselves as CI special agents when
contacting third party witnesses in the course of a criminal investigation.  See
Study of Present-Law Taxpayer Confidentiality and Disclosure Provisions as
Required by Section 3802 of the Internal Revenue Service Restructuring and
Reform Act of 1998, Vol. I: Study of General Disclosure Provisions (JCS-1-00),
at 208-11, Joint Committee on Taxation, January 28, 2000; Report to the Congress
on Scope and Use of Taxpayer Confidentiality and Disclosure Provisions, Vol. I:
Study of General Provisions, at 51-52, Office of Tax Policy, Department of the
Treasury, October 2000.  The temporary regulations clarify that section
6103(k)(6) permits, but does not require, IRS or TIGTA officers or employees,
including CI or OI special agents, to identify themselves, their organizational
affiliation with the IRS or TIGTA, and the nature of the investigation, when
making oral, written, or electronic contacts with third party witnesses.
 Moreover, the temporary regulations do not require IRS or TIGTA officers or
employees to contact a taxpayer for information before contacting a third party
witness.  The temporary regulations clarify that, if an IRS or TIGTA officer or
employee reasonably believes, under the facts and circumstances, at the time of
a disclosure, that information cannot be obtained from a taxpayer in a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

68 FR 41073-01
**(Cite as: 68 FR 41073, \*41075)**

sufficiently accurate or probative form, or in a timely manner, without
impairing the proper performance of official duties, then the officer or
employee may disclose taxpayer identity or other return information in seeking
information from a third party.  For example, a taxpayer may be a reasonable
source of routine business records, but not of records detailing alleged illegal
transactions or sources of income.  The facts and circumstances will help
determine the necessity of the disclosures, but IRS and TIGTA officers or
employees have wide latitude to determine whether the taxpayer is a reasonable
source of information.  The temporary regulations clarify that disclosures are
authorized to verify independently, or to corroborate, from third party sources,
information obtained from or concerning the taxpayer.

 The temporary regulations expand upon the list of official duties relating to
tax administration for which disclosure, pursuant to section 6103(k)(6), is
authorized, and clarify that this list is not exhaustive. Finally, the temporary
regulations retain the authority for IRS and TIGTA officers or employees to make
section 6103(k)(6) disclosures in certain personnel or claimant representative
matters.

Special Analyses

 It has been determined that this Treasury decision is not a significant
regulatory action as defined in Executive Order 12866.  Therefore, a regulatory
assessment is not required.  It has also been determined that 5 U.S.C. 553(b),
the Administrative Procedure Act, does not apply to these regulations, and
because the regulation does not impose a collection of information on small
entities, the Regulatory Flexibility Act (5 U.S.C. chapter 6) does not apply.
Pursuant to section 7805(f), these temporary regulations will be submitted to
the Chief Counsel for Advocacy of the Small Business Administration for comment
on its impact on small business.

Drafting Information

 The principal author of these regulations is Helene R. Newsome, Office of the
Associate Chief Counsel (Procedure and Administration), Disclosure and Privacy
Law Division.

List of Subjects in 26 CFR Part 301

 Employment taxes, Estate taxes, Excise taxes, Gift taxes, Income Taxes,
Penalties, Reporting and recordkeeping requirements.

Amendments to the Regulations

 Accordingly, 26 CFR part 301 is amended as follows:

PART 301--PROCEDURE AND ADMINISTRATION

 Paragraph 1. The authority citation for part 301 is amended by adding an entry

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

68 FR 41073-01
**(Cite as: 68 FR 41073, \*41075)**

in numerical order to read as follows:

Authority: 26 U.S.C. 7805 * * *

Section 301.6103(k)(6)-1T also issued under 26 U.S.C. 6103(k)(6); * * *

26 CFR § 301.6103(k)(6)-1

§ 301.6103(k)(6)-1 [Removed]

26 CFR § 301.6103(k)(6)-1

Par. 2. Section 301.6103(k)(6)-1 is removed.

26 CFR § 301.6103(k)(6)-1T

Par. 3. Section 301.6103(k)(6)-1T is added to read as follows:

26 CFR § 301.6103(k)(6)-1T

§ 301.6103(k)(6)-1T Disclosure of return information by certain officers and employees for investigative purposes (temporary).

(a) General rule. (1) Pursuant to the provisions of section 6103(k)(6) and subject to the conditions of this section, an internal revenue employee or an Office of Treasury Inspector General for Tax Administration (TIGTA) employee, in connection with official duties relating to any examination, administrative appeal, collection activity, administrative, civil or criminal investigation, enforcement activity, ruling, negotiated agreement, prefiling activity, or other proceeding or offense under the internal revenue laws or related statutes, or in preparation for any proceeding described in section 6103(h)(2) (or investigation which may result in such a proceeding), may disclose return information, of any taxpayer, to the extent necessary to obtain information relating to such official duties or to accomplish properly any activity connected with such official duties, including, but not limited to-- **\*41076**
(i) Establishing or verifying the correctness or completeness of any return or return information;
(ii) Determining the responsibility for filing a return, for making a return if none has been made, or for performing such acts as may be required by law concerning such matters;
(iii) Establishing or verifying the liability (or possible liability) of any person, or the liability (or possible liability) at law or in equity of any transferee or fiduciary of any person, for any tax, penalty, interest, fine, forfeiture, or other imposition or offense under the internal revenue laws or related statutes or the amount thereof for collection;
(iv) Establishing or verifying misconduct (or possible misconduct) or other activity proscribed by the internal revenue laws or related statutes;
(v) Obtaining the services of persons having special knowledge or technical

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

68 FR 41073-01
**(Cite as: 68 FR 41073, \*41076)**

skills (such as, but not limited to, knowledge of particular facts and
circumstances relevant to a correct determination of a liability described in
paragraph (a)(1)(iii) of this section skills relating to handwriting analysis,
photographic development, sound recording enhancement, or voice identification)
or having recognized expertise in matters involving the valuation of property if
relevant to proper performance of official duties described in this paragraph;
  (vi) Establishing or verifying the financial status or condition and location
of the taxpayer against whom collection activity is or may be directed, to
locate assets in which the taxpayer has an interest, to ascertain the amount of
any liability described in paragraph (a)(1)(iii) of this section for collection,
or otherwise to apply the provisions of the Internal Revenue Code relating to
establishment of liens against such assets, or levy, seizure, or sale on or of
the assets to satisfy any such liability;
  (vii) Preparing for any proceeding described in section 6103(h)(2) or
conducting an investigation which may result in such a proceeding; or
  (viii) Obtaining, verifying, or establishing information concerned with making
determinations regarding a taxpayer's liability under the Internal Revenue Code,
including, but not limited to, the administrative appeals process and any
ruling, negotiated agreement, or prefiling process.
  (2) Disclosure of return information for the purpose of obtaining information
to carry out properly the official duties described by this paragraph, or any
activity connected with the official duties, is authorized only if the internal
revenue or TIGTA employee reasonably believes, under the facts and
circumstances, at the time of a disclosure, the information is not otherwise
reasonably available, or if the activity connected with the official duties
cannot occur properly without the disclosure.
  (3) Internal revenue and TIGTA employees may identify themselves, their
organizational affiliation with the Internal Revenue Service (IRS) (e.g.,
Criminal Investigation (CI)) or TIGTA (e.g., Office of Investigations (OI)), and
the nature of their investigation, when making an oral, written, or electronic
contact with a third party witness through the use and presentation of any
identification media (including, but not limited to, an IRS or TIGTA badge,
credential, or business card) or through the use of an information document
request, summons, or correspondence on IRS or TIGTA letterhead or which bears a
return address or signature block that reveals affiliation with the IRS or
TIGTA.
  (4) This section does not address or affect the requirements under section
7602(c) (relating to contact of third parties).
  (b) Disclosure of return information in connection with certain personnel or
claimant representative matters. In connection with official duties relating to
any investigation concerned with enforcement of any provision of the Internal
Revenue Code, including enforcement of any rule, or directive prescribed by the
Secretary or the Commissioner of Internal Revenue under any provision of the
Internal Revenue Code, or the enforcement of any provision related to tax
administration under the jurisdiction of the IRS or TIGTA, that affects or may
affect the personnel or employment rights or status, or civil or criminal
liability, of any former, current, or prospective employee of the Treasury
Department or the rights of any person who is, or may be, a party to an

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

administrative action or proceeding pursuant to 31 U.S.C. 330 (relating to practice before the Treasury Department), an internal revenue or TIGTA employee is authorized to disclose return information for the purpose of obtaining, verifying, or establishing other information which is or may be relevant and material to the investigation.

(c) Definitions. The following definitions apply to this section--

(1) Disclosure of return information to the extent necessary means a disclosure of return information which an internal revenue or TIGTA employee, based on the facts and circumstances, at the time of the disclosure, reasonably believes is necessary to obtain information to perform properly the official duties described by this section, or to accomplish properly the activities connected with carrying out those official duties. The term necessary in this context does not mean essential or indispensable, but rather appropriate and helpful in obtaining the information sought. Nor does necessary in this context refer to the necessity of conducting an investigation or the appropriateness of the means or methods chosen to conduct the investigation. Section 6103(k)(6) does not limit or prescribe IRS or TIGTA officers and employees with respect to the decision to initiate or how to conduct an investigation. Disclosures under this subparagraph, however, may not be made indiscriminately or solely for the benefit of the recipient or as part of a negotiated quid pro quo arrangement. This paragraph (c)(1) is illustrated by the following examples:

Example 1.   A revenue agent contacts a taxpayer's customer regarding the customer's purchases made from the taxpayer during the year under investigation. The revenue agent is able to obtain the purchase information only by disclosing the taxpayer's identity and the fact of the investigation. Depending on the facts and circumstances known to the revenue agent at the time of the disclosure, such as the way the customer maintains his records, it also may be necessary for the revenue agent to inform the customer of the date of the purchases and the types of merchandise involved for the customer to find the purchase information.

Example 2.   A revenue agent contacts a third party witness to obtain copies of invoices of sales made to a taxpayer under examination.  The third party witness provides copies of the sales invoices in question and then asks the revenue agent for the current address of the taxpayer because the taxpayer still owes money to the third party witness.  The revenue agent may not disclose that current address because this disclosure would be only for the benefit of the third party witness and not necessary to obtain information for the examination.

Example 3.   A revenue agent contacts a third party witness to obtain copies of invoices of sales made to a taxpayer under examination.  The third party witness agrees to provide copies of the sales invoices in question only if the revenue agent provides him with the current address of the taxpayer because the taxpayer still owes money to the third party witness.  The revenue agent may not disclose that current address because this disclosure would be a negotiated quid pro quo arrangement.

(2) Disclosure of return information to accomplish properly an activity connected with official duties means a disclosure of return information to carry out a function associated with official duties generally consistent with established practices and procedures.  **\*41077** This paragraph (c)(2) is

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

68 FR 41073-01
**(Cite as: 68 FR 41073, \*41077)**

illustrated by the following example:

 Example.  A taxpayer failed to file an income tax return and pay the taxes owed.  After the taxes were assessed and the taxpayer was notified of the deficiencies, a revenue officer filed a notice of federal tax lien and then served a notice of levy on the taxpayer's bank.  The notices of lien and levy contained the taxpayer's name, social security number, amount of outstanding liability, and the tax period and type of tax involved.  The taxpayer's assets were levied to satisfy the tax debt, but it was determined that, prior to the levy, the revenue officer failed to issue the taxpayer a notice of right to hearing before the levy, as required by section 6330.  The disclosure of the taxpayer's return information in the notice of levy is authorized by section 6103(k)(6) despite the revenue officer's failure to issue the notice of right to hearing.  The ultimate validity of the underlying levy is irrelevant to the issue of whether the disclosure was authorized by section 6103(k)(6).

 (3) Information not otherwise reasonably available means information that an internal revenue or TIGTA employee reasonably believes, under the facts and circumstances, at the time of a disclosure, cannot be obtained in a sufficiently accurate or probative form, or in a timely manner, and without impairing the proper performance of the official duties described by this section, without making the disclosure.  This definition does not require or create the presumption or expectation that an internal revenue or TIGTA employee must seek information from a taxpayer or authorized representative prior to contacting a third party witness in an investigation.  Moreover, an internal revenue or TIGTA employee may make a disclosure to a third party witness to corroborate information provided by a taxpayer.  This paragraph (c)(3) is illustrated by the following examples:

 Example 1.  A revenue agent is conducting an examination of a taxpayer.  The taxpayer refuses to cooperate or provide any information to the revenue agent.  Information relating to the taxpayer's examination would be information not otherwise reasonably available because of the taxpayer's refusal to cooperate and supply any information to the revenue agent.  Therefore, the revenue agent may seek information from a third party witness.  Neither the Internal Revenue Code, IRS procedures, nor these regulations require repeated contacting of an uncooperative taxpayer.

 Example 2.  A special agent is conducting a criminal investigation of a taxpayer.  The special agent has acquired certain information from the taxpayer.  Although the special agent has no specific reason to disbelieve the taxpayer's information, the special agent contacts several third party witnesses to confirm the information.  The special agent may contact third party witnesses to verify the correctness of the information provided by the taxpayer because the IRS is not required to rely solely on information provided by a taxpayer, and a special agent may take appropriate steps, including disclosures to third party witnesses under section 6103(k)(6), to verify independently or corroborate information obtained from a taxpayer.

 (4) Internal revenue employee means, for purposes of this section, an officer or employee of the IRS or Office of Chief Counsel for the IRS.

 (5) TIGTA employee means an officer or employee of the Office of Treasury Inspector General for Tax Administration.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

68 FR 41073-01
**(Cite as: 68 FR 41073, \*41077)**

  (d) Examples. The following examples illustrate the application of this section:
  Example 1.  A revenue agent is conducting an examination of a taxpayer.  The taxpayer has been very cooperative and has supplied copies of invoices as requested.  Some of the taxpayer's invoices show purchases that seem excessive in comparison to the size of the taxpayer's business.  The revenue agent contacts the taxpayer's suppliers for the purpose of corroborating the invoices the taxpayer provided.  In contacting the suppliers, the revenue agent discloses the taxpayer's name, the dates of purchase, and the type of merchandise at issue.  These disclosures are permissible under section 6103(k)(6) because, under the facts and circumstances known to the revenue agent at the time of the disclosures, the disclosures were necessary to obtain information (corroboration of invoices) not otherwise reasonably available because suppliers would be the only source available for corroboration of this information.
  Example 2.  A revenue agent is conducting an examination of a taxpayer.  The revenue agent asks the taxpayer for business records to document the deduction of the cost of goods sold shown on Schedule C of the taxpayer's return.  The taxpayer will not provide the business records to the revenue agent, who contacts a third party witness for verification of the amount on the Schedule C. In the course of the contact, the revenue agent shows the Schedule C to the third party witness.  This disclosure is not authorized under section 6103(k)(6).  Section 6103(k)(6) permits disclosure only of return information, not the return (including schedules and attachments) itself.  If necessary, a revenue agent may disclose return information extracted from a return when questioning a third party witness.  Thus, the revenue agent could have extracted the amount of cost of goods sold from the Schedule C and disclosed that amount to the third party witness.
  Example 3.  A special agent is conducting a criminal investigation of a taxpayer, a doctor, for tax evasion.  Notwithstanding the records provided by the taxpayer and the taxpayer's bank, the special agent decided to obtain information from the taxpayer's patients to verify amounts paid to the taxpayer for his services.  Accordingly, the special agent sent letters to the taxpayer's patients to verify these amounts.  In the letters, the agent disclosed that he was a special agent with IRS-CI and that he was conducting a criminal investigation of the taxpayer.  Section 6103(k)(6) permits these disclosures to confirm the taxpayer's income.  The decision of whether to verify information already obtained is a matter of investigative judgment and is not limited by section 6103(k)(6).
  Example 4.  Corporation A requests a private letter ruling (PLR) as to the taxability of a merger with Corporation B. Corporation A has submitted insufficient information about Corporation B to consider properly the tax consequences of the proposed merger.  Accordingly, information is needed from Corporation B. Under section 6103(k)(6), the IRS may disclose Corporation A's return information to Corporation B to the extent necessary to obtain information from Corporation B for the purpose of properly considering the tax consequences of the proposed merger that is the subject of the PLR.
  (e) Effective date. This section is applicable on July 10, 2003.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

68 FR 41073-01
**(Cite as: 68 FR 41073, \*41077)**

Robert E. Wenzel,

Deputy Commissioner of Internal Revenue.

 Approved: June 27, 2003.

Pamela F. Olson,

Assistant Secretary of the Treasury.

[FR Doc. 03-17384 Filed 7-9-03; 8:45 am]

BILLING CODE 4830-01-P

68 FR 41073-01, 2003 WL 21542237 (F.R.)
END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works