**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

|  |  |  |
|---|---|---|
| WARD DEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:03 cv 00065 (LAC/MCR) |
| | ) | |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
TO WHICH NO GENUINE ISSUE IS TO BE TRIED**

1. Tanya Burgess is a Special Agent with the Internal Revenue Service ("IRS" or "Service") Criminal Investigation Division, in Pensacola, Florida. As part of her job, she is authorized to investigate possible criminal violations of the Internal Revenue Code (26 U.S.C.) and related statutes. (Burgess Decl. ¶¶1, 2.) Tanya Burgess was the special agent assigned to the Dean investigation. (*Id.* ¶3.)

2. In October 2002, IRS Criminal Investigation, upon the referral of civil examination, initiated an investigation of Dean for the years 1997 through 2001. (*Id.* ¶4; Compl. ¶4.) The purpose of the investigation was to determine whether Dean has committed an offense under the Internal Revenue code by attempting to evade Federal income taxes, filing fraudulent Federal income tax returns or any other tax related offenses. (Burgess Decl. ¶3.) The investigation was the result of Dean's filing income tax returns that indicated that he earned zero income and thus, claimed zero income tax liability for the years in question, except for 2000 when Dean failed to file any return. (*Id.* ¶4.)



3. On October 3, 2002, Special Agent Burgess went in person with Revenue Agent Wayne Jackson to Dean's residence to inform him that he was under investigation and attempt to interview him. (Compl. ¶5; Burgess Decl. ¶6.)  After Special Agent Burgess introduced herself as a special agent with IRS Criminal Investigation, she displayed her pocket credentials and badge and advised Dean of his constitutional rights.  Dean declined the opportunity to be interviewed or provide any information, and ordered Special Agent Burgess and Revenue Agent Jackson off his property. (Burgess Decl. ¶6.)

4. In response to a letter that Dean sent to Special Agent Burgess after the visit to Dean's residence on October 3, 2002, Special Agent Burgess informed Dean that he could provide the IRS with any information that he would like to be considered as part of the investigation.  To date, Dean has not provided any information. (*Id.* ¶7; Ex. 2.)

5. Dean sent letters to financial institutions and his employers that were summonsed as part of the civil examination notifying them that "they were under no obligation to comply with this fraudulent summons."  He further stated: "That it is not a court order.  It is a phony document sent by a 'Revenue Agent' who has no authority to send a lawful summons to anyone."  Dean concluded that he would hold anyone who releases the records personally liable if they complied with the "*phony document*."  (*Id.* ¶8.)

6. Special Agent Burgess issued a summons to Dillon Vickery, which is attached as Exhibit B to the complaint.  Dean sought to quash the summonses on the grounds that it was wrongfully issued because Dean is "not one who is 'liable for any tax.'" In other words, Dean does not believe he is required to pay income tax and, therefore, the IRC provisions related to summonses did not apply to him. (*Id.* ¶9.)

7. As part of the ongoing investigation into Dean's tax years 1997 through 2001, a subpoena for a handwriting exemplar was issued in order to verify Dean's signatures on the returns for the years that Dean is under investigation. On or about June 4, 2003, Special Agent Burgess with Wayne Jackson personally served the subpoena on Dean. As indicating by the hearing transcript posted on Dean's website, Dean was forced to comply with the subpoena by court order. Dean objected to complying with the subpoena under "threat, duress and coercion." Dean's defense to the subpoena and basis for not complying voluntarily was that special agents do not have the authority to conduct an income tax investigation. (*Id.* ¶10.)

8. The culmination of events – (1) Dean's attempt to hinder the civil investigation; (2) Dean's refusal to be interviewed on October 3, 2003 and then ordering Special Agent Burgess and Revenue Agent Wayne Jackson to exit his property; (3) Dean refusing to comply with subpoena for a handwriting exemplar; (4) Dean's motion to quash the summons issued to Dillon Vickery; and (5) Dean not providing any information to the Service to date – led Special Agent Burgess to reasonably believe that Dean would not voluntarily provide information in connection with her investigation. (*Id.* ¶¶6-11.)

9. Even if a subject of an investigation does voluntarily provide information in connection with an investigation, it is still the practice of Tanya Burgess to issue summonses to witnesses and financial institutions and conduct personal interviews because it is necessary to corroborate, verify and obtain additional information. (*Id.* ¶12.)

10. The Internal Revenue Manual states that it is a special agent's duty when conducting a criminal investigation to interview the taxpayer and witnesses connected with the investigation. The Internal Revenue Manual that pertains to criminal investigations, in particular, instructs

special agents that investigations are presented to a jury through the testimony of witnesses. (*Id.* ¶13; Int. Rev. Man. §9.4.5.3.)

11. The Internal Revenue Manual sets forth situations where "necessary information generally will not be available from the taxpayer or will not be in a usable form." (Int. Rev. Man. §§9.3.1.3.1(2)(a.) and 11.3.21.3(5)(a.).) One of the situations set forth is when "corroboration is needed for a taxpayer's statement or records." (*Id.*) As set forth in Special Agent Burgess' declaration, she was able to identify third parties from Dean's bank records with which Dean had engaged in financial transactions. She then contacted these specific entities, in accordance with the Internal Revenue Manual, in order to verify and corroborate the transaction. (Burgess Decl. ¶¶18, 24.) The Internal Revenue Manual allows for the disclosure of return information to third parties when it is necessary to corroborate the subject of the investigation's statements or information, or the information is within the control of a third party. (Burgess Decl. ¶¶14-15.)

12. Specific to the investigation of Dean, Special Agent Burgess sought information through two methods: Issuing summonses to third-parties and personally contacting witnesses. (*Id.* ¶16.)

13. Special Agent Burgess as part of her investigative activities issued administrative summons that indicated that they were issued from the "Criminal Investigation" Division of the Internal Revenue Service. (Compl. ¶¶7-8.) Copies of three of the summonses are attached as Exhibits A through C to the complaint.

14. For the oral disclosures, Special Agent Burgess contacted third parties and conducted verbal interviews. (Compl. ¶6; Burgess Decl. ¶17.) All of the verbal contacts with third parties were by telephone, except for one in person contact when Special Agent Burgess served a summons on Dillon Vickery by hand. (Burgess Decl. ¶20.) Special Agent Burgess contacted

third parties by telephone for three reasons.  As she stated: "First, I would call individuals to obtain needed information related to the Dean investigation.  Second, before I issued and served some of the summonses by mail, I would call the third party to confirm the address.  Third, after the summonses were mailed, I would then sometimes follow up with a telephone call to check on the status or when I could expect a response to the summonses."  (*Id.* ¶17.)

15.  The telephone calls were discrete and specific and resulted from Special Agent Burgess' review and evaluation of bank records that were obtained during the civil examination.  Upon reviewing these records, she identified payments and attempted to determine if they were sources of income.   After identifying these particular payments, she then contacted the party that made payments to gather more information about the nature of the payment.  Special Agent Burgess attempted to verify how Dean disposed of any income.  Again, to do this, she identified from the bank records third parties to whom Dean made payments and contacted them as well. (*Id.* ¶18.)

16.  When Special Agent Burgess spoke with a witness, she used a procedure authorized by IRS policy and procedure.  The procedure is as follows: She identified herself by providing her first and last name, told the third party contact that she was with IRS Criminal Investigation, and told them that she was assigned to an investigation involving a person. (*Id.* ¶21; Ex. 9.)  It is Special Agent Burgess' practice to follow procedure when contacting third parties by telephone.  In accordance with the IRS's policy and procedure, Special Agent Burgess stated:  My name is Tanya Burgess.  I am with IRS Criminal Investigation.  I have been assigned to an investigation involving Ward Dean.  I would like to ask you some questions. (*Id.* ¶19.)

17.  The only instance when Special Agent Burgess contacted a witness in person was when she served a summons on Dillon Vickery on October 16, 2002.  The reason for serving the

summons in person was that Mr. Vickery had earlier declined to provide information over the

telephone. All of the oral disclosures made to Mr. Vickery during the earlier telephone

conversation were made in accordance with the procedure described above in paragraph 16.

When the summons was served on Vickery, Special Agent Burgess identified herself as Tanya

Burgess a special agent with IRS Criminal Investigation, displayed her badge and credentials and

she served Mr. Vickery with the summons and explained to him what he was required to do in

response to the summons.  (*Id.* ¶20.)

18.  The IRS's policy and procedure for making oral disclosures when contacting third

parties is stated in the IRS's memorandum dated February 2, 2001, from Mark Matthews, Chief,

Criminal Investigation, IRS to CI Special Agents in Charge.  This memorandum instructs that

special agents can identify themselves, the IRS division that they work for and the taxpayer that is

under investigation.  The policy reflected in this February 2nd memorandum was the IRS policy in

effect at the time that Special Agent Burgess made the verbal disclosures of Dean's return

information.  This memorandum reflects that Special Agent Burgess' understanding of what

disclosures are allowed is consistent with IRS policy and procedures. (*Id*. ¶21.)

19.  Because Special Agent identified herself from the Criminal Investigation Division,

Dean asserts that those individuals contacted were informed that Dean was under criminal

investigation.  (Compl. ¶¶6, 11.)

20.  For the written contacts made with third parties in connection with the investigation

of Dean, administrative summonses were issued to obtain information relating to financial

transactions third parties had with Dean.  Three examples of the summonses are attached as

Exhibits A-C of the complaint.  (Comp. ¶7.)  The summonses indicate that they were issued from

the "Criminal Investigation" Division of the Internal Revenue Service. (Comp. ¶9.) The purpose of the inquires was to determine Dean's income. (*Id.* ¶23.)

21.  Individuals and entities summonsed were those individuals and entities that made payments to Dean or to which Dean made payments. These individuals and the entities contacted were identified from Dean's bank records that were received from the civil examination. The summonses were, thus, sent to a very specific and discrete group of persons and entities. (*Id.* ¶24.)

22.  Third parties that receive administrative summonses must also be apprised as to whether the summonses were issued by IRS Criminal Investigation. IRS policy dictates that field offices enter "Criminal Investigation" as the issuing compliance function on line two of the administrative summons, Form 2039, which is indicated by a March 5, 2001 memorandum from Howard Levine, Special Litigation Assistant, Office of Chief Counsel to Area III Counsel. This policy with respect to identifying Criminal Investigation as the issuing office on administrative summonses was the IRS policy in effect – and was the policy that Special Agent Burgess was aware of – at the time the summonses were issued to third parties in conjunction with the IRS' investigation of the Dean. (*Id.* ¶25.)

23.  "Criminal Investigation" or "CI", as alleged by Dean, appeared on the return addresses of the envelopes in which the summonses were sent. (Compl. ¶9.) But, the disclosure of criminal investigation on the envelopes is an authorized disclosure just like the disclosures made on line two of the summons, Form 2039. These are the envelopes provided by the Service for the mailing of the correspondence. Thus, Special Agent Burgess believed that it was necessary to use the Service's official envelopes when mailing the summonses that she issued to third parties as part of her investigation of Dean. (*Id.* ¶26.)

24.  It is the IRS's policy and procedure to authorize special agents to disclosure return information to third parties to obtain information not otherwise reasonably available in connection with an investigation.  (*Id.* ¶27; Int. Rev. Man. §9.3.1.3(1).)

25.  During my investigation of Dean, Special Agent Burgess did not disclose to any third party that Dean was under "criminal investigation."  (Undisputed Facts ¶28.)  Her only representations were that she was a special agent from IRS Criminal Division and that she was conducting an investigation of Dean in accordance with IRS policy and procedure.  (*Id.* ¶¶19-21, 25-26.)

DATED: October 16, 2003

Respectfully submitted,

GREGORY R. MILLER
United States Attorney

MICHAEL J. SALEM
LINDSEY W. COOPER, JR.
(TN Bar No. 020705, DC Bar No. 473895)
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, DC  20044
Telephone: (202) 307-6528
Facsimile: (202) 514-6866

*Attorneys for the United States and*
*Internal Revenue Service*

# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

|  |  |  |
|---|---|---|
| WARD DEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:03 cv 00065 (LAC/MCR) |
| | ) | |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FOURTH DECLARATION OF
## SPECIAL AGENT TANYA D. BURGESS

I, Tanya D. Burgess, under 28 U.S.C. § 1746, declare as follows:

1.  I am employed as a Special Agent with the Internal Revenue Service ("IRS" or "Service"), Criminal Investigation. I have been employed with IRS Criminal Investigation since 1980 and am currently assigned to the Pensacola, Florida office.

2. As a special agent, I am authorized to investigate possible criminal violations of the Internal Revenue Code and related offenses. (Int. Rev. Man. §9.1.2.2(6), attached as Ex. 1.) I am also authorized under Title 26, United States Code, Sections 7602, 7609(f), (g) and (i)(2), and Delegation Order #4 to issue, serve and enforce summonses, to take testimony and to receive and examine records.

3.  I am assigned to an investigation of Ward Dean concerning his Federal income tax matters for the years 1997 through 2001. My investigation is based on a referral from a civil examination into Dean's potential tax liability.

-1-

4. The IRS Criminal Investigation's investigation of Dean for the years 1997 through 2001 began in October 2002. The purpose of the investigation is to determine whether Dean has committed an offense under the Internal Revenue Code by attempting to evade Federal income taxes, filing fraudulent Federal income tax returns or any other tax related offenses. The investigation was the result of Dean's filing income tax returns that indicated that he earned zero income and, thus, claimed zero income tax liability for the years in question, except for 2000 when Dean failed to file any return.

5. I am aware of the IRS's policies and procedures concerning the disclosure of return information. These policies and procedures are based upon – among other things – the regulations, the Internal Revenue Manual and internal memorandum, and allow a special agent to make disclosures to third parties of return information during the course of an investigation when it is necessary to obtain, verify or corroborate information.

6. On October 3, 2002, in accordance with IRS procedure, I went in person with Revenue Agent Wayne Jackson to Dean's residence to inform him that he was under investigation and to give Dean the opportunity to provide information and answer some questions that I had. After introducing myself as a special agent with IRS Criminal Investigation, I displayed my pocket credentials and badge and advised Dean of his constitutional rights. Dean declined the opportunity to be interviewed or provide any information, and ordered Revenue Agent Jackson and me to leave his property.

7. In response to a letter that Dean sent to me after the visit to Dean's residence on October 3, 2002, I informed Dean that he could provide the Service with any information that he

-2-

would like to be considered as part of the investigation. (Ex. 2.) To date, Dean has not provided any information in connection with my investigation.

8. Dean attempted to hinder the investigative process by contacting third parties who were issued summonses during the civil investigation of Dean and threatening to instigate litigation if they complied with summonses. Dean sent letters to financial institutions and his employers that were summonsed notifying them that "they were under no obligation to comply with this fraudulent summons." He further stated: "That it is <u>not</u> a court order. It is a phony document sent by a 'Revenue Agent' who has no authority to send a lawful summons to <u>anyone</u>." Dean concluded that he would hold anyone who releases records personally liable if they complied with the "*phony document*." (Ex. 3.) Dean sent Revenue Agent Jackson a copy of the letters he sent his employers and requested that the letters be forwarded to any other third parties that were summonsed.

9. I issued a summons to Dillon Vickery, which Dean attempted to quash. As set forth in his motion, Dean sought to quash the summons on the grounds that it was wrongful because Dean is "not one who is 'liable for any tax.'" Dean alleged the Internal Revenue Code provisions related to summonses do not apply to him because he is not subject to income taxes. (Ex. 4.) This is another example of Dean challenging the IRS's and my authority, as a special agent, to conduct an investigation.

10. As presented in a hearing transcript on Dean's website, a subpoena was issued to Dean for a handwriting exemplar in order to verify Dean's signature on his tax returns for the years under investigation. On or about June 4, 2003, I personally served the subpoena on Dean.

-3-

Revenue Agent Jackson was present when I did so. Dean was forced to give the handwriting exemplar by court order, which Dean objected to under "threat, duress and coercion." (Ex. 5, p.12.) Dean again expressed his belief that I did not have the authority to conduct an income tax investigation of him. (*Id.*, pp.16, 20-21.)

11. The culmination of these events described above – (1) Dean's attempt to hinder the civil investigation by threatening to hold third parties personally liable if they complied with the summonses; (2) Dean declining the opportunity to be interviewed or provide any other information on October 3, 2002, and then ordering Revenue Agent Wayne Jackson and me to exit his property; (3) Dean attempting to quash the summons issued to Dillon Vickery; (4) Dean's refusal to comply with the subpoena for a handwriting exemplar; and (5) Dean not providing any information to the Service in response to my October 14th letter – lead me to reasonably believe that Dean would not voluntarily provide information in connection with the investigation.

12. Although it is not the case here, even if a subject of an investigation does voluntarily provide documents and testimony in connection with one of my investigations, it is still my practice to issue summonses to witnesses and financial institutions and conduct personal interviews. These third party contacts are a necessary part of an investigation to corroborate, verify and obtain information. The reasons which make these contacts necessary are explained below in paragraphs 13 through 15.

13. The Internal Revenue Manual that pertains to criminal investigations, in particular, instructs me that "it is the special agent's <u>duty</u> to interview the taxpayer <u>and</u> witnesses connected

-4-

with the investigations." (Int. Rev. Man. §9.4.5.3(2).) Interviews are a necessary part of an investigation because they are used to gather information that may bring about leads in the investigation, assist in developing information and establish evidence so that is it more likely to be admissible if the case was recommended for prosecution. (Int. Rev. Man. §9.4.5.3(1), attached as Ex. 6.) I am required to interview third parties in connection with the investigation.

14. The necessity to seek information from third parties is aptly demonstrated by example. For instance, assuming the subject of the investigation does provide information during the investigation, corroborating and verifying the information with a third party better ensures that the information received from a taxpayer would be admissible at trial, for example, if the taxpayer subsequently claimed his Fifth Amendment privilege. Because the United States has the burden of showing beyond a reasonable doubt that the subject of the investigation criminally violated the Internal Revenue Code, I must also obtain, corroborate and verify evidence with third party witnesses and other available sources in order to ensure that the evidence is sufficient to support a criminal prosecution. (Int. Rev. Man. §9.3.1.3.1(2), attached as Ex. 7.)

15. As a general rule, the Internal Revenue Manual allows for the disclosure of return information to third parties when conducting either a civil or criminal investigation to the extent necessary to obtain information not otherwise reasonably available. For example, these circumstances arise when it is necessary to corroborate statements or information provided by the subject of the investigation, or the information is within the control of a third party. (Int.

Rev. Man. §11.3.21.3(5), attached as Ex. 8.)  This lends further support to my practice of seeking information from third parties.

16.  Specific to this investigation, I sought information in two principle methods: Issuing summonses to third-parties and personally contacting witnesses.

17.  During my investigation of Dean, all of my verbal conversations with third parties were by telephone, except one in-person meeting when I served a summons by hand on Dillon Vickery.  The telephone calls were made for three reasons.  First, I would call individuals to obtain needed information related to the Dean investigation.  Second, before I issued and served some of the summonses by mail, I would call the third party to confirm the address.  Third, after the summonses were mailed, I would then sometimes follow up with a telephone call to check on the status or when I could expect a response to the summonses.

18.  My telephone calls were discrete and specific contacts based upon my review and evaluation of bank records that were obtained during the civil examination.  Upon reviewing these records, I identified payments made to Dean and attempted to determine if they were sources of income.   After identifying these particular payments, I then contacted the party that made payments to gather more information about the nature of the payment.  I also attempted to verify how Dean disposed of any income.  Again, to do this I identified from the bank records third parties to whom Dean made payments and contacted them.

19.  Any time that I contact a witness by telephone, I have a procedure that I follow.  The procedure is as follows:  I always identify myself by providing my first and last name, I tell the third party contact that I am with IRS Criminal Investigation, and I tell them that I have been

-6-

assigned to an investigation involving a person (whose name I provide to the third party contact). My practice is to always follow this procedure, and I followed this procedure with the third party contacts I made by telephone in the investigation of the Dean. Thus, I would have stated: My name is Tanya Burgess. I am with IRS Criminal Investigation. I have been assigned to an investigation involving Ward Dean. I would like to ask you some questions.

20. The only instance when I contacted a witness in person was when I served a summons on Dillon Vickery on October 16, 2002. The reason for serving the summons in person was that Mr. Vickery had earlier declined to provide me with information over the telephone. All of the oral disclosures made to Mr. Vickery during our telephone conversation were made in accordance with the procedure described above in paragraph 19. When I served the summons on Vickery, I identified myself as Tanya Burgess, a special agent with IRS Criminal Investigation, displayed my badge and credentials, and I served Mr. Vickery with the summons and explained to him what he was required to do in response to the summons.

21. I made these disclosures in accordance with my understanding of IRS regulations, policy and procedure that authorizes special agents, when making third party contacts, to display their badges and credentials, to make an affirmative statement that they are special agents with IRS Criminal Investigation, and to identify the person under investigation. My practice is, in fact, in accordance with the IRS's policy and procedure, which is set forth in part in a memorandum dated February 2, 2001, from Mark Matthews, Chief, Criminal Investigation, IRS to CI Special Agents in Charge. (Ex. 9.) The policy reflected in the attached memorandum was

the IRS policy in effect – and a policy that I was aware of – at the time that I contacted third parties in conjunction with the IRS' investigation.

22. For the written contacts that I made with third parties in connection with my investigation, I issued administrative summonses to obtain information relating to financial transactions they had with Dean. Three examples of the summonses are attached as Exhibits A-C of the complaint. (Comp. ¶7.) The summonses indicate that they were issued from the "Criminal Investigation" Division of the Internal Revenue Service. (Comp. ¶9.)

23. I served summonses on third party recordkeepers, including Dean's return preparer and financial institutions with which Dean had engaged in transactions, and sent Dean notice as required by Title 26, United States Code, Section 7609. I also sent summonses to individuals and entities that had made payments to Dean or to individuals and entities to which Dean made payments. The purpose of the inquiries was to determine the source and disposition of Dean's income.

24. I identified the individuals and the entities that I wanted to contact from Dean's bank records that I received from civil examination (as explained above in paragraph 18). Because the bank records showed who had engaged in financial transactions with Dean, I was able to make specific and discrete contacts with third parties to gather needed testimony and documents.

25. Third parties that receive administrative summonses must also be apprised as to whether the summonses were issued by IRS Criminal Investigation. In order to conduct investigations in a forthright and consistent manner, IRS policy dictates that field offices enter "Criminal Investigation" as the issuing compliance function on line two of the administrative

-8-

summons, Form 2039.  This is also my personal understanding of the IRS's policy and procedure, which is indicated by a March 5, 2001 memorandum from Howard Levine, Special Litigation Assistant, Office of Chief Counsel to Area III Counsel.  (Ex. 10.)  A December 3, 2002 memorandum to special agents in charge from Johnny Rose, Director, Operations Policy and Support reconfirms this policy.  (Ex. 11.)  This policy with respect to identifying Criminal Investigation as the issuing office on administrative summonses was the IRS policy in effect – and a policy that I was aware of – at the time that I issued summonses to third parties in conjunction with the IRS' investigation of Dean.

26.  "Criminal Investigation" or "CI" may have appeared on the return addresses of the envelopes in which I sent the summonses.  But, the disclosure of criminal investigation on the envelopes is an authorized disclosure just like the disclosures made on line two of the summons, Form 2039.  These are the envelopes provided by the Service for the mailing of the correspondence.  Thus, I believed that it was necessary to use the Service's official envelopes when mailing the summonses that I issued to third parties as part of my investigation of Dean.

27.  It is the IRS's policy and procedure to authorize special agents to disclosure return information to the extent necessary to obtain information which may be relevant to the investigation.   (Int. Rev. Man. §9.3.1.3(1), attached as Ex. 12.)

28.  During my investigation of Dean, I did not say to any third party that Dean was under "criminal investigation."

///

///

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October __15__, 2003.

TANYA D. BURGESS
Special Agent
Criminal Investigation
Internal Revenue Service
880 N. Reus Street, Suite 101
Pensacola, Florida 32501

-10-

**Insert Sheet for Tab Page**[1]

# EXHIBIT 1

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.

Internal Revenue Manual
Part 9 - Criminal Investigations
Chapter 9.1 - Criminal Investigation, Mission, Authority, Organization and
Directives
9.1.2 - Authority

9.1.2.2 - General Authority to Enforce Internal Revenue Laws and Related
Statutes (09-07-2001)

(1) Internal Revenue Code (IRC) Section 7608(b) provides the authority for
investigating crimes arising under the Internal Revenue laws.

(2) Under Sections 7602 and 7622 of the Internal Revenue Code of 1986, through
Treasury Order 150-10 the Commissioner and his/her designated officers and
employees are authorized to examine any books, papers, records, or memoranda
bearing upon the matters required to be included in the returns, to require and
take testimony relative thereto, and to administer oaths.

(3) The IRS also has explicit enforcement responsibilities with regard to   18
USC 1956 and 1957, dealing with money laundering, and 31 USC 5311 et seq.,
dealing with the Bank Secrecy Act. Pursuant to Treasury Directive 15- 42
(January 21, 1999), the Commissioner, IRS has been delegated:

(a.) Investigatory authority over violations of 18 USC 1956 and 1957 where
the underlying conduct is subject to investigation under Title 26 or under the
Bank Secrecy Act, or 31 USC 5311-5328 (other than violations of 31 USC 5316);

(b.) Seizure and forfeiture authority over violations of 18 USC 981 relating
to violations of 31 USC 5313 and 5324; and 18 USC 1956 and 1957 which are within
the investigatory jurisdiction of IRS (as set forth in the previous paragraph);
and

(c.) Seizure authority relating to any other violation of 18 USC 1956 or
1957 if the bureau with investigatory authority is not present to make the
seizure. (Note: Property seized under 18 USC 981 where investigatory
jurisdiction is solely with another bureau not present at the time of the
seizure shall be turned over to that bureau.)

(4) By commissions given each officer of Criminal Investigation, the
Commissioner designates such individual as having the authority to perform all
duties conferred upon such officers, under all laws and regulations administered
by the IRS, including the authority to investigate, and to require and receive
information as to all matters relating to such laws and regulations. Delegation
Order No. 158 authorizes the Special Agent in Charge (SAC), to investigate
violations of 18 USC 1956 and 1957 where the underlying conduct is subject to
investigation under Title 26 or under the Bank Secrecy Act, as amended, 31 USC
5311-5326 (other than violations of 31 USC 5316).

(5) In Delegation Order No. 143, the Commissioner delegated the authority to
initiate criminal investigations of financial institutions that are not
currently examined by federal bank supervisory agencies, except for brokers or
dealers in securities, to the Deputy Director, Operations Policy and Support and
Special Agents in Charge. The Commissioner also delegated the authority to
initiate Title 31 criminal investigations of banks and brokers or dealers in

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

IRM 9.1.2.2

securities to the Chief, CI. The Commissioner's authority for Delegation Order
No. 143 is derived from Treasury Directive 15-41.
   (6) Under the Commissioner, the CI responsibilities include the investigation
of all alleged criminal violations arising under the Internal Revenue laws and
related criminal statutes. See IRM 9.1.3, Criminal Statutory Provisions and
Common Law, for a discussion of the statutes under CI jurisdiction.
END OF DOCUMENT

Copr. ® West 2003 No Claim to Orig. U.S. Govt. Works

**Insert Sheet for Tab Page**[1]

# EXHIBIT 2

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.



DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

October 24, 2002

Dear Dr. Dean:

I am in receipt of your letter dated October 14, 2002, in which you requested a conference pursuant to 26 CFR 601.107, to talk about the nature of the investigation and be apprised of any statutes which you have allegedly violated. However, the conference to which you are referring is afforded to individuals when a recommendation for prosecution has been made after the completion of an administrative investigation. In these instances, a notification letter is issued to the taxpayer or their representative offering a conference. While I have been assigned to conduct an investigation, as I informed you on October 3, the investigation has not been concluded and no recommendation has been made.

The purpose of my visit to you on October 3, 2002, was to notify you that an investigation was being conducted regarding your income tax matters for the years 1997 through 2001 and to give you an opportunity to provide explanations to questions that we have. That opportunity is always available to you if you decide to provide information which you would like us to consider in the investigation. However, I would like to make certain that you understand your rights before you provide any information. I would like to reiterate the advice that I read to you on October 3, 2002, as follows:

"As a special agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws, and related offenses. In connection with my investigation of your tax liability (or other matter), I would like to ask you some questions. However, first I advise you that under the 5th Amendment to the Constitution of the U.S., I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything which you say and any documents which you submit may be used against you in any criminal proceeding which may be undertaken. I advise you further that you may, if you wish, seek the assistance of any attorney before responding. Do you understand these rights?" (from Non-Custody Statement of Rights Card)

In answer to your question about the nature of the investigation, I have been assigned to conduct an investigation and make a recommendation as to whether or not you should be prosecuted for criminal violations of the Internal Revenue laws. Unless you would like to provide information for us to consider in making that recommendation, there is no reason for further contact with you. The investigation will proceed until such time as a recommendation can be made.

You also mentioned in your letter that you have an attorney.  I will only be able to communicate with your attorney if you provide me with a power of attorney covering the years under investigation.

Sincerely,

*Tanya H. Burgess*

Tanya H. Burgess
Special Agent
Internal Revenue Service

**Insert Sheet for Tab Page**[1]

# EXHIBIT 3

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.

**Ward Dean, M.D.**
**8799 Burning Tree Road**
**Pensacola, Florida 32514**
**(850) 484-0595 / 474-5255 / 477-8610 (Fax)**
warddeanmd@earthlink.net

26 February, 2002

PNC Bank
ATTN: Legal Process
500 1st Avenue
Suite 02-F
Pittsburgh, Pennsylvania 15219

Dear Sir,



Ref the "**Summons**" from the IRS, dated 21 February, 2002, signed by Internal Revenue Agent Wayne Jackson and Group Manager George Poole.

This is to Notice you that you are under no obligation to comply with this *fraudulent* "Summons." It is <u>not</u> a court order. It is a *phony document* sent by a "Revenue Agent" who has no authority to send a lawful summons to <u>anyone</u>.

Note that IRS Code Section 7602 (a) (Incl 1) only authorizes <u>the Secretary</u> (or his delegate) to send summonses. Also, note that Code Section 7608 (Incl 2) authorizes only <u>Special Agents</u> to send summonses to enforce Subtitle E and other laws pertaining to Liquor, Tobacco and Firearms.

Mr. Jackson has no Delegation Order from the Secretary of the Treasury (or <u>anyone else</u>, for that matter) authorizing him to send summonses. If he claims he has one, ask him to show it to you.

Mr. Jackson, is <u>not</u> a *Special Agent* (he is a <u>Revenue</u> Agent). Only Special Agents are authorized to send summonses--and even then, only with regard to violations of <u>Liquor, Tobacco or Firearms</u> laws (Section 7608).

Please see the attached job description of an IRS Revenue Agent. Nowhere in this job description does it say anything regarding sending summonses.

Furthermore, note that the privacy act statement (attached) in the 1040 booklet states that "You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act <u>unless the form displays a valid OMB control number</u>." [emphasis added]



GOVERNMENT
EXHIBIT
6

This is a restatement of Title 44, Section 3512, which states, in pertinent part:

**Title 44, USC, Sec. 3512. Public protection**

> (a) Notwithstanding any other provision of law, <u>no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this chapter if--</u>
>> <u>(1) the collection of information does not display a valid control number assigned by the Director in accordance with this chapter; or</u>
>> <u>(2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.</u>
>
> (b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto.

Note that the summons did <u>not</u> display a valid OMB control number. Therefore, it appears that pursuant to Title 44, Section 3512, and the Privacy Act Statement from the IRS' 1040 booklet, you are not required to respond to this bogus "summons."

In the case of *Federal Crop Insurance Corporation v. A. A. Merrill* (332 US 380, 384) (Incl 3), the Supreme Court noted that "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government *takes the risk* of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority" [emphasis mine], and "…the agent himself  may [be] unaware of the limitations upon his authority."

In other words, the Supreme Court warned the American public that in dealings with the government, we <u>take a risk</u> that the agents are acting within the scope of their authority. Well, <u>I don't want to take that risk</u>.

Pursuant to the Federal Crop Insurance Case, I suggest that before any disclosure is made, you obtain from Revenue Agent Jackson copies of a delegation order authorizing him to issue summonses and to examine my books and records, as well as a copy of an enforcement commission (he has neither).

I demand that my records <u>not</u> be released to <u>anyone</u> without <u>proper judicial authority</u>. This is your Notice that I will hold anyone who releases these records in response to this "summons" personally liable for any such unauthorized disclosure. Please let me know your intentions in this matter.

Thank you,

Yours truly,

Ward Dean, M.D.

NJ OMB #



# Summons

In the matter of  Mr. Ward Dean    SSN 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

Internal Revenue Service (Division):  Examination Division

Industry/Area (name or number):  North Florida

Periods: 1997, 1998, 1999, 2000

## The Commissioner of Internal Revenue

To:  PNC Bank

At:  Attn: Legal Process, 500 1st Avenue, Suite 02-F, Pittsburgh, Pa. 15219

You are hereby summoned and required to appear before  Wayne Jackson
an officer of the Internal Revenue Service  To give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability  Or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the Internal Revenue laws concerning the person identified above for the periods shown

Copies of monthly bank statements for any and all bank accounts which Ward Dean has now or did have signature authority during 1997, 1998, 1999, 2000.

Copies of all deposit items deposited to accounts which Ward Dean has now or did have signature authority during 1997, 1998, 1999 and 2000.

Compliance will be satisfied if information and documents are delivered by mail service.

RECEIVED
MAR - 1 2002
LEGAL DIVISION

**Do not write in this space**

**Business address and telephone number of IRS officer before whom you are to appear:**

125 W. Romana Street, Suite 300, Pensacola, Florida 32501; phone 850-435-8466

**Place and time for appearance at**  125 W. Romana Street, Suite 300, Pensacola, Florida 32501

# IRS

Department of the Treasury
Internal Revenue Service

**www.irs.gov**

Form 2039 (Rev 05-2001)
Catalog Number 21405J

on the ___18th___ day of ___March___ ___2002___ at ___8:00___ o'clock ___A___ m
                                                              (year)
Issued under authority of the Internal Revenue Code this ___21___ day of ___February___ ___2002___
                                                                      (year)

_Wayne Jackson_
Signature of issuing officer                    Internal Revenue Agent
                                                Title

_George E. Forte_
Signature of approving officer (if applicable)   Group Manager
                                                Title

                                    **Part C — to be given to noticee**



# Provisions of the Internal Revenue Code

## Sec. 7602. Examination of books and witnesses

(a) Authority to Summon, etc -For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized–

    (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry.

    (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry, and

    (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry

(b) Purpose may include inquiry into offense - The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws

(c) Notice of contact of third parties. -

    (1) General Notice - An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made

    (2) Notice of specific contacts. - The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the determination or collection of the tax liability of such taxpayer  Such record shall also be provided upon request of the taxpayer

    (3) Exceptions - This subsection shall not apply–

        (A) to any contact which the taxpayer has authorized,

        (B) if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person, or

        (C) with respect to any pending criminal investigation

(d) No administrative summons when there is Justice Department referral -

    (1) Limitation of authority - No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person

    (2) Justice Department referral in effect - For purposes of this subsection–

        (A) In general - A Justice Department referral is in effect with respect to any person if–

            (i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws or

            (ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person

        (B) Termination - A Justice Department referral shall cease to be in effect with respect to a person when–

            (i) the Attorney General notifies the Secretary, in writing, that–

                (I) he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws,

                (II) he will not authorize a grand jury investigation of such person with respect to such an offense, or

                (III) he will discontinue such a grand jury investigation

            (ii) a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person, or

            (iii) the Attorney General notifies the Secretary, in writing, that he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws relating to the request described in sub paragraph (A)(ii)

    (3) Taxable years, etc , treated separately - For purposes of this subsection, each taxable period (or, if there is no taxable period, each taxable event) and each tax imposed by a separate chapter of this title shall be treated separately

(e) Limitation on examination on unreported income - The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income

---

Authority to examine books and witness is also provided under sec  6420 (e)(2) - Gasoline used on farms  sec  6421(g)(2) - Gasoline used for certain nonhighway purposes by local transit systems, or sold for certain exempt purposes, and sec  6427(j)(2) - Fuels not used for taxable purposes

~ ~ ~ ~ ~

## Sec. 7603. Service of summons

(a) In general - A summons issued under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode, and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons  When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books papers, records, or other data are described with reasonable certainty

(b) Service by mail to third-party recordkeepers -

    (1) In general - A summons referred to in subsection (a) for the production of books, papers, records, or other data by a third-party recordkeeper may also be served by certified or registered mail to the last known address of such recordkeeper

    (2) Third party record keeper - For purposes of paragraph (1), the term third-party recordkeeper means–

        (A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501 (c)(14)(A)),

        (B) any consumer reporting agency (as defined under section 603(f) of the Fair Credit Reporting Act (15 U S C  1 681 a(f)),

        (C) Any person extending credit through the use of credit cards or similar devices,

        (D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U S C  78c(a)(4)),

        (E) any attorney,

        (F) any accountant,

        (G) any barter exchange (as defined in section 6045(c)(3)),

        (H) any regulated investment company (as defined in section 851) and any agent of such regulated investment company when acting as an agent thereof,

        (I) any enrolled agent, and

        (J) any owner or developer of a computer software source code (as defined in section 7612(d)(2))  Subparagraph (J) shall apply only with respect to a summons requiring the production of the source code referred to in subparagraph (J) or the program and data described in section 7612(b)(1)(A)(ii) to which source code relates

## Sec. 7604. Enforcement of summons

(a) Jurisdiction of District Court - If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data

(b) Enforcement - Whenever any person summoned under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 neglects or refuses to obey such summons, or to produce books papers records, or other data, or to give testimony, as required, the Secretary may apply to the judge of the district court or to a United States Commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt, it shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case, and upon such hearing the judge or the United States Commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts to enforce obedience to the requirements ofthe summons and to punish such person for his default or disobedience

~ ~ ~ ~ ~

## Sec. 7605. Time and place of examination

(a) Time and place. - The time and place of examination pursuant to the provisions of section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 shall be such time and place as may be fixed by the Secretary and as are reasonable under the circumstances. In the case of a summons under authority of paragraph (2) of section 7602, or under the corresponding authority of section 6420(e)(2), 6421 (g)(2) or 6427(j)(2), the date fixed for appearance before the Secretary shall not be less than 10 days from the date of the summons

¹Or United States magistrate  pursuant to P _  90-578

## Sec. 7610. Fees and costs for witnesses

which payment may be made of-

    (1) fees and mileage to persons who are summoned to appear before the Secretary, and

    (2) reimbursement for such costs that are reasonably necessary which have been directly incurred in searching for, reproducing, or transporting books, papers records, or other data required to be produced by summons

(b) Exceptions - No payment may be made under paragraph (2) of subsection (a) if–

    (1) the person with respect to whose liability the summons is issued has a proprietary interest in the books, papers, records or other data required to be produced, or

    (2) the person summoned is the person with respect to whose liability the summons is issued or an officer, employee  agent, accountant, or attorney of such person who, at the time the summons is served, is acting as such

(c) Summons to which section applies - This section applies with respect to any summons authorized under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602

## Sec. 7210. Failure to obey summons

Any person who, being duly summoned to appear to testify, or to appear and produce books accounts, records, memoranda or other papers, as required under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), 7602, 7603  and 7604(b), neglects to appear or to produce such books, accounts, records memoranda, or other papers, shall, upon conviction thereof  be fined not more than $1,060  or imprisoned not more than 1 year, or both, together with costs of prosecution

Case 3:03-cv-00065-MCR-MD   Document 45   Filed 10/17/03   Page 30 of 79



## US CODE COLLECTION



**TITLE 26** > **Subtitle F** > **CHAPTER 78** > **Subchapter A** > Sec. 7608.

Prev | Next

*Search this title:*

Search Title 26

Notes
Updates
Parallel authorities
(CFR)
Topical references

## Sec. 7608. - Authority of internal revenue enforcement officers

**(a)** Enforcement of subtitle E and other laws pertaining to liquor, tobacco, and firearms

Any investigator, agent, or other internal revenue officer by whatever term designated, whom the Secretary charges with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of subtitle E or of any other law of the United States pertaining to the commodities subject to tax under such subtitle for the enforcement of which the Secretary is responsible may -

**(1)**

carry firearms;

**(2)**

execute and serve search warrants and arrest warrants, and serve subpoenas and summonses issued under authority of the United States;

**(3)**

in respect to the performance of such duty, make arrests without warrant for any offense against the United States committed in his presence, or for any felony cognizable under the laws of the United States if he has reasonable grounds to believe that the person to be arrested has committed, or is committing, such felony; and

**(4)**

in respect to the performance of such duty, make seizures of property subject to forfeiture to the United States.

**(b)** Enforcement of laws relating to internal revenue other than subtitle E

   **(1)**

      Any criminal investigator of the Intelligence Division of the Internal Revenue Service whom the Secretary charges with the duty of enforcing any of the criminal provisions of the internal revenue laws, any other criminal provisions of law relating to internal revenue for the enforcement of which the Secretary is responsible, or any other law for which the Secretary has delegated investigatory authority to the Internal Revenue Service, is, in the performance of his duties, authorized to perform the functions described in paragraph (2).

   **(2)**

      The functions authorized under this subsection to be performed by an officer referred to in paragraph (1) are -

   **(A)**

      to execute and serve search warrants and arrest warrants, and serve subpoenas and summonses issued under authority of the United States;

   **(B)**

      to make arrests without warrant for any offense against the United States relating to the internal revenue laws committed in his presence, or for any felony cognizable under such laws if he has reasonable grounds to believe that the person to be arrested has committed or is committing any such felony; and

   **(C)**

      to make seizures of property subject to forfeiture under the internal revenue laws.

**(c)** Rules relating to undercover operations

   **(1)** Certification required for exemption of undercover operations from certain laws

      With respect to any undercover investigative operation of the Internal Revenue Service (hereinafter in this subsection referred to as the "Service") which is necessary for the detection and prosecution of offenses under the internal revenue laws, any other criminal provisions of law relating to internal revenue, or any other law for which the Secretary has delegated investigatory authority to the Internal Revenue Service -

tax is not paid. The penalty can be as much as 25% of the unpaid amount. It applies to any unpaid tax on the return. **Are There Other Penalties?** Yes. Other penalties can be imposed for negligence, substantial understatement of tax,

because you take a frivolous position or desire to delay or interfere with the tax laws. This includes altering or striking out the preprinted language above the space where you sign.

# Disclosure, Privacy Act, and Paperwork Reduction Act Notice

The IRS Restructuring and Reform Act of 1998, the Privacy Act of 1974, and the Paperwork Reduction Act of 1980 require that when we ask you for information we must first tell you our legal right to ask for the information, why we are asking for it, and how it will be used. We must also tell you what could happen if we do not receive it and whether your response is voluntary, required to obtain a benefit, or mandatory under the law.

This notice applies to all papers you file with us, including this tax return. It also applies to any questions we need to ask you so we can complete, correct, or process your return; figure your tax; and collect tax, interest, or penalties.

Our legal right to ask for information is Internal Revenue Code sections 6001, 6011, and 6012(a), which require you to file a return or statement with us for any tax you are liable for. Your response is mandatory under these sections. Code section 6109 requires that you provide your social security number or individual taxpayer identification number on what you file. This is so we know who you are, and can process your return and other papers. You must fill in all parts of the tax form that apply to you. However, you do not have to check the boxes for the Presidential Election Campaign Fund or for the third-party designee. You also do not have to provide your daytime phone number.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law.

We ask for tax return information to carry out the tax laws of the United States. We need it to figure and collect the right amount of tax.

If you do not file a return, do not give the information asked for, or give false information, you may be charged penalties and be subject to criminal prosecution. We may also have to disallow the exemptions, exclusions, credits, deductions, or adjustments shown on your tax return. This could make the tax higher or delay any refund. Interest may also be charged.

Generally, tax returns and return information are confidential, as stated in Code section 6103. However, Code section 6103 allows or requires the Internal Revenue

Service to disclose or give the information shown on your tax return to others as described in the Code. For example, we may disclose your tax information to the Department of Justice to enforce the tax laws, both civil and criminal, and to cities, states, the District of Columbia, U.S. commonwealths or possessions, and certain foreign governments to carry out their tax laws. We may disclose your tax information to the Department of Treasury and contractors for tax administration purposes; and to other persons as necessary to obtain information which we cannot get in any other way in order to determine the amount of or to collect the tax you owe. We may disclose your tax information to the Comptroller General of the United States to permit the Comptroller General to review the Internal Revenue Service. We may also disclose your tax information to Committees of Congress; Federal, state, and local child support agencies; and to other Federal agencies for the purposes of determining entitlement for benefits or the eligibility for and the repayment of loans.

Please keep this notice with your records. It may help you if we ask you for other information. If you have any questions about the rules for filing and giving information, please call or visit any Internal Revenue Service office.

**The Time It Takes To Prepare Your Return.** We try to create forms and instructions that can be easily understood. The time needed to complete and file the forms in the chart below will vary depending on individual circumstances.

The estimated average time for certain people with IRA distributions, pension income, social security benefits, etc., is: Recordkeeping, 2 hr., 16 min.; Learning about the law or the form, 2 hr., 31 min.; Preparing the form, 3 hr., 24 min.; Copying, assembling, and sending the form to the IRS, 34 min.; Total, 8 hr., 45 min.

**We Welcome Comments on Forms.** If you have comments concerning the accuracy of these time estimates or suggestions for making these forms simpler, we would be happy to hear from you. You can e-mail us your suggestions and comments through the IRS Internet Home Page (www.irs.gov/help/email2.html) or write to the Tax Forms Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. Do not send your return to this address. Instead, see the back cover.

**Estimated Preparation Time**

The time needed to complete and file Form 1040A, its schedules, and accompanying worksheets will vary depending on individual circumstances. The estimated average times are:

| Form | Recordkeeping | Learning about the law or the form | Preparing the form | Copying, assembling, and sending the form to the IRS | Totals |
|------|---------------|-----------------------------------|---------------------|------------------------------------------------------|--------|

INTERNAL REVENUE SERVICE
STANDARD POSITION DESCRIPTION

SPD No. 93152
Page I of 4

| | |
|---|---|
| Classification: | GS-512-11 |
| Classification Title: | Internal Revenue Agent |
| Organizational Title: | Internal Revenue Agent (Bilingual - Spanish) Smal-l |
| Organizational Locatiom | Business Self Employed Operating Division |
| Position Information | |
| Competitive Level Code | 0661 |
| Supervisory Code: | 8 (Non-supervisory) |
| Bargaining Status: | BU |
| Risk LeveUADP: | 5N |
| FLSA Status: Full- | Exempt |
| Working Level: Career | GS-1 I |
| Ladder PDs: | N/A |

Remarks          This position is at the full working level.

---

| | | |
|---|---|---|
| Duties and Responsibilities Approved: | 7/12/00 | /s/Elaine S. Beck |
| | Date | *for* SB/SE Division Commissioner |
| Classirication Approved: | 7/12/00 | /s/Paula Crumley |
| | | Chief, National Classification Center |

---

Supervisory Certification: I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

---

Signature of Immediate Supervisor:                    Date:

Title:

---

All other levels of supervision which propose or approve official statements of duties and responsibilities are attesting to the same effect as the immediate supervisor.

This position description is intended for use without modification. Any changes (e g , pen-and-ink, etc.) to the duty statements, factor level descriptions and benchmarks may jeopardize the classification allocation  Contact the National Classification Center for further assistance. The classification of this position may be appealed. Published standards or other information upon which the classification is based may be reviewed. Information may be obtained from the emolovee's immediate supervisor or the National Classification Center

INTERNAL REVENUE SERVICE                                          SPD No. 93152
STANDARD POSITION DESCRIPTION                                        Page 2 of 4

INTRODUCTION:

The incumbent serves as an Internal Revenue Agent independently conducting examinations and related
investigations of tax returns filed by a diversified spectrum of individual and business taxpayers. The
incumbent also has the ability to communicate fluently in Spanish.

MAJOR DUTIES:

Conducts independent exan-dnations and related investigations of income tax returns that cover a diversified
spectrum of individual and business taxpayers, to include sole proprietorship, partnerships, fiduciaries, small
and medium size C Corporations, S Corporations, and entities having several operating subdivisions.
Examinations may also contain special audit features or anticipated accounting, tax, law, or investigative issues
of more than usual difficulty or complexity.

*[handwritten margin note: This means they can only examine businesses]*

Conducts package audits to determine that other required returns such as information, excise, or specialty
returns are filed and conduct concurrent examinations of these and other returns when warranted.

*[handwritten margin note: Use of the word "includes" limits their responsibilities to only the entities listed.]*

Applies a comprehensive knowledge of the Internal Revenue code, rulings, court decisions, and agency
policies, regulations, and practices to determine the correct tax liability.

Identifies issues to be pursued based on large, unusual, or questionable items which produce significant tax or
compliance effect and utilizes the appropriate tax law and facts needed to resolve them. Recognizes indicators of
fraudulent activity and develops appropriate referrals.

Utilizes standard accounting methods and techniques during the course of examinations in order to develop
information regarding the income and financial operations of taxpayers.

Examines accounting systems and records including computerized accounting and financial information systems
that reflect a variety of complex financial operations. Gathers and researches data from a variety of sources,
and/or specialized accounting practices unique to a particular trade or industry. May utilize personal computers,
including laptop computers to the extent necessary to complete the examination. Prepares workpapers and reports
documenting findings and conclusions.

Confers with taxpayers or their representatives to explain the accounting and other issues involved and the
applicability of pertinent tax laws and regulations, and explains proposed adjusunents.

Considers the collectibility of potential tax deficiencies at all stages of the examination. Solicits payments and
offers installment agreements when appropriate.

As required, may be assigned to instruct, review cases, provide expert testimony, participate in grand jury cases,
examine special areas of taxation, participate as a cooperating agent in joint investigations, or to perform any
other special duties appropriate for knowledge required.

INTERNAL REVENUE SERVICE                                    SPD No.
STANDARD POSITION DESCRIPTION                          93152 Page 3
                                                              of 4

KNOWLEDGE :                          FL 1-7, 1250 Pts

Knowledge of accounting techniques and practices as evidenced by an accounting degree, equivalent classwork, an applicable certificate, and/or any requisite experience and the ability to apply these techniques to examine various tax returns including a specialized knowledge of a particular industry, involving varied and complex systems of accounting. Ability to apply this knowledge to determine the correct tax liability, identify situations with potential for understated taxes, and to recognize potential fraud.

Ability to use the Internal Revenue Code, regulations, rulings, court decisions, and agency policies to conduct extensive research of legal questions, including consideration of judicial decisions and legislative intent in cases involving the adaptation of precedents in examining tax returns.

Skill to meet and deal with taxpayers and their representatives with varied socioeconomic and cultural backgrounds in order to communicate examination findings, including complex interpretations of tax laws, regulations, etc.

Ability to write clear, comprehensive reports of examinations of major business firms and to render expert judgment as to the tax effects of various kinds of complex business transactions.

Knowledge of Spanish and skill to communicate in Spanish that has been supplemented by education or training in the language, or by work experience that required linguistic skill. Knowledge of the different dialects of Spanish sufficient to communicate with Spanish speaking customers.

LEVEL OF DIFFICULTY:      FL24 450 Pts;FL 3-3 275 Pts;FL 4-4 225 Pts;FL 8-15 Pts;FL 9-1, 5 Pts

Receives general supervision from the group or case manager who sets the overall objectives and resources available. The incumbent is independently responsible for planning and carrying out all aspects of assigned work. The supervisor is kept apprised of the progress, and of all potentially controversial matters that might arise. Work is reviewed for technical and procedural accuracy. Guidelines include the Internal Revenue Code, Federal Tax Regulations, Treasury Regulations, Revenue Rulings, Internal Revenue Manual, other tax reference publications, and established investigative and examination procedures. Refers to technical cases, precedent cases, and other legal decisions; where guides or precedents are unclear, uses judgment I interpreting and adapting guidelines and precedents to arrive at a conclusion and to take or recommend an action.

The work requires examinations involving specialized features or varied issues which rquire the application of appropriate tax laws and investigative techniques. Established general accounting methods and methods which may be unique to a particular market segment or industry are used. Research and analysis of information is necessary to establish proper interpretation and application of pertinent tax laws that are not clear or require adaptation of precedent cases to similar situations. There are no unusual physical demands. As required, the performance of these duties may require travel and the operation of a motor vehicle. Work is usually performed in an office at the taxpayer's place of business; however, certain types of cases require investigative trips to various locations.

ASSIGNMENT :                        FL 5-3, 150 Pts

INTERNAL REVENUE SERVICE
STANDARD POSITION DESCRIPTION

SPD No. 93152
Page 4 of 4

Conducts examinations of entities including sole proprietorships, small corporations, partnerships, and fiduciaries that may involve a number of separate tasks or procedures. The results of the examinations affect the taxpayer by determining the correct tax liability. May require corrective action for prior and current tax years, creating a deterrent effect for future tax years, which may extend to other related entities.

COMMUNICATIONS:                              FL 6-3, FL 7c, 180 Pts

Contacts are made with employees at various levels within the Internal Revenue Service, Government agencies, and the public sector. Contacts are also made with representatives including attorneys, accountants, tax advisors,- etc.- Information or issues discussed are sometimes controversial and sensitive so that considerable tact, technical competence, and skillful negotiation techniques are necessary to avoid adverse taxpayer or public attitudes.

The purpose of contacts is to influence and persuade the taxpayer or a representative to comply with requirements to provide information to resolve outstanding problems and issues, or to pay tax liability. Contacts include presentation and discussion of the government's position on complex and controversial issues and consideration of the opposing viewpoint. Contacts may require considerable tact, technical competence, and diplomacy in attaining desired results.

Total Points: 2540

Point Range for GS- 11: 2355-
2750

**Ward Dean, M.D.**
**8799 Burning Tree Road**
**Pensacola, Florida 32514**
**(850) 484-0595 / 474-5255 / 477-8610 (Fax)**
warddeanmd@earthlink.net

14 January 2002

Vitamin Research Products
3564 Hwy 50 E
Carson City, NV  89701

Dear Sir,

Ref the "**Summons**" from the IRS, dated 15 February signed by Wayne Jackson and George Poole. This is to inform you are under no obligation to comply with this *fraudulent* "Summons." It is not a court order. It is a *phony document* sent by a "Revenue Agent" who has no authority to send a lawful summons to anyone.

Note that IRS Code Section 7602 (a) (Incl 1) only authorizes the Secretary (or his delegate) to send summonses. Also, note that Code Section 7608 (Incl 2) authorizes only Special Agents to send summonses to enforce Subtitle E and other laws pertaining to Liquor, Tobacco and Firearms.

First, Mr. Jackson has no Delegation Order from the Secretary of the Treasury (or anyone else, for that matter) authorizing him to send summonses. If he claims he has one, ask him to show it to you. Second, Mr. Jackson, is not a *Special Agent* (he is a Revenue Agent). Only Special Agents are authorized to send summonses--and even then, only with regard to violations of Liquor, Tobacco or Firearms laws (Section 7608).

In the case of *Federal Crop Insurance Corporation v. A. A. Merrill* (332 US 380, 384) (Incl 3), the Supreme Court noted that "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government *takes the risk* of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority" [emphasis mine], and "…the agent himself may [be] unaware of the limitations upon his authority." In other words, the Supreme Court warned the American public that in dealings with the government, we take a risk that the agents are acting within the scope of their authority. Well, I don't want to take that risk.

Pursuant to the Federal Crop Insurance Case, I suggest that before any disclosure is made, you obtain from Revenue Agent Jackson copies of a delegation order authorizing him to issue summonses and to examine my books and records, as well as a copy of an enforcement commission (he has neither).

I request that my records not be released to anyone without proper judicial authority. I will hold anyone who releases these records in response to this "summons" personally liable for any such unauthorized disclosure. Please let me know your intentions in this matter.

Thank you,

Yours truly,

Ward Dean, M.D.

Cc: Wayne Jackson

GOVERNMENT EXHIBIT
3


Sec. 7601.  Canvass of districts for taxable persons and objects.

(a) General rule.

The Secretary shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed.

(b) Penalties.

For penalties applicable to forcible obstruction or hindrance of Treasury officers or employees in the performance of their duties, see section 7212.

In '76, P.L. 94-455, Sec. 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec. 7601, effective 2/1/77

Sec. 7602.  Examination of books and witnesses.

(a) Authority to summon, etc.

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

(b) Purpose may include inquiry into offense.

The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

(c) No administrative summons when there is justice department referral.

(1) Limitation of authority. No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

(2) Justice Department referral in effect. For purposes of this subsection—

(A) In general. A Justice Department referral is in effect with respect to any person if —

(i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws, or

(ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

(B) Termination. A Justice Department referral shall cease to be in effect with respect to a person when—

(i) the Attorney General notifies the Secretary, in writing, that—

(I) he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws,

(II) he will not authorize a grand jury investigation of such person with respect to such an offense, or

(III) he will discontinue such a grand jury investigation,

(ii) a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person, or

(iii) the Attorney General notifies the Secretary, in writing, that he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws relating to the request described in subparagraph (A)(ii).

(3) Taxable years, etc., treated separately. For purposes of this subsection, each taxable period (or, if there is no taxable period, each taxable event) and each tax imposed by a separate chapter of this title shall be treated separately.

In '82, P.L. 97-248, Sec. 333(a), amended Code Sec. 7602, effective 9/4/82.

Prior to amendment, Code Sec. 7602 read as follows

"SEC. 7602. EXAMINATION OF BOOKS AND WITNESSES

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—

"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

"(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

"(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

In '76, P.L. 94-455, Sec. 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec. 7602, effective 2/1/77.

Sec. 7603.  Service of summons.

A summons issued under section 6420(e)(2), 6421(g)(2), 6427(j)(2) , or 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty.

In '88, P.L. 100-647, Sec. 1017(c)(9), substituted "6421(g)(2)" for "6421(f)(2)" effective for gasoline removed (as defined in section 4082 of the Internal Revenue Code of 1986, as amended by Sec. 1703(a) of P.L. 99-514) after 12/31/87.

In '86, P.L. 99-514, Sec. 1703(e)(2)(G), substituted "section 6427(j)(2)" for "section 6427(i)(2)" in Code Sec. 7603, effective for gasoline removed (as defined in section 4082 of the Internal Revenue Code of 1986, as amended by Sec. 1703(a) of this Act) after 12/31/87.

In '84, P.L. 98-369 "6427(h)(2)" in Coc
In '83, P.L. 97-424 "6421(f)(2)," in Cor 1/6/83
In '80, P.L. 96-223 "6427(g)(2)" effec
In '78, P.L. 95-59 "6427(f)(2)" in Coc
In '76, P.L. 94-33 "6427(f)(2)" in Coc
—P.L. 94-455, Sec "Secretary or his del
In '70, P.L. 91-258 Sec. 7603, effective
In '65, P.L. 89-44, 6420(d)(2), effective
In '56, P.L. 627 in 6421(f)(2), effective
—P.L. 466, incl 6420(e)(2)

Sec. 7604.  Enforce
(a) Jurisdiction of d

If any person is laws to appear, to records, or other data district in which such jurisdiction by appro ance, testimony, or p other data

(b) Enforcement.

Whenever any 6420(e)(2), 6421(g)(2 uses to obey such su records, or other data Secretary may apply t United States person so summoned against him as for a judge or commissione factory proof is mad some proper officer, i his being brought befo case, and upon such commissioner shall h shall deem proper, no ishment of contempts ments of the summon fault or disobedience

(c) Cross references.

(1) Authority to ments. For authorit the provisions of th
(2) Penalties. For p tion 6420(e)(2), 642 tion 7210

In '88, P.L. 100-647, "6421(f)(2)" in subsec removed (as defined i of 1986, as amended 12/31/87
In '86, P.L. 99-514 6427(j)(2)" for "sectio effective for gasoline Internal Revenue Cod Act) after 12/31/87
In '84, P.L. 98-369 Se "6427(h)(2)" in subsec
In '83, P.L. 97-424, s "6421(f)(2)," each plac for articles sold after 1
In '80, P.L. 96-223, Se "6427(g)(2)" in subsec

e, en-
igraph
utlays
tance
tle IV
total
it, as-

is re-
or the
availa-
struc-

nd a
it ac
te of

\ND

.s

.ts

ons

## Miscellan s provisions

## Miscellane provisions

—P.L. 94-455, Sec 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec 6605, effective 2/1/77
In '70, P.L. 91-258, Sec 207(d)(9), added "6427(e)(2)" to the first sentence of subsec (a), and substituted "6424(d)(2), or 6427(e)(2)" for "or 6424(d)(2)" in the second of subsec (a), effective 7/1/70
In '69, P.L. 91-172, Sec. 121(f), added subsec (c), effective for tax yrs begin after 12/31/69
In '65, P.L. 89-44, inserted references to section 6424(d)(2), effective 1/1/66
In '56, P.L. 627, inserted references to section 6421(f)(2), effective 6/29/56
—P.L. 469, inserted references to section 6420(e)(2)

### Sec. 7606.  Entry of premises for examination of taxable objects.

**(a) Entry during day.**

The Secretary may enter, in the daytime, any building or place where any articles or objects subject to tax are made, produced, or kept, so far as it may be necessary for the purpose of examining said articles or objects.

**(b) Entry at night.**

When such premises are open at night, the Secretary may enter them while so open, in the performance of his official duties.

**(c) Penalties.**

For penalty for refusal to permit entry or examination, see section 7342.

In '76, P.L. 94-455, Sec 1906(b)(13)(A), substituted "Secretary" for "Secretary or his delegate" each place it appeared in Code Sec 7606, effective 2/1/77

### Sec. 7607.  Repealed.

In '84, P.L. 98-573 Sec 213(b)(1), repealed Code Sec 7607, effective 10/15/84
Prior to repeal, Code Sec 7607 read as follows
"SEC 7607 ADDITIONAL AUTHORITY FOR BUREAU OF CUSTOMS
"Officers of the customs (as defined in section 401(1) of the Tariff Act of 1930, as amended, 19 U.S.C., sec. 1401(1)), may—
"(1) carry firearms, execute and serve search warrants and arrest warrants, and serve subpoenas and summonses issued under the authority of the United States, and
"(2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs (as defined in section 102(16) of the Controlled Substances Act) or marihuana (as defined in section 102(15) of the Controlled Substances Act) where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation.
In '70, P.L. 91-513, Sec 1102(g), amended Code Sec 7607, effective 5/1/71
Prior to amendment Code Sec 7607 read as follows
"The Commissioner, Deputy Commissioner, Assistant to the Commissioner, and agents, of the Bureau of Narcotics of the Department of the Treasury, and officers of the customs (as defined in section 401(1) of the Tariff Act of 1930, as amended; 19 U S C, sec. 1401(1)), may—
"(1) carry firearms, execute and serve search warrants and arrest warrants, and serve subpoenas and summonses issued under the authority of the United States, and
"(2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs (as defined in section 4731) or marihuana (as defined in section 4761) where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."
In '56, P.L. 728, added Code Sec 7607, effective 7/19/56

### Sec. 7608.  Authority of internal revenue enforcement officers.

**(a) Enforcement of subtitle E and other laws pertaining to liquor, tobacco, and firearms.**

Any investigator, agent, or other internal revenue officer by whatever term designated, whom the Secretary charges with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of subtitle E or of any other law of the United States pertaining to the commodities subject to tax under such subtitle for the enforcement of which the Secretary is responsible may—

(1) carry firearms,

(2) execute and serve search warrants and arrest warrants, and serve subpoenas and summonses issued under authority of the United States;

(3) in respect to the performance of such duty, make arrests without warrant for any offense against the United States committed in his presence, or for any felony cognizable under the laws of the United States if he has reasonable grounds to believe that the person to be arrested has committed, or is committing, such felony; and

(4) in respect to the performance of such duty, make seizures of property subject to forfeiture to the United States.

**(b) Enforcement of laws relating to internal revenue other than subtitle E.**

(1) Any criminal investigator of the Intelligence Division or of the Internal Security Division of the Internal Revenue Service whom the Secretary charges with the duty of enforcing any of the criminal provisions of the internal revenue laws, any other criminal provisions of law relating to internal revenue for the enforcement of which the Secretary is responsible, or any other law for which the Secretary has delegated investigatory authority to the Internal Revenue Service, in the performance of his duties, authorized to perform the functions described in paragraph (2).

(2) The functions authorized under this subsection to be performed by an officer referred to in paragraph (1) are—

(A) to execute and serve search warrants and arrest warrants, and serve subpoenas and summonses issued under authority of the United States;

(B) to make arrests without warrant for any offense against the United States relating to the internal revenue laws committed in his presence, or for any felony cognizable under such laws if he has reasonable grounds to believe that the person to be arrested has committed or is committing any such felony; and

(C) to make seizures of property subject to forfeiture under the internal revenue laws.

**(c) Rules relating to undercover operations.**

(1) Certification required for exemption of undercover operations from certain laws. With respect to any undercover investigative operation of the Internal Revenue Service (hereinafter in this subsection referred to as the "Service") which is necessary for the detection and prosecution of offenses under the internal revenue laws, any other criminal provisions of law relating to internal revenue, or any other law for which the Secretary has delegated investigatory authority to the Internal Revenue Service—

(A) sums authorized to be appropriated for the Service may be used—

(i) to purchase property, buildings, and other facilities, and to lease space, within the United States, the District of Columbia, and the territories and possessions of the United States without regard to—

(I) sections 1341 and 3324 of title 31, United States Code,

(II) sections 11(a) and 22 of title 41, United States Code,

(III) section 255 of title 41, United States Code,

(IV) section 34 of title 40, United States Code, and

1947.             FEDERAL CROP INS. CORP. v. MERRILL             332 US

HEADNOTES

Classified to U.S. Supreme Court Digest, Annotated

FEDERAL CROP INSURANCE CORPORATION

v.

A. A. MERRILL and N. D. Merrill, Co-partners, Doing Business
under the Firm Name and Style of Merrill Bros.

(332 US 380–388.)

United States, § 69 — contracts — liability — tests.

1. The fact that the government has taken over a business or is engaging in competition with private ventures does not subject it to the same tests of liability as in the case of private individuals.

Insurance, § 20 — by governmental agency — liability for acts of agents.

2. The rules of law whereby private insurance companies are rendered liable for the acts of their agents are not bodily applicable to the Federal Crop Insurance Corporation unless Congress has so provided.

[See annotation reference, 1.]

Corporations, § 233; United States, § 25 — governmental agencies.

3. The government may carry on its operations through convenient executive agencies or through corporate forms especially created for defined ends.

United States, § 87 — powers of agent — duty to ascertain.

4. Anyone entering into an arrangement with the government takes the risk of having accurately ascertained that he who purports to act for the government stays within the bounds of his authority, even though the agent himself may be unaware of the limitations upon his authority.

Insurance, § 164 — estoppel by agent's knowledge of facts — Federal Crop Insurance Corporation.

5. The Federal Crop Insurance Corporation is not bound by assurance given to a farmer by its local agents that his crop was insurable, where a valid regulation published in the Federal Register but not in fact known to the farmer or to the local agents precluded coverage. [Four Justices dissented.] •••

Those dealing with an officer or agent of the United States must be held to have had notice of the limitations upon his authority. Sutton v. United States, 256 US 575, 579, 65 L ed 1099, 1102, 41 S Ct 563, 19 ALR 403; Wilber Nat. Bank v. United States, 294 US 120, 123, 124, 79 L ed 798, 801, 802, 55 S Ct 362.

Men must turn square corners when they deal with the government. Rock Island, A. & L. R. Co. v. United States, 254 US 141, 143, 65 L ed 188, 189, 41 S Ct 55 (by Mr. Justice Holmes).

Respondents were in duty bound to read the Regulations. Frier v. Federal Crop Ins. Corp. (CCA5th Tex) 152 F 2d 149, 150.

In any event, their publication in the Federal Register was sufficient, under the Federal Register Act, to afford notice to all affected persons. Yakus v. United States, 321 US 414, 435, 88 L ed 834, 854, 64 S Ct 660. Cf. Griswold, Government in Ignorance of the Law, 48 Harv L Rev 198.

As Argued By The Solicitor General
On Behalf Of The United States of America

EXHIBIT 1



**WELCOME TO**
# WARDDEANMD.COM

| HOME PAGE | DR. DEAN | IRS INTRO | IRS UPDATE | PROP. RIGHTS | CONTACT US |
| ANTI-AGING | GHB | HEALTH Q&A | LINKS | NEWSLETTERS | SHOPPING |

20 March 2002

**Joel Gold**
**Legal Counsel, PNC Bank**
Mail Stop: P7-PFSC-02-F
500 First Street
Pittsburgh, Pennsylvania 15219
(412) 762-2801
(412) 705-2583

Dear Mr. Gold,

Ref our fonecon today regarding PNC Bank File #2002-297, in which you stated that it was PNC's bank policy to respond to IRS Summons for records by turning over the requested records, and to respond to IRS Notices of Levy by turning over funds in depositors' accounts, despite the fact that there has been no court order to do so.

Which bank officer bears the responsibility for having disclosed my records to the IRS in the absence of a court order?

Please send me a copy of the bank policy that you cited. Also, please send me a copy of the bylaws and charter of the bank.

Yours truly,

Ward Dean, M.D.

cc: Sandra L. Scarpati-Hostetler (412-768-1088)

----------------------------------------------------------------

26 February, 2002
PNC Bank
ATTN: Legal Process
500 1st Avenue
Suite 02-F
Pittsburgh, Pennsylvania 15219

Dear Sir,

Ref the "Summons" from the IRS, dated 21 February, 2002, signed by Internal Revenue Agent Wayne Jackson and Group Manager George Poole.

This is to Notice you that you are under no obligation to comply with this fraudulent "Summons." It is not a court order. It is a phony document sent by a "Revenue Agent" who has no authority to send a lawful summons to anyone.

Case 3:03-cv-00065-MCR-MD   Document 45   Filed 10/17/03   Page 42 of 79

Note that IRS Code Section 7602 (a) (Incl 1) only authorizes the Secretary (or his delegate) to send summonses. Also, note that Code Section 7608 (Incl 2) authorizes only Special Agents to send summonses to enforce Subtitle E and other laws pertaining to Liquor, Tobacco and Firearms.

Mr. Jackson has no Delegation Order from the Secretary of the Treasury (or anyone else, for that matter) authorizing him to send summonses. If he claims he has one, ask him to show it to you.

Mr. Jackson, is not a Special Agent (he is a Revenue Agent). Only Special Agents are authorized to send summonses--and even then, only with regard to violations of Liquor, Tobacco or Firearms laws (Section 7608).

Please see the attached job description of an IRS Revenue Agent. Nowhere in this job description does it say anything regarding sending summonses.

Furthermore, note that the privacy act statement (attached) in the 1040 booklet states that "You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number." [emphasis added]

This is a restatement of Title 44, Section 3512, which states, in pertinent part:

Title 44, USC, Sec. 3512. Public protection

(a) Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this chapter if--
(1) the collection of information does not display a valid control number assigned by the Director in accordance with this chapter; or
(2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.
(b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto.

Note that the summons did not display a valid OMB control number. Therefore, it appears that pursuant to Title 44, Section 3512, and the Privacy Act Statement from the IRS' 1040 booklet, you are not required to respond to this bogus "summons."

In the case of Federal Crop Insurance Corporation v. A. A. Merrill (332 US 380, 384) (Incl 3), the Supreme Court noted that "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority" [emphasis mine], and "...the agent himself may [be] unaware of the limitations upon his authority."

In other words, the Supreme Court warned the American public that in dealings with the government, we take a risk that the agents are acting within the scope of their authority. Well, I don't want to take that risk.

Pursuant to the Federal Crop Insurance Case, I suggest that before any disclosure is made, you obtain from Revenue Agent Jackson copies of a delegation order authorizing him to issue summonses and to examine my books and records, as well as a copy of an enforcement commission (he has neither).

I demand that my records not be released to anyone without proper judicial authority. This is your Notice that I will hold anyone who releases these records in response to this "summons" personally liable for any such unauthorized disclosure. Please let me know your intentions in this matter.

Thank you,
Yours truly,


Ward Dean, M.D.

---------------------------------------------------------

26 February, 2002

First Union National Bank
ATTN: Judicial Processing
Mail Code PA 4418
P.O. Box 8667
Philadelphia, Pennsylvania 19101-8867

Dear Sir,

Ref the "Summons" from the IRS, dated 21 February, 2002, signed by Internal Revenue Agent Wayne Jackson and Group Manager George Poole.

This is to Notice you that you are under no obligation to comply with this fraudulent "Summons." It is not a court order. It is a phony document sent by a "Revenue Agent" who has no authority to send a lawful summons to anyone.

Note that IRS Code Section 7602 (a) (Incl 1) only authorizes the Secretary (or his delegate) to send summonses. Also, note that Code Section 7608 (Incl 2) authorizes only Special Agents to send summonses to enforce Subtitle E and other laws pertaining to Liquor, Tobacco and Firearms.

Mr. Jackson has no Delegation Order from the Secretary of the Treasury (or anyone else, for that matter) authorizing him to send summonses. If he claims he has one, ask him to show it to you.

Mr. Jackson, is not a Special Agent (he is a Revenue Agent). Only Special Agents are authorized to send summonses--and even then, only with regard to violations of Liquor, Tobacco or Firearms laws (Section 7608).

Please see the attached job description of an IRS Revenue Agent. Nowhere in this job description does it say anything regarding sending summonses.

Furthermore, note that the privacy act statement (attached) in the 1040 booklet states that "You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number." [emphasis added]

This is a restatement of Title 44, Section 3512, which states, in pertinent part:

Title 44, USC, Sec. 3512. Public protection

(a) Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this chapter if--
(1) the collection of information does not display a valid control number assigned by the Director in accordance with this chapter; or
(2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.
(b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto.

Note that the summons did not display a valid OMB control number. Therefore, it appears that pursuant to Title 44, Section 3512, and the Privacy Act Statement from the IRS' 1040 booklet, you are not required to respond to this bogus "summons."

In the case of Federal Crop Insurance Corporation v. A. A. Merrill (332 US 380, 384) (Incl 3), the Supreme Court noted that "Whatever the form in which the Government functions, anyone entering into an

arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority" [emphasis mine], and "…the agent himself may [be] unaware of the limitations upon his authority."

In other words, the Supreme Court warned the American public that in dealings with the government, we take a risk that the agents are acting within the scope of their authority. Well, I don't want to take that risk.

Pursuant to the Federal Crop Insurance Case, I suggest that before any disclosure is made, you obtain from Revenue Agent Jackson copies of a delegation order authorizing him to issue summonses and to examine my books and records, as well as a copy of an enforcement commission (he has neither).

I demand that my records not be released to anyone without proper judicial authority. This is your Notice that I will hold anyone who releases these records in response to this "summons" personally liable for any such unauthorized disclosure. Please let me know your intentions in this matter.

Thank you,
Yours truly,


Ward Dean, M.D.


-----------------------------------------------------------

26 February, 2002

MBNA
Attn: Custodian of Records
1100 King Street
Wilmington, Delaware 19884

Dear Sir,

Ref the "Summons" from the IRS, dated 21 February, 2002, signed by Internal Revenue Agent Wayne Jackson and Group Manager George Poole.

This is to Notice you that you are under no obligation to comply with this fraudulent "Summons." It is not a court order. It is a phony document sent by a "Revenue Agent" who has no authority to send a lawful summons to anyone.

Note that IRS Code Section 7602 (a) (Incl 1) only authorizes the Secretary (or his delegate) to send summonses. Also, note that Code Section 7608 (Incl 2) authorizes only Special Agents to send summonses to enforce Subtitle E and other laws pertaining to Liquor, Tobacco and Firearms.

Mr. Jackson has no Delegation Order from the Secretary of the Treasury (or anyone else, for that matter) authorizing him to send summonses. If he claims he has one, ask him to show it to you.

Mr. Jackson, is not a Special Agent (he is a Revenue Agent). Only Special Agents are authorized to send summonses--and even then, only with regard to violations of Liquor, Tobacco or Firearms laws (Section 7608).

Please see the attached job description of an IRS Revenue Agent. Nowhere in this job description does it say anything regarding sending summonses.

Furthermore, note that the privacy act statement (attached) in the 1040 booklet states that "You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number." [emphasis added]

This is a restatement of Title 44, Section 3512, which states, in pertinent part:

Title 44, USC, Sec. 3512. Public protection

(a) Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this chapter if--
(1) the collection of information does not display a valid control number assigned by the Director in accordance with this chapter; or
(2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.
(b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto.

Note that the summons did not display a valid OMB control number. Therefore, it appears that pursuant to Title 44, Section 3512, and the Privacy Act Statement from the IRS' 1040 booklet, you are not required to respond to this bogus "summons."

In the case of Federal Crop Insurance Corporation v. A. A. Merrill (332 US 380, 384) (Incl 3), the Supreme Court noted that "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority" [emphasis mine], and "...the agent himself may [be] unaware of the limitations upon his authority."

In other words, the Supreme Court warned the American public that in dealings with the government, we take a risk that the agents are acting within the scope of their authority. Well, I don't want to take that risk.

Pursuant to the Federal Crop Insurance Case, I suggest that before any disclosure is made, you obtain from Revenue Agent Jackson copies of a delegation order authorizing him to issue summonses and to examine my books and records, as well as a copy of an enforcement commission (he has neither).

I demand that my records not be released to anyone without proper judicial authority. This is your Notice that I will hold anyone who releases these records in response to this "summons" personally liable for any such unauthorized disclosure. Please let me know your intentions in this matter.

Thank you,
Yours truly,


Ward Dean, M.D.


### More Published Works by Ward Dean, MD



Case 3:03-cv-00065-MCR-MD   Document 45   Filed 10/17/03   Page 46 of 79

Home | Meet Dr. Dean | Books | Health Q&A | Articles | Contact

**Ward Dean, MD**
Copyright ©2003 by Ward Dean, MD / Site Design by Ward Dean, MD
Report discrepancies with this site to the Webmaster

Insert Sheet for Tab Page[1]

# EXHIBIT 4

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.



HOME PAGE | DR. DEAN | IRS INTRO | IRS UPDATE | PROP. RIGHTS | CONTACT US
ANTI-AGING | GHB | HEALTH Q&A | LINKS | NEWSLETTERS | SHOPPING



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

Ward Dean, M.D.     )
           )     Case No: 3: 02 MC9/RV
    Petitioner  )
           )
v.          )
           )
United States of America   )
           )
    Respondent )

### PETITION TO QUASH INTERNAL REVENUE SERVICE SUMMONS

Petitioner hereby alleges as follows:

1. This is a proceeding brought under the authority of Section 7609(b)(2) of the Internal Revenue Code of 1954, as amended, to judicially quash the enforcement of Internal Revenue Summonses.

2. This Court has jurisdiction pursuant to 26 USC 7609(h).

3. Tanya Burgess is employed as a Special Agent of the IRS, located at 880 North Reus Street, Suite 101, Pensacola, Florida 32501.

4. Special Agent Burgess is allegedly conducting a criminal investigation to secure information regarding Petitioner.

5. Pursuant to said investigation, Special Agent Burgess has issued a number of summonses purportedly in accordance with Section 7602 of the Internal Revenue Code, one of which was served upon Dillon Vickery, 646 Linden Road, Pensacola, Florida 32503, and another to Vickery Safety and Security, 4731 North Ninth Avenue, Pensacola, Florida 32503, Summoning confidential books, papers, and records regarding Petitioner.

6. The summons was wrongfully issued by Special Agent Burgess, since Section 7602 does not apply in any way to Petitioner or to his agents, debtors or fiduciaries for the following reasons:

a. Section 7602 (a)(1) authorizes the Secretary to "examine any books, papers, records, or other data." However, this section places no legal obligation upon Petitioner, his agents, debtors or fiduciaries to furnish the material that IRS agents may be "authorized" to examine.
b. Section 7602 (a)(2) authorizes the Secretary to summon persons "liable for tax or required to perform the act" or other persons having records related to these conditions. Since Petitioner is not a person "liable" for any federal tax nor "required to perform any act" with respect to any federal tax, he does not fall within the provisions of this Code Section.
c. Section 7602 (a)(3) authorizes the Secretary to "take testimony" that may be "relevant" to sections (a)(1) and (a)(2). Since neither of these sections, as explained above, applies to either Petitioner or his agents,

debtors or fiduciaries, this section also does not apply to Petitioner or his agents, debtors, or fiduciaries in violation of the 5th, 9th, and 14th Amendments to the U.S. Constitution.

7. Petitioner avers that the action of the Respondent by his IRS Special Agent, in seeking to enforce a 7602 summons, is acting unlawfully, and such actions amount to an abuse of process and harassment of Petitioner.

8. Petitioner avers that Special Agent Tanya Burgess is not the Secretary referred to in Section 7602.

9. Petitioner avers that Special Agent Tanya Burgess does not have an Order from the Secretary to lawfully issue Summonses pursuant to Code Section 7602.

10. Petitioner avers that the statute of limitations of 3 years pertains to any investigation for which a return has been filed, including 1997, 1998, and 1999.

WHEREFORE, Petitioner respectfully requests:

1. That since Petitioner is not one who is "liable for any tax or required to perform the act" required by IRS Code, the enforcement of the attached summonses be quashed.

2. That the Court enter an order to quash and require Respondents to pay all costs incurred by Petitioner in seeking to quash Respondent's summonses.

3. That the Court grant such other relief as it deems proper.

Ward Dean, M.D.

**CERTIFICATE OF SERVICE**

I certify that on this _____ day of _____ , 2002, I sent via certified mail postage pre-paid or personally delivered a copy of the Petition to Quash Internal Revenue Service Summonses to:

Tanya Burgess
Special Agent, IRS
880 N. Reus Street, Suite 101
Pensacola, Florida 32501

J.D. Atchison, Esq.
Asst. U.S. Attorney
Northern District of Florida
21 East Garden Street, Ste 400
Pensacola, Florida 32501-5603

Attorney General of the United States
Department of Justice
Washington, D.C. 20530

Secretary of the Treasury
3330 Main Treasury Building

1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220


Dillon Vickery
646 Linden Road
Pensacola, Florida 32503

Ward Dean, M.D.

**AFFIDAVIT**

I am over 18 years of age and understand the obligations of an oath.

No section of the Internal Revenue Code makes me "liable" for any federal tax.

No section of the Internal Revenue Code requires me to perform any act with respect to any federal income tax.

Ward Dean, M.D.

Sworn to and subscribed before me this 24th day of October, 2002,

### More Published Works by Ward Dean, MD



Case 3:03-cv-00065-MCR-MD   Document 45   Filed 10/17/03   Page 51 of 79

Home | Meet Dr. Dean | Books | Health Q&A | Articles | Contact

**Ward Dean, MD**
Copyright ©2003 by Ward Dean, MD / Site Design by Ward Dean, MD
Report discrepancies with this site to the Webmaster

**Insert Sheet for Tab Page**[1]

# EXHIBIT 5

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.



## Transcript of Hearing

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

0001

1        IN THE UNITED STATES DISTRICT COURT

        FOR THE NORTHERN DISTRICT OF FLORIDA

2        PENSACOLA DIVISION

3

4

5  In Re:  WARD DEAN        Case No. 3:03cv285-RV

6

7

8

9    TRANSCRIPT OF HEARING ON GOVERNMENT'S MOTION TO SHOW CAUSE

10

11      The above-entitled matter came on to be heard before

    the Honorable ROGER VINSON, Chief United States District Judge,

12  in the United States Courthouse, Pensacola, Florida, on the

    15th day of July, 2003, commencing at 10:19 a.m.

13

14  APPEARANCES:

15

    For the Government:      BENJAMIN W. BEARD

16            Assistant United States Attorney

              21 East Garden Street, Suite 400

17            Pensacola, FL 32501-5676

18

    For the Respondent:        WARD DEAN, M.D., Pro se

19



20

21

22

              W. PAUL RAYBORN

23            United States Court Reporter

              245 U.S. Courthouse

24            One North Palafox Street

              Pensacola, FL 32501-5665

25            T.850.432.1808 - F.850.432.1809

              prayborn@bellsouth.net



0002

1              P R O C E E D I N G S

2      **THE COURT**:  Good morning.  Be seated, please.

3      We are here on short notice with respect to a matter

4      before the grand jury.

5      Mr. Beard?

6      **MR. BEARD**:  May it please The Court?

7      The government filed a motion at approximately nine

8  o'clock this morning and provided a copy to the defendant at

Case 3:03-cv-00065-MCR-MD    Document 45    Filed 10/17/03    Page 55 of 79

11    the names and identifying data of the patients expunged.  These

12    are all still on file at the Naval hospital here and out at

13    Whiting Field.

14          So, clearly, I believe that requiring me to

15    provide a handwriting exemplar is unreasonable and not in

16    compliance with previous decisions of The Courts.

17          **THE COURT**:  All right.

18          Well, Dr. Dean, your objections are -- are overruled.

19          As far as the motions that have you filed for a

20    continuance or stay of these proceedings, again that has to be

21    denied.  This is a matter that is entitled to be brought on by

22    the government promptly and expeditiously.

23          You are entitled to have a hearing on this motion to

24    compel.  Actually the motion formally is a motion for you to

25    show cause why you should not be held in contempt.


0012

1          **DR. DEAN**:  Yes, sir.  That's what I hope that I

2    have just done with what I believe are reasonable reasons

3    for refusing.  However, I will do whatever you tell me

4    to do, but again, I will do it under threat, duress and

5    coercion.

6          **THE COURT**:  Well, the reasons you have given are not

7    sufficient for you to legally refuse to give the handwriting

8    exemplars.

9          So I will ask you again, are you willing to provide

10   the handwriting exemplars?

11          DR. DEAN:  Judge, I said I will do whatever you tell

12   me to do, but I will do it under threat, duress and coercion.

13          THE COURT:  Let me ask the government, then, to put on

14   it's evidence, then.

15          Thank you.  You may be seated.

16          Mr. Beard, call your witness.

17          MR. BEARD:  Thank you.  Call Tanya Burgess.

18          TANYA BURGESS, GOVERNMENT WITNESS, SWORN

19          THE CLERK:  Do you solemnly swear that the testimony

20   you are about to give in this proceeding will be the truth, the

21   whole truth, and nothing but the truth, so help you God?

22          THE WITNESS:  I do.

23          THE CLERK:  Please have a seat.

24          State your name and spell your last name of for the

25   record.


0013

1          THE WITNESS:  Tanya Burgess, B-U-R-G-E-S-S.

2          THE CLERK:  Thank you.

3          THE COURT:  All right, Mr. Beard.

4          MR. BEARD:  Thank you, Your Honor.

5                    DIRECT EXAMINATION

6   BY MR. BEARD:

7   Q.  Ms. Burgess, you are with the Internal Revenue Service,

8   Criminal Investigation Division?

9   A.  Yes, sir.

10   Q.  On -- on or about June 4th, 2003, did you have an occasion

11   regulations for Section 7608 all come from Title 27. Title 27,

12   as you know, relates only to Alcohol, Tobacco and Firearms.

13   There are no Title 26 regulations which implement 7608.

14        And this document which I would actually like to put

15   in as an exhibit to this hearing clearly establishes that IRS

16   CID special agents only have authority with regard to Title 27

17   regarding Alcohol, Tobacco and Firearms, and have absolutely no

18   authority whatsoever with regard to the investigation or the

19   enforcement of Title 26, income tax laws.

20        THE COURT: Well, I will give you an opportunity to

21   try to establish a foundation for admitting whatever that is,

22   but I can assure you that for purposes of serving subpoenas,

23   they are authorized to serve the subpoena which is in question

24   here. So sustained.

25        Let's move on.


0016

1        DR. DEAN: Well, sir, the rest of this investigation

2   which has resulted in the grand jury hearing today is also as a

3   result of her investigation, and it -- she apparently, I

4   believe, is investigating something she has no authority to

5   investigate. And that's what this letter and the attached

6   documents will clearly  substantiate.

7        THE COURT: Well, I will give you a chance to argue

8   that, if you want, but again, the objection is sustained. That

9   has nothing really to do with why we are here today, and that

10   is whether you have any reason as a matter of law to justify

11  not providing the handwriting exemplars. And she has served

12  the subpoena, she testified upon, which requires you to do

13  that, which is a legal subpoena.

14      DR. DEAN: Yes, sir. Of course, it's my contention

15  that this would establish the fact that she had no authority to

16  serve that subpoena with regard to subtitle A, Title 26, income

17  taxes.

18      THE COURT: Any other questions of the witness?

19      DR. DEAN: No, sir.

20      THE COURT: Mr. Beard, any redirect?

21      MR. BEARD: No, Your Honor.

22      THE COURT: All right. Mrs. Burgess, you may step

23  down.

24      MR. BEARD: Government has no further witnesses, Your

25  Honor.


0017

1      THE COURT: Dr. Dean, do you have any witnesses you

2  want to call?

3      DR. DEAN: No, sir. I believe I have presented all my

4  arguments. I just would like to submit this document as an

5  exhibit to the proceedings this morning.

6      THE COURT: Well, I don't know what that is, so you

7  may need to testify as to foundation, whatever that is, and how

8  it came into existence. So if you want to testify about that,

9  you may.

10      DR. DEAN: Yes, sir.

11

12      **THE COURT**:  And I believe you already indicated are a

13   medical doctor, correct?

14      **THE WITNESS**:  Yes, sir.

15      **THE COURT**:  With respect to this matter that you want

16   to introduce into evidence, then, if you want to explain what

17   that is and --

18      **THE WITNESS**:  Yes, sir.  Well, it traces the entire

19   history of the relationship between the Internal Revenue

20   Service and the Bureau of Alcohol, Tobacco and Firearms, and

21   through the requirement for delegation orders published in the

22   Federal Register which clearly establish the authority and the

23   limits of authority of various employees, public officers and

24   officials of the government.

25      Throughout the entire Internal Revenue Code, the only


0020

1   person who has been given any authority, and this is as a

2   result of the 1954 tax code, is the Secretary, and that's the

3   Secretary of the Treasury.  So any authority that any other

4   agent or official in the Internal Revenue Service must have

5   specific delegation orders originating from the secretary down

6   through the chain of command.  And without these delegation

7   orders, no one in the IRS has any particular authority.

8      I have repeatedly -- I see Revenue Agent Wayne

9   Jackson in the audience.  I have asked him for his delegation

10   orders.  He has refused.  I have written to his superior in

11   Jacksonville requesting his delegation orders. I have never

12   gotten a response.

13        I have requested the delegation orders from

14   Ms. Burgess. She has refused to comply.

15        And I have even requested the delegation orders from

16   Mr. Beard, and he has failed to comply as well.

17        Now, I do not believe that the crop insurance case is

18   as limited in scope with regard to financial matters as you

19   implied. In fact, I've got a relevant copy of an extract from

20   the crop insurance case which basically states as I said

21   previously that we take a risk in any arrangement with the

22   government if we do not first establish that the government

23   officials, the agents of the government, have the authority to

24   do what they are trying to do.

25        This particular document, painstakingly through the


0021

1   Federal Register, through statutes and through regulations,

2   clearly shows that Internal Revenue special agents have no

3   authority other than to enforce Title 27, Alcohol, Tobacco and

4   Firearms statutes, and have no authority whatsoever to enforce

5   Title 26, subtitle A, income tax laws. And I think it's a

6   cursory reading of this -- the letter is only nine pages, but

7   it refers specifically to the Federal Register and to the

8   regulations and to the statutes that support this contention.

9        MR. BEARD: Government would --

10        THE COURT: Is this a document that you prepared, or is

11  this a copy of something that you obtained?

12          **THE WITNESS**: It's a document that I prepared, sir.

13          **THE COURT**: Anything else about that?

14          **THE WITNESS**: No, sir.

15          All right, Mr. Beard, cross?

16          **MR. BEARD**: Just to follow-up on The Court's question,

17  if I may, Your Honor.

18                          **CROSS-EXAMINATION**

19  BY **MR. BEARD**:

20  Q.  I understand you put this together.  You compiled it.

21  Where did you get the information?  Did you personally get the

22  information or did somebody provide it to you?

23  A.  I got it from many sources.

24  Q.  Did somebody provide it to you, sir?

25  A.  Well, obviously, I didn't write this.


0022

1  Q.  Who provided to you the material that's the subject of this

2  compilation?

3  A.  Many sources.

4  Q.  Can you give me some names, sir?

5  A.  Library of Congress, from the Internet, from books that I

6  had in my own files, from independent research.

7  Q.  What individuals have provided you information relative

8  to --

9          **MR. BEARD**:  Well, that's another matter, Your Honor.

10  I withdraw the question and re-move that it's irrelevant to the

Insert Sheet for Tab Page[1]

# EXHIBIT 6

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.

Internal Revenue Manual
Part 9 - Criminal Investigations
Chapter 9.4 - Investigative Techniques
9.4.5 - Interviews

9.4.5.3 - Purpose (03-14-2002)

  (1) Interviews are used to obtain leads, develop information, and establish evidence. The testimony of witnesses and the confessions or admissions of alleged violators are major factors in resolving tax investigations.

  (2) Investigations are presented to a jury through the testimony of witnesses. Therefore, it is the special agent's duty to interview the taxpayer and witnesses connected with the investigation.

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Insert Sheet for Tab Page[1]

# EXHIBIT 7

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.

Citation                    Found Document          Rank 1 of 4              Database
IRM 9.3.1.3.1                                                                RIA-IRM

Internal Revenue Manual
Part 9 - Criminal Investigations
Chapter 9.3 - Disclosure and Publicity
9.3.1 - Disclosure
9.3.1.3 - IRC §6103 and the Administrative Investigation
9.3.1.3.1 - Interviews

9.3.1.3.1 - Interviews (07-29-2002)

(1) When soliciting information from a third party other than a return
preparer during a tax investigation, a special agent may not show a taxpayer's
tax return to the third party. However, pertinent data (e.g., the nature and
amount of income, deductions, expenses, etc.) may be extracted from the tax
return and used in questioning third parties. This may be done to the extent
that necessary information of sufficient reliability could not be secured
without making the disclosure.

(2) Situations in which necessary information generally will not be available
from the taxpayer or will not be in a usable form include the following:

   (a.) When corroboration is needed for a taxpayer's statement or records.

   (b.) When missing evidence is in the hands of third parties.

   (c.) When it is necessary to disclose return information to persons
possessing special expertise in areas such as handwriting analysis, photographic
development, sound recording enhancement, and voice identification.

(3) In determining whether to make an investigative disclosure under IRC §
6103(k)(6), be certain that the disclosure is consistent with the requirements
of that section and the related regulation. (Treasury Regulation
301.6103(b)(6)-1).

(4) The fact that information from the taxpayer's investigative file is
already public should not normally be a factor in making investigative
disclosures.

(5) Questions concerning investigative disclosures should be brought to the
attention of one's manager or the Disclosure Officer.
END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**Insert Sheet for Tab Page**[1]

# EXHIBIT 8

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.

Citation                    Found Document          Rank 1 of 1          Database
IRM 11.3.21.3                                                            RIA-IRM

Internal Revenue Manual
Part 11 - Communications and Disclosure
Chapter 11.3 - Disclosure of Official Information
11.3.21 - Investigative Disclosure

## 11.3.21.3 - Requirements for Investigative Disclosures (11-30-2001)

(1) The provisions of Treasury Regulation 301.6103(k)(6)-1 may be summarized as follows:

IRS employees in connection with their official tax administration duties, may disclose return information to the extent necessary in order to obtain information which is not otherwise reasonably available in an accurate and sufficiently probative form or in a timely manner, or to accomplish properly any activity connected with such official duties.

(2) Return information may be disclosed to someone other than the taxpayer or the taxpayer's representative in order to obtain facts needed during an investigation. However, such disclosures will be made only to the extent required to obtain the information.

EXAMPLE:

A revenue agent or special agent contacts a taxpayer's customer regarding the purchases the customer made from the taxpayer during the year under investigation. The agent will usually be able to obtain the needed purchase information only by disclosing the taxpayer's identity and the fact of investigation. However, depending on the facts and circumstances, the agent may also have to inform the customer of the dates of the purchases and the types of merchandise involved.

EXAMPLE:

A tax examiner in a Campus is processing a return that is missing a schedule. Despite repeated contacts the taxpayer has not responded. The tax examiner can contact the preparer to secure the schedule without the taxpayer's authorization, even if by doing so the employee has to divulge return information such as the taxpayer's address or Social Security Number.

(3) The investigative disclosure must be made to obtain information. Return information may not be divulged solely for the benefit of the recipient or negotiated in some form of quid pro quo arrangement.

(4) Disclosures of return information in investigative situations may be made only if the information cannot otherwise be reasonably obtained in accurate and sufficiently probative form, or in a timely manner, and without impairing the proper performance of official duties. Thus, as a general rule, in instances when the taxpayer is aware of the investigation, is cooperating, and is believed to have the needed information, IRS employees should obtain such information directly from the taxpayer or the taxpayer's representative unless to do so might tend to impair the investigation.

(5) Situations in which information generally will not be available from the taxpayer or will not be in a usable form include the following:

(a.) When corroboration of a taxpayer's statement or records is necessary.

(b.) When the taxpayer's records are in the possession of a third party and

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

IRM 11.3.21.3

the taxpayer is unwilling or unable to obtain the records.
    (c.) When it is necessary to disclose return information to persons possessing special expertise in areas such as handwriting analysis, photographic development, sound recording enhancement, and voice identification.
    (6) If the accuracy of the information provided by the taxpayer or the taxpayer's representative needs to be verified, investigative disclosures may be made to third parties to obtain missing or corroborating information.
    (7) In determining whether to make an investigative disclosure under IRC 6103(k)(6), be certain that the disclosure is consistent with the requirements of that section and the related regulations.
    Caution:Depending upon a variety of factors, even information that may already be "public" may still be protected by IRC 6103. Thus, any disclosures of information for investigative purposes should meet the requirements of IRC 6103(k)(6).
    (8) Questions concerning investigative disclosures should be brought to the attention of one's manager or the Disclosure Officer.
END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**Insert Sheet for Tab Page**[1]

# EXHIBIT 9

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.

February 2, 2001

MEMORANDUM FOR CI SPECIAL AGENTS IN CHARGE

FROM:          /s/ Mark E. Matthews
               Chief, Criminal Investigation

SUBJECT:       Policy Statement:  Manner in Which Special Agents will
               Identify Themselves to Subjects and Witnesses


The purpose of this memorandum is to implement uniform procedures regarding the manner in which special agents identify themselves to subjects and witnesses in administrative and grand jury investigations.  These procedures resolve the uncertainty and confusion that arose from the district court decision in Gandy v. United States (January 1999).  An extensive discussion of the recent 5th Circuit Court opinion in the Gandy case, and its impact on this policy decision, is contained in a memorandum from the Assistant Chief Counsel (Disclosure and Privacy Law) dated January 30, 2001 (attachment).

The procedures discussed below will be immediately implemented in all field offices (and judicial districts).  Their implementation will permit Criminal Investigation (CI) to conduct investigations in an effective and forthright manner, cognizant of the importance of exercising judgement and discretion to ensure the protection of taxpayers' rights.

## Manner in which Special Agents are to Identify Themselves to Subjects in an Administrative Investigation

**There are no changes from the current procedure.**  At the onset of your first official meeting with the subject of an investigation, you will identify yourself as a special agent with Internal Revenue Service, Criminal Investigation (display your credentials for examination and introduce any other officials present),  then explain "as a special agent one of my functions is to investigate the possibility of criminal violations of the Internal Revenue Code and related offenses."

Then continue to read verbatim from the Statement of Rights (Non-custody), Document 5561 (Rev. 4-2000), "In connection with my investigation of your tax liability or (other matter) I would like to ask you some questions.  However, first I advise you that under the 5th Amendment to the Constitution of the United States, I cannot compel you to answer any questions or submit any information, if such answers or information might tend to incriminate you in any way.  I also advise

you that anything you say and any documents which you submit may be used against you in any criminal proceeding which may be undertaken. I advise you further that you may, if you wish, seek the assistance of an attorney before responding."

"Do you understand these rights?"

Be sure to provide the subject of the investigation with your employee identification number either verbally or in writing during your initial contact with the taxpayer, as required by RRA 98, Section 3705 (a).

The Non-custody Rights admonition will continue to be documented in memorandums of interviews.

## Third Party Contacts

In general, the new policy authorizes special agents to display their badges and credentials, make an affirmative statement that they are special agents with the Internal Revenue Service, Criminal Investigation and identify the person under investigation when making third party contacts. Below is a sample introduction.

> Mr. or Ms. XXXXXX my name is John Doe, I am a special agent with Internal Revenue Service, Criminal Investigation (display credentials for examination and introduce any other officials present). I am conducting an investigation of Mr. or Ms. XXXXX and I would like to ask you some questions regarding this matter.

**Notice, in the above example the agent made no affirmative statement characterizing the investigation as being "criminal" in nature**. Agents will refrain from characterizing investigations as "criminal" except in those instances where this disclosure is necessary to obtain the information sought. Such a disclosure could be necessary if the witness was disinclined to cooperate.

When agents memorialize witness interviews, they should ensure that the manner in which they introduce themselves is documented. Further, when the agent believes it is necessary to make a more explicit disclosure of the criminal nature of the investigation, as discussed in the preceding paragraph, the reasons for making this additional disclosure will also be documented.

Criminal Investigation has an interest in conducting its investigations discreetly, to avoid unnecessary embarrassment to the taxpayer. Adhering to these procedures will help achieve this goal. Routine investigative inquiries often can be made with minimum disclosure of information. For example, if an agent

3

contacts a neighbor to learn if a witness resides at a particular address, it is often not necessary to disclose his or her identity to obtain the information. The exercise of appropriate discretion when contacting potential witnesses is a hallmark of professionalism.

## Grand Jury Investigations

Service procedures for Non-custodial Advice of Rights does not apply to grand jury investigations. The attorney for the government will provide instructions for advising subjects of their rights. Further, though Service employees may use their credentials for identification purposes, they should advise those contacted that they are acting as assistants to the attorney for the government in conjunction with a grand jury investigation.

## Previous Instructions Rescinded

The interim guidelines for the conduct of investigations within the Eastern Judicial District of Texas, issued on March 10, 1999, **are rescinded**. To avoid any confusion, the guidance on disclosures to third parties contained in a memorandum dated April 5, 1999, is to be disregarded.

## Implementation

**This policy change is in effect immediately.** Special agents in charge will ensure that all special agents are informed of this policy change as soon as possible, but not later than 10 working days after the receipt of this memorandum. The Internal Revenue Service Manual and all training material will be revised to incorporate this policy change.

If you have any questions regarding this matter, please contact me or Senior Analyst, Gary R. James, Financial Crimes Section (CI:OPS:FC) at (202) 622-5219.

Attachment

cc: CI-Senior Staff
    Nancy Jardini  CC:CT

Insert Sheet for Tab Page[1]

# EXHIBIT 10

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
DIVISION COUNSEL/ASSOCIATE CHIEF COUNSEL (CRIMINAL TAX)
810 Broadway, Suite 400
Nashville, TN 37203
Telephone 615-250-5500
FAX 615-250-5502

March 5, 2001
CC:CT:ATL:NAS:CT-603104-99
HPLevine

MEMORANDUM FOR AREA III COUNSEL

FROM:     Howard P. Levine
          Special Litigation Assistant (CT)
          Nashville POD

SUBJECT:  Reference to Internal Revenue District in summons

Criminal Investigation has inquired about the need to refer to an "Internal Revenue District" in a summons. Although the summons contains a place for the Internal Revenue District, there are no longer any districts. By memorandum dated July 18, 2000, General Legal Services advised LMSB that "pen and ink" revisions should be made to the summons to redact the "Internal Revenue District of" and replace it with "Internal Revenue Service, [Appropriate] Division." SBSE was also advised to follow a similar format. Because of adverse judicial decisions, Criminal Investigation has not previously followed this protocol. However, by memorandum dated February 9, 2001, Disclosure & Privacy Law opined that in light of Gandy v. United States, 234 F.2d 281 (5th Cir. 2000), Criminal Investigation may reference CI as the issuing office for all summonses issued by that function.

There is no legal requirement that a summons refer to an Internal Revenue District.[1] Rather, the reference to the Internal Revenue District in the summons (Form 2039) is a holdover since before the reorganization. Form 2039 was last revised in September, 1999. Therefore, there is no need to refer to a district in the summons. To remedy this, the Form 2039 should be modified by redacting the reference to the "Internal Revenue District of".

---

[1] It may be that the District identification requirement was intended to establish the legal authority to conduct the investigation under I.R.C. § 7601, and issue the summons under I.R.C. § 7602. IRM Part 114, Summons Handbook, Exhibit 1-2 (4/30/1999) indicates that the name of the Internal Revenue district for the district in which the returns were filed or should have been filed should be inserted. Part IX, Handbook 9781, Exhibit 300-14 contains similar language.



GOVERNMENT EXHIBIT

The courts have repeatedly upheld the authority of the
Internal Revenue Service to issue and enforce a summons.  <u>United
States v. Gresham</u>, 951 F.2d 1065 (9th Cir. 1991).  The summons
authority is contained in I.R.C. § 7602, which provides, in part,
that the Secretary is authorized to issue summonses.  There is no
reference to a District in I.R.C. § 7602.  The reference to
"district" in I.R.C. § 7604, which pertains to enforcement of a
summons, is a jurisdictional provision which refers to the
judicial district in which the person resides.  <u>Masat v. United
States</u>, 745 F.2d 985 (5th Cir. 1984); <u>United States v. Hankins</u>,
424 F.Supp. 606 USDC, ND Miss. 1976); <u>Vitello v. Alexander</u>, 59-1
USTC ¶ 9254 (USDC, SD Calif. 1958).

The Internal Revenue Service is in the process of modifying
the summons form, Form 2039.  First, LMSB and then SBSE was
advised to modify the summons by redacting the "Internal Revenue
District" language and substituting "Internal Revenue Service,
[Appropriate] Division.  Disclosure & Privacy Law recently opined
that Criminal Investigation may reference itself as the
appropriate division issuing the summons.

Should you have questions, please contact the undersigned at
(615) 250-5072.

                         STEPHEN J. WALLER
                         Area Counsel


        By:    _____
                         HOWARD P. LEVINE
                         Special Litigation Assistant (CT)

**Insert Sheet for Tab Page**[1]

# EXHIBIT 11

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

December 3, 2002

MEMORANDUM FOR SPECIAL AGENTS IN CHARGE
CRIMINAL INVESTIGATION

FROM:          Johnny C. Rose
               Director, Operations Policy and Support
               Criminal Investigation  (CI:OPS)

SUBJECT:       Identification of Criminal Investigation on Administrative
               Summonses (Form 2039) (Rev. 12-2001)


In May 2001, the administrative summons form was revised to reflect the Service's new organizational structure by substituting the Internal Revenue Service operating division in place of the district.  A question was elevated to Headquarters concerning whether references to Criminal Investigation (CI) should be omitted from summonses in light of Gandy v. United States, 234 F.3d 281 (5th Cir. 2000) and similar litigation pending in other judicial districts.

In Gandy, the district court had ruled that in some instances, the special agents' disclosure of the fact of a criminal investigation by, among other things, presenting their badges and credentials when interviewing witnesses, was not authorized by section 6103(k)(6) of the Internal Revenue Code.  Based on this opinion, although the court found for the government on other grounds, CI decided to limit the use of CI badges and credentials in the Eastern Judicial District of Texas.  On appeal, the Court of Appeals for the Fifth Circuit affirmed the decision but acknowledged that special agents are authorized to display their CI credentials and badges when interviewing third parties.  In light of this decision and based on advice from Counsel, CI adopted a nationwide uniform procedure permitting all special agents to display CI credentials and badges when interviewing third party witnesses.

For reasons similar to those involved with in-person interviews, third parties that receive administrative summonses must also be apprised as to whether the summons was issued by CI.  Therefore, in order to conduct investigations in a forthright and consistent manner, current policy will not be altered.  Field offices **will continue** to enter CI, as the issuing compliance function, on line two (2) of the administrative summons (Form 2039).

If you have any questions, please contact me or Senior Analyst Gary R. James, Financial Crimes (CI:OPS:FC) at 202- 622-5219.

cc:  CI Senior Staff
     Division Counsel/Associate Chief (Criminal Tax)  CC:CT


GOVERNMENT
EXHIBIT

**Insert Sheet for Tab Page**[1]

# EXHIBIT 12

---

[1]Index tabs will not properly feed through the document scanner.  This page replaces the original tab page in this electronic version of the document.

| Citation | Found Document | Rank 1 of 16 | Database |
|---|---|---|---|
| IRM 9.3.1.3 | | | RIA-IRM |

Internal Revenue Manual
Part 9 - Criminal Investigations
Chapter 9.3 - Disclosure and Publicity
9.3.1 - Disclosure
9.3.1.3 - IRC §6103 and the Administrative Investigation

9.3.1.3 -  IRC §6103 and the Administrative Investigation (07-29-2002)

   (1) Special agents are authorized by IRC §6103(k)(6) (investigative disclosure) to disclose return information to the extent that such disclosure is necessary in obtaining information which may be relevant to a tax investigation, but is not otherwise reasonably available when the provisions of the §6103(k)(6) regulations are met. A situation in which a special agent may have to make such a disclosure could arise when an agent contacts a third party believed to have information pertinent to a tax investigation and the information is not otherwise reasonably available.
   (2) Investigative disclosure, IRC §6103(k)(6), permits the disclosure of return information in the investigation process but does not authorize the disclosure of returns themselves. They may be disclosed during the investigation process only to the taxpayer and his or her return preparer.
   (3) Official matters should not be discussed in public or within the hearing of the public. Further, when a discussion of findings, theories, and plans relating to an investigation is necessary in order to achieve a better understanding of the investigation, the discussion should be limited to the IRS personnel directly concerned. This does not preclude discussions among special agents concerning investigative techniques, sources of information, etc.
   (4) The following subsections will provide an overview of the investigative situations that involve investigative disclosure.
END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works