# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

Ward Dean, M.D.

      Plaintiff,

United States of America and
Internal Revenue Service, et al.,

      Defendants.

_____/

Case No: 3:03cv65/LAC/MCR

**PLAINTIFF'S AMENDED
MEMORANDUM IN
OPPOSITION TO THE GOVERN-
MENTS MOTION FOR SUMMARY
JUDGMENT**

## BACKGROUND

This is an action for unlawful disclosure of return information. The Plaintiff has at all times challenged the procedural correctness of the actions of Special Agent Tanya Burgess, up to, and including whether she is authorized to take the actions she did in making the disclosures to the individuals referred to by the government as witnesses and even to the Grand Jury itself.

There are a myriad of significant issues of material fact to be tried. These issues would have been significantly narrowed by the production of the requested discovery. In fact, full compliance with discovery would have enabled Plaintiff to prevail in his own Motion for Summary Judgment. However, the lack of compliance with discovery does not force the Court to the opposite finding for the Defendants.

U.S. DISTRICT CT.
NORTHERN DIST. FLA.

2003 NOV 18  AM 9: 13



FILED

1

## SUMMARY JUDGMENT

The purpose of a motion for summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986). A dispute over an issue of material fact is genuine if the evidence would permit a reasonable jury to return a verdict for the party against whom summary judgment is sought. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). In order to avoid a motion for summary judgment a nonmoving party has the burden of producing evidence that shows there exists a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). While this evidence need not be in a form that would be admissible at trial, Celotex, 106 S. Ct. at 2553, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

## ISSUES OF MATERIAL FACT THAT REMAIN IN DISPUTE FOR TRIAL

1. Is Agent Burgess a lawfully appointed agent?

2. Does Agent Burgess have an oath of office on file as required by 5 USC 3331?

3. Is Agent Burgess' oath of office on file and in custody as required by 5 USC 2906?

4. What is Agent Burgess' job description?

5. Is Agent Burgess actually authorized to proceed as she has in investigating the Plaintiff?

6. Did the Plaintiff file a tax return for tax year 2000, contrary to the government's contention?

7. Is Agent Burgess, in fact, authorized to issue a Summons in a Subtitle A criminal investigation?

8. Was the referral to the Grand Jury procedurally correct in accordance with the law, the IRM, and Title 6 of the *U.S. Attorney's Manual*? If not, the Grand Jurors are also the recipients of unlawfully disclosed return information (in all likelihood, much more so than the witnesses interviewed.)

9. Was it necessary to disclose the return information to the witnesses?

10. Had the witnesses displayed any reluctance to answer questions, or provide documents, prior to Agent Burgess' disclosure of the return information, an issue the government has yet to address. (See Affidavit of James V. Kelly, Exhibit 2).

11. Was the disclosure to the witnesses that the Plaintiff was under "criminal investigation" <u>necessary</u> to obtain the desired information/documents?

12. Did the *IRS Disclosure Litigation Reference Book* Rev. 4-2000, Section I.C.4 proscribe the use of the words "criminal investigation division" in the ancillary heading (return address), text, or signature block of circular letters, and should that not be interpreted to mean other disclosure-sensitive correspondences as well?

13. Does a general guideline for agents in the *Internal revenue Manual* outweigh specific recommendations and proscriptions issued in the *IRS Disclosure Litigation Reference Book*, a manual specifically provided to guide agents when undertaking disclosure- sensitive inquiries?

14. Did Agent Burgess make a good faith reliance with regard to her disclosures in light of the training she received on disclosure?

## <u>AGENT BURGESS LACKED THE REQUISITE AUTHORITY TO PROCEED IN AN INVESTIGATION UNDER CHAPTER 75 OF TITLE 26</u>

The authority of a Special Agent to enforce chapter 75 of the Internal Revenue Code in reference to the federal income tax begins with 26 C.F.R. §1.274-5T(k)(6)(ii), a tax regulation which provides as follows:

3

> "(ii) Law enforcement officer. The term law
> enforcement officer means an individual who
> is employed on a full-time basis by a
> governmental unit that is responsible for the
> prevention or investigation of crime
> involving injury to persons or property
> (including apprehension or detention of
> persons for such crimes), who is authorized
> by law to carry firearms, execute search
> warrants, and to make arrests (other than
> merely a citizen's arrest), and who regularly
> carries firearms (except when it is not
> possible to do so because of the requirements
> of undercover work). The term law enforcement
> officer may include an arson investigator if
> the investigator otherwise meets the
> requirements of this paragraph (k)(6)(ii),
> but does **not** include ***Internal Revenue Service
> special agents***."[1] [Emphasis added].

See attached Ex. 1 at p. 1.

Statutes, regulations and delegation determine the authority of government agents. Determining the authority of federal agents is accomplished through the aid of 5 U.S.C. §552. This law requires federal agencies such as the IRS to publish certain items in the Federal Register:

> "(1) Each agency shall separately state and
> currently publish in the Federal Register
> for the guidance of the public -
> "(A) . . . .
> "(B) statements of the general course and
>     method by which its functions are
>     channeled and determined, including the
>     nature and requirements of all formal
>     and informal procedures available . . .
>     ."

---

[1] This "temporary" regulation was first proposed 16 years ago. See, T.D. 8061, 1985-2 C.B. 93, 108.

The phrase, "statements of the general course and method by which its functions are channeled and determined," refers to delegation orders. If these orders should have some affect upon the American public, they are required to be published in the Federal Register. See, *Pinkus v. Reilly*, 157 F.Supp. 548 (D.N.J. 1957); included with the attached Ex. 1 at pp. 16-20.

Delegation orders are required to be published because citizens are charged with knowledge of the authority of federal agents, but are unable to acquire actual knowledge of these orders if they are not published.

Both the U.S. Treasury and the IRS recognize that these types of items must be published in the Federal Register; see 31 C.F.R. §1.3(a), and 26 C.F.R. §601.702(a). In fact, it is acknowledged that anything concerning or affecting the American public must be published in the Federal Register. In 1953, Revenue Ruling 2 (1953-1 C.B. 484) was issued and it required all divisions or units of the Bureau of Internal Revenue (now IRS) to publish in the Federal Register any item of concern to the public. This was more clearly expressed in Rev. Proc. 55-1 (1955-2 C.B. 897) as follows:

> "It shall be the policy to publish for public information all statements of practice and procedure issued primarily for internal use, and, hence, appearing in internal management documents, which affect rights or duties of taxpayers or other members of the public under the Internal Revenue Code and related statutes."

That which is stated above currently manifests itself within 26 C.F.R. §601.601(d)(2)(b), which reads as follows:

> "A 'Revenue Procedure' is a statement of procedure that affects the rights or duties of taxpayers or other members of the public under the Code and related statutes or information that, although not necessarily

affecting the rights and duties of the
public, should be a matter of public
knowledge."

As some federal criminal laws, like 26 U.S.C. §7212, make it penal for
anyone to interfere with or impede the due administration of the tax laws,
knowledge of the authority of federal agents is critically important so that
individuals may know what is the authority of government agents and
employees and thus avoid impeding them. Therefore, delegation orders directly
affect the American public, and consequently they must be published in the
Federal Register.

Older Treasury Department delegation orders (hereinafter "TDOs")
issued before and during the time of the 1939 Internal Revenue Code provide
excellent examples of how authority from the President and Secretary of the
Treasury has been delegated. Executive Order 6166, dated June 10, 1933, stated:

> "All functions now exercised by the Bureau of
> Prohibition of the Department of Justice with
> respect to the granting of permits under the
> national prohibition laws are transferred to
> the Division of Internal Revenue in the
> Treasury Department.
>
> "The Bureaus of Internal Revenue and of
> Industrial Alcohol of the Treasury Department
> are consolidated in a Division of Internal
> Revenue, at the head of which shall be a
> Commissioner of Internal Revenue."

Executive Order No.6639, dated March 10, 1934, provided as follows:

> "1. (a) The Bureau of Industrial Alcohol and the
> Office of Commissioner of Industrial Alcohol are
> abolished, and the authority, rights, privileges,
> powers and duties conferred and imposed by law
> upon the Commissioner of Industrial Alcohol are
> transferred to and shall be held, exercised, and

6

> "performed by the Commissioner of Internal Revenue and his assistants, agents, and inspectors, under the direction of the Secretary of the Treasury."

And TDO No.143, dated December 6, 1951, delegated the following authority:

> "By virtue of the authority vested in me as Secretary of the Treasury by Reorganization Plan No. 26 of 1950, there are hereby transferred to the Commissioner of Internal Revenue the functions and duties now performed by collectors of Internal Revenue in connection with tobacco and other taxes imposed under Chapter 15 of the Internal Revenue Code.
>
> "The functions and duties herein transferred to the Commissioner of Internal Revenue may, at his discretion, be delegated to subordinates in the Bureau of Internal Revenue service [sic] in such manner as the Commissioner shall from time to time direct."

Further, it is clear that each delegation order must be examined to determine the authority transferred therein.

In 1949, Congress enacted a law authorizing the President to reorganize the executive departments; see 63 Stat. 203, chap. 226, codified at 5 U.S.C. §901, et seq. Pursuant to this authority, the President promulgated Reorganization Plan No. 26 of 1950 (64 Stat. 1280, 15 Fed. Reg. 4935), which restructured the entire Treasury Department in the following manner:

> "[T]here are hereby transferred to the Secretary of the Treasury all functions of all other officers of the Department of the Treasury and all functions of all agencies and employees of such Department."

This Plan appears in Ex. 1 at pp. 21-22. By this reorganization plan, all statutory and delegated authority of anyone in the Treasury Department was immediately divested and placed into the hands of the Secretary. Thereafter, Reorganization Plan No.1 of 1952 (66 Stat. 823, 17 Fed. Reg. 2243) reorganized the Bureau of Internal Revenue. But because all authority was vested in the hands of the Secretary of the Treasury by Plan No. 26, it became essential that the Secretary delegate his authority to others. Based upon the above reorganization plans, on March 15, 1952, the Secretary issued TDO No. 150 which established a series for later orders, all of which dealt with and concerned the administration of the internal revenue laws.[2]

There are examples which may be provided of orders and directives which delegate authority to engage in criminal investigations. For instance, TDO No. 221 dated June 6, 1972 created the Bureau of Alcohol, Tobacco and Firearms (see 37 Fed. Reg. 116696, 1972-1 C.B. 777. A copy of this order appears in Ex. 1 at pp. 32-33). This order delegated criminal enforcement powers to the BATF. Also, Treasury Directives 15-12 and 15-29 delegated to both the BATF and the Customs Service authority to investigate violations of 18 U.S.C. §§ 1956 and 1957. On the same date as these previous two orders, Treasury Directive 15-42 authorized the Commissioner of Internal Revenue to perform investigations of money laundering activities. These orders were published at 60 Fed. Reg. 48198, et seq., and copies of those appear in Ex. 1 at pp. 42- 45. It is important to note that those orders and directives are specific and clearly state in detail the authority that is conveyed.

---

[2] In the past, the Commissioner of Internal Revenue was delegated specific statutory authority by means of various tax acts. For example, in the first act which created the office of the Commissioner, 12 Stat. 432, the Commissioner was charged with general superintendence of the internal revenue laws; see also act of Dec. 24, 1872, 17 Stat. 401, and §321 of the 1873 Revised Statutes. Section 3901 of the 1939 Internal Revenue Code continued this authority. However, with adoption of the 1954 Internal Revenue Code, §7802 made the Commissioner's duties dependent upon delegations from the Treasury Secretary: "The Commissioner of Internal Revenue shall have such duties and powers as may be prescribed by the Secretary." Copies of these statutes are attached in the Ex. 1 at pp. 23-31. Thus today, even the authority of the Commissioner is dependent upon delegations from the Secretary.

To exhaustively prove the absence of any published delegation order issued by the Secretary of the Treasury allowing IRS special agents to engage in an investigation regarding alleged violations of chapter 75 of the Internal Revenue Code, Plaintiff proffers the following documents: First, there is the attached list of all TDOs in the "150 series" which have been published in the Federal Register since Reorganization Plan No.26 of 1950 (Ex. 1 at pp. 51-58), and thereafter you will find copies of every published TDO in this series (Ex. 1 at pp. 59-195).

There is no delegation order issued by the Secretary of the Treasury to *anyone* which allows that delegate to administer and enforce chapter 75 of the Internal Revenue Code in reference to the federal income tax found in subtitle A of the Code.

The lack of delegated authority to conduct criminal investigations and enforce chapter 75 might, at first glance, appear to emanate from 26 U.S.C. §7608. However, review of section §7608 negates this assumption. This section currently has three subsections, and the first two are the most important. Subsection (a) simply authorizes those criminal investigators "whom the Secretary charges" to investigate crimes regarding the taxes imposed in subtitle E of the Code (which are only the alcohol, tobacco and firearms taxes). You might suggest that it is subsection (b) which possibly provides the authority to investigate a chapter 75 income tax crime. However, review of the authority delegated under this statute demonstrates that no authority has been granted for special agents to conduct such investigations.

The original §7608 as it appeared in the Internal Revenue Code enacted in August, 1954, was nothing more than a cross reference section. In 1958, an act entitled the "Excise Tax Technical Changes Act of 1958," P.L. 85-859, 72 Stat. 1275, at 1279, amended §7608 by inserting therein the following:

```
"Sec.7608. AUTHORITY OF INTERNAL REVENUE
ENFORCEMENT OFFICERS.
```

"Any investigator, agent, or other internal
revenue officer by whatever term designated,
**whom the Secretary or his delegate charges
with the duty of enforcing any of the
criminal, seizure, or forfeiture provisions
of subtitle E or of any other law of the
United States pertaining to the commodities
subject to tax under such subtitle for the
enforcement of which the Secretary or his
delegate is responsible,** [Emphasis added]
may:

"(1) carry firearms;

"(2) execute and serve search warrants and
arrest warrants, and serve subpoenas and
summonses issued under authority of the
United States;

"(3) in respect to the performance of such
duty, make arrests without warrant for
any offense against the United States
committed in his presence, or for any
felony cognizable under the laws of the
United States if he has reasonable
grounds to believe that the person to be
arrested has committed, or is
committing, such felony; and

"(4) in respect to the performance of such
duty, make seizures of property subject
to forfeiture to the United States."

It was not until 1962 that subsection (b) of this section was added via P.L.
87-863, 76 Stat. 1141, at 1143, which read as follows:

"(b) Enforcement of Laws Relating to Internal
Revenue Other Than Subtitle E.-
"(1) Any criminal investigator of the
Intelligence Division or of the
Internal Security Division of the
Internal Revenue Service **whom the
Secretary or his delegate charges with**

> **the duty of enforcing any of the criminal provisions of the internal revenue laws or any other criminal provisions of law relating to internal revenue for the enforcement of which the Secretary or his delegate is responsible** is, in the performance of his duties, authorized to perform the functions described in paragraph (2) [Emphasis added].
>
> "(2) The functions authorized under this subsection to be performed by an officer referred to in paragraph (1) are -
>
> "(A) to execute and serve search warrants and arrest warrants, and serve subpoenas and summonses issued under authority of the United States;
>
> "(B) to make arrests without warrant for any offense against the United States relating I to the internal revenue laws committed in his presence, or for any felony cognizable under such laws if he has reasonable grounds to believe that the person to be arrested has committed or is committing any such felony; and
>
> "(C) to make seizures of property subject to forfeiture under the internal revenue laws."

The structure of §7608 has remained basically the same since 1962, although Subsection (c) was added via the "National Narcotics Leadership Act of 1988," P.L. 100-690, 102 Stat. 4181, at 4504.

For a period of time, regulations implementing §7608 did exist. On October 21, 1959, Treasury Decision 6421 (24 Fed. Reg. 8644, 1959-2 C.B. 433, at 440) was promulgated, thus creating 26 C.F.R. §301.7608-1, which read as follows:

"301.7608-1 AUTHORITY OF INTERNAL REVENUE
ENFORCEMENT OFFICERS.--Any investigator,
agent, or other internal revenue officer by
whatever term designated, whom the
Commissioner, Assistant Commissioner
(Operations), Director, Alcohol and Tobacco
Tax Division, regional commissioner, or
assistant regional commissioner (alcohol and
tobacco tax) charges with the duty of
enforcing any of the criminal, seizure, or
forfeiture provisions of subtitle E or of
any other law of the United States
pertaining to the commodities subject to tax
under such subtitle for the enforcement of
which such officers are responsible, may
perform the functions provided in section
7608."

When subsection 7608(b) was added in 1962, no regulation was ever promulgated to implement its provisions. The only regulation ever to have been issued under §7608, which is the one cited above, was finally repealed via Treasury Decision 7297 (38 Fed. Reg. 34803, 1974-1 C.B. 364) approved on December 13, 1973, shortly after the Bureau of Alcohol, Tobacco and Firearms was established. Since 1973, there have been no published regulations which implement §7608(b), and in Merten's Law of Federal Income Taxation, §3.79, it is indicated that the absence of regulations means that the section is not intended to be implemented. The authorities cited for this proposition being *United States v. Farrar*, 281 U.S. 624, 50 S.Ct. 425 (1930) and *Mintz v. Baldwin*, 289 U.S. 346, 53 S.Ct. 611 (1933).

A plain reading of §7608 reveals that the section itself conveys authority to nobody other than the Secretary; the Secretary, in turn, must delegate authority to agents, which requires the issuance of delegation orders. Via the repealed regulation §301.7608-1, it is obvious that some type of authority had been conveyed to the Commissioner, but here even he had to issue delegation orders to subordinate agents. Thus, to follow the flow of authority under §7608, it is

essential to consult both TDOs and Commissioner's Delegation Orders ("CDOs").

Based upon the above assumption, the process of determining what authority has been delegated via §7608(b) to criminal investigators thus requires examination of all published CDOs issued by the Commissioner. Attached hereto is a list enumerating every published CDO from 1954 to the present (see Ex. 1 at pp. 196-219). By review of these various CDOs, it is possible to trace the authority which is the subject of §7608.

The only possible CDOs which could delegate §7608 authority are numbered 31, 33 and 34. On April 30, 1956, CDO No. 31 was issued delegating to the Assistant Commissioner and the Director of the Alcohol and Tobacco Tax Division the authority to administer and enforce chapters 51, 52 and 53 of the Code (the "ATF" chapters), in addition to a few other functions. A few months later, CDOs No: 33 and 34 were issued and these orders also related to alcohol and tobacco taxes. Once these units of the IRS had been delegated these enforcement responsibilities, Congress thereafter in 1958 created §7608, and the regulation at §301.7608-1 was promulgated in 1959. Below is a list containing the cites where these and subsequent revisions of these orders were published (these CDOs are likewise attached hereto in Ex. 1 at pp. 220- 228):

```
CDO No. 31:
    (a) Original, 21 Fed. Reg. 3083, 1956-1 C.B. 1015.
    (b) Rev. 1,34 Fed. Reg. 87, 1969-1 C.B. 379.
    (c) Rev. 2,35 Fed. Reg. 16808,1970-2 C.B. 487.
    (d) Rev. 3,36 Fed. Reg. 18678, 1971-2 C.B. 524.
    (e) Rev. 4,36 Fed. Reg. 22607,1971-2 C.B. 525.

CDO No. 33:
    (a) Original, 21 Fed. Reg. 4415, 1956-2 C.B. 1375.

CDO No. 34:
    (a) Original, 21 Fed. Reg. 5851, 1956-2 C.B. 1375.
    (b) Revoked, 38 Fed. Reg. 33407,1973-2 C.B. 462.
```

As may be seen from these orders, they allowed for the seizure and forfeiture of property as well as the enforcement of the criminal laws. Logically, it is these orders which permitted the promulgation of the repealed regulation, §301.7608-1.

The ATF Division of the IRS was the unit that was responsible for the administration and enforcement of the laws that were the subject of CDOs No. 31, 33 and 34. This ended with the creation of the Bureau of Alcohol, Tobacco and Firearms ("BATF") via TDO No. 221 on June 6, 1972 (see Ex. 1 at pp. 32-33). Among other administration and enforcement functions transferred to BATF via this order were the following:

> "(a) Chapters 51, 52 and 53 of the Internal Revenue Code of 1954 and sections 7652 and 7653 of such Code insofar as they relate to the commodities subject to tax under such chapters;
>
> "(b) Chapters 61 to 80, inclusive, of the Internal Revenue Code of 1954, insofar as they relate to the activities administered and enforced with respect to chapters 51, 52, and 53."

About two and a half years later, the Secretary issued TDO No.221-3 (40 Fed. Reg. 1084, 1975-1 C.B. 758) which delegated to the BATF the authority to administer and enforce "chapter 35 and chapter 40 and 61 through 80, inclusive, of the Internal Revenue Code of 1954 insofar as they relate to activities administered and enforced with respect to chapter 35." Chapter 35 deals with wagering taxes and chapter 40 concerns occupational taxes related to wagering. About a year and a half later, TDO No. 221-3 (Rev. 1) (41 Fed. Reg. 10079, 1976-1 C.B. 584; Ex. 1 at p. 37) was issued. The only real, detectable distinction between the former and latter orders was the inclusion of the following phrase in the latter:

14

> "The Commissioner may call upon the Director
> for assistance when it is necessary to
> exercise any of the enforcement authority
> described in section 7608 of the Internal
> Revenue Code."

But, on January 14, 1977, the Secretary transferred back to the IRS the enforcement duties relating to wagering via TDO No. 221-3 (Rev. 2) (42 Fed. Reg. 3725,1977-1 C.B. 591; Ex. 1 at p. 38). Thereafter, the authority of BATF encompassed chapters 40, 51, 52 and 53 of the 1954 Code in addition to the authority to enforce other non-Code laws. It is of great significance that the repeal of regulation §301.7608-1 occurred shortly after the creation of the BATF. The authority of BATF agents to exercise the functions under §7608 is today found in 27 C.F.R. §70.33.[3]

In summary, §7608 requires delegations from the Secretary to enforcement agents such as special agents. In reference to §7608(a), it has been shown above that this "ATF" authority has flowed through the ATF unit within the IRS, ultimately to be passed on to the BATF. But, in the search for other authority under §7608(b), a review of all published TDOs and CDOs reveals that there has been no published delegation of investigative authority to enforce chapter 75 for income tax crimes.

On June 20, 1980, during hearings before the Subcommittee on Oversight of the Internal Revenue Service, Senate Finance Committee,[4] Senator Lowell Weiker stated: "I want to make the statement here, just so that we all

---

[3] Special agents for the State Department may "obtain and execute search and arrest warrants." See, 22 U.S.C. §2709. Customs agents have similar authority via 19 U.S.C. §1595. BATF agents have such authority via 26 U.S.C. §5557. Searches without authority have serious consequences. See, *Ross v. Meese*, 818 F .2d 1132 (4th Cir. 1987); *Conner v. City of Santa Ana*, 897, F.2d 1487 (9th Cir. 1990); and *Rutherford v. United States*, 702 F.2d 580 (5th Cir. 1983).

[4] Hearings on "IRS and Nontax Related Criminal Enforcement Investigation," 96th Cong., 2nd Sess. This Government Document's Call No. is Y4.F49 In8-16.

understand the ground on which we stand, the IRS is not–underline 'not'–a law enforcement agency."

At this point the Court should take note of Agent Burgess' Declarations:

1. I am employed as a Special Agent with the Internal Revenue Service ("IRS" or "Service"), Criminal Investigation. I have been employed with IRS Criminal Investigation since 1980 and am currently assigned to the Pensacola, Florida office.

2. As a special agent, I am authorized to investigate possible criminal violations of the Internal Revenue Code and related offenses. (Int. Rev. Man. §9.1.2.2(6)) I am also authorized under Title 26, United States Code, Sections 7602, 7609(f), (g) and (i)(2), and Delegation Order #4 to issue, serve and enforce summonses, to take testimony and to receive and examine records.

The Court will note that Special Agent Burgess does *not* state that she is authorized to investigate offenses under Chapter 75 (Income Tax) of the Internal Revenue Code. To do so would constitute perjury. Special Agent Burgess' affidavit is no less than misdirection of the Court through omission.

Agent Burgess states her authority to proceed in this investigation stems directly from Delegation Order #4. Delegation Order #4 was issued under TDO No. 150-10. However TDO No. 150-10 was NEVER published in the Federal Register, and is thus without force and effect of law with regard to any obligation to the general public. Failure to publish TDO 150-10 left it bereft of the authority from which to grant investigative powers to Special Agents, or anyone else for that matter.

This amounts to a typical case of having to prove a negative. As the Court is aware, proving the negative is next to impossible. However, Plaintiff has made his case for the negative. The burden is now upon the government to affirmatively prove that Special Agent Burgess *does* have duly delegated authority. On this point the Supreme Court in the case of *United States v.*

*Denver and Rio Grande Railroad Co.* 191 U.S. 84, 48 L. Ed. 106, 24 S. Ct. 33 (1903) stated:

> It is a general rule of evidence, noticed by the elementary writers upon that subject, 1 Greenl. Ev. sec. 79, "that where the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party." When a negative is averred in pleading, or plaintiff's case depends upon the establishment of a negative, and the means of proving the fact are equally within the control of each party, then the burden of proof is upon the party averring the negative; but when the opposite party must, from the nature of the case, himself be in possession of full and plenary proof to disprove the negative averment, and the other party is not in possession of such proof, then it is manifestly just and reasonable that the party which is in possession of the proof should be required to adduce it; or, upon his failure to do so, we must presume it does not exist, which of itself establishes a negative. Great Western R. R. Co. v. Bacon, 30 Illinois, 347; King v. Turner, 5 M. &. S. 206.

Again in 1957 the court restated the rule in *United States v. New York, New Haven & Hartford Railroad Co.* 355 U.S. 253, 78 S. Ct. 212, 2 L. Ed. 2d 247 (1957):

> " The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary. Cf. Selma, R. & D. R. Co. v. United States, 139 U.S. 560, 566; United States v. Denver & R. G. R. Co., 191 U.S. 84, 91-92.

While this is an issue of law, as opposed to facts such as the size or number of railway cars, the general rule of law is applicable. After diligent search, no authority for Special Agent Burgess' activities is to be found. Special Agent Burgess' position is one of delegated authority *only*. Authority to act may not be presumed. Authority for her to act is not available to the general public in *any* form of law. Therefore it is incumbent upon the government to prove the authority for Agent Burgess' actions.

As a matter of law, for whatever reason, the government failed to follow the requirements of law. Agent Burgess lacks the requisite authority to perform

this investigation. Subsequently, *any* disclosures of Plaintiff's return information were unauthorized--for any purpose.

Therefore, Defendants' Motion for Summary Judgment should be Denied on this basis alone.

## UNNECESSARY DISCLOSURES

Attached as Exhibit 2 is the affidavit of James V. Kelly, wherein he states that it was unnecessary for Agent Burgess to disclose that she was from the Criminal Investigation Division, or that the Plaintiff was under criminal investigation, in order to elicit the information from him. The Affiant would have been forthcoming with the requested information without this disclosure.

Furthermore, Defendants' attempt to justify Agent Burgess' actions and to redefine the word "necessary" by citing a "new, temporary regulation (Treas. Reg. §301.6103(k)(6)-1T)" that was issued on July 10, 2003. **This new regulation was issued nearly five months after the instant complaint was filed!** Consideration of this regulation by the Court would, in effect, constitute an *ex post facto* application of those regulations, where no retroactive effect should be given them.

## No Good Faith

The issue before the Court is one of relative simplicity: Were the disclosures necessary in each individual case? The necessity of the disclosures is not to be based upon whether the subject of the investigation (Plaintiff) will, or will not, provide the desired information. The determination of necessity hinges upon whether the third party individuals from whom information is sought regarding the Plaintiff would provide the required information without those disclosures. The following cases from the *IRS Disclosure Litigation Reference Book* Rev. 4-2000, Section I.A.2. (a) (Investigative Disclosures for Tax Administration Purposes) provide guidance:

*IRS Disclosure Litigation Reference Book* Rev. 4-2000, Section I.A.2. (a) (Investigative Disclosures for Tax Administration Purposes) authorizes the disclosure of the "nature of the official duties (collection inquiry, tax audit, criminal investigation) to obtain necessary information. However, Section I.A. 2(c) cautions agents to do so **"only if such return information cannot otherwise reasonably be obtained in accurate and sufficiently probative form, or in a timely manner, without impairing the proper performance of official duties without making the disclosure."** [Emphasis added].

Section I.A.4. instructs that *Barrett v. United States*, 795 F2d 446 (5th Cir., 1986) found that "the relevant inquiry is NOT whether the information sought is necessary for the investigation or examination [Emphasis in original]; the inquiry is whether the disclosure of each element of return information is <u>necessary to obtain the particular information sought</u>." [Emphasis added].

Section I.A.7(c) warns to "Disclose only the return information that is necessary to obtain the information sought." In Section I. D. 2., In-Person Investigative Disclosures, agents were advised that in *Gandy v. United States*, 1999 U.S. District Lexis 1029 (E.D. Tex. 1999) the court found that "the disclosure that the plaintiff was under criminal investigation was <u>not necessary</u> to secure the desired information." [Emphasis added].

Section I.C.4. states that: "The current guidance proscribes the use of the words "criminal investigation division" in the ancillary heading (return address), text, or signature block of circular letters. Although the text does not explicitly say so, by extension, the words should not be used on the return address of the envelope in which the letter is sent.

Section I.C.6.(a) cites *Barrett v. Unites States*, 51 F.3d 475 (5th Cir., 1995), finding that "it was <u>not necessary</u> [Emphasis added] to reveal the fact of criminal investigation in letters sent to patients of a surgeon to determine the amount of money paid to the surgeon (and that the agent did not act in good faith in sending the letters, where the letters disclosed that the plaintiff was under criminal

investigation, contrary to then-existing IRM)." Furthermore, Section I.C.6.(b) cites *Diamond v. United States*, 944 F.2d 41 (8th Cir. 1991), rehearing denied, 1991, U.S. App.Lexis 25773 (8th Cir. Oct. 30, 1991), in which the court found that it "was <u>not necessary</u> [Emphasis added] to disclose the fact of criminal investigation" with a signature block that read, "Special Agent, Criminal Investigation Division." Although the court affirmed the district court's grant of the government's motion for summary judgment based on a "<u>good faith but erroneous</u> [Emphasis added] interpretation of IRC Section 6103 by the Service," since the IRM at the time advised including the title, "Special Agent, Criminal Investigation Division " in the signature block of "circular letters."

Section I.C.6.(e) cites *May v. United States*, 141 F.3d (table cite), 81 AFTR 2d (RIA) 98-853, 98-1 U.S. Tax Case (CCH 50, 220 (8th Cir. 1998) in which the court found that "*since the Eighth Circuit decision in Diamond had not been published at the time that letters were sent, which included Criminal Investigation Division in the signature block*, therefore the government did so in 'good faith.'"

Section I.D.2. In-Person Investigative Disclosures, cited further findings from the Gandy case (supra). "The court found the agents disclosed that the IRS was conducting a criminal investigation of the plaintiff, and that the disclosure that the plaintiff was under criminal investigation was not necessary to secure the desired information." The court also found that "for a special agent to identify himself to a third party witness by displaying his credentials, and by asking for information pertaining to the identified taxpayer under investigation—whether or not the special agent mentions that the investigation is a criminal investigation—is a disclosure that the taxpayer is under criminal investigation." The manual went on to state (Section I.D.3.) that "Gandy is the first court to hold that the disclosure of the fact of criminal investigation in the context of in-person interviews through oral statements and/or display of special agent enforcement badges or pocket commissions is not authorized pursuant to section 6103(k)(6). Section I.D.3. stated that "the disclosure of the fact of criminal investigation in the context of in-person

interviews through oral statements and/or the display of special agent enforcement badges or pocket commissions is not authorized (emphasis added) pursuant to section 610(k)(6)."

Section I. D.4.(b) advised that *Heller v. Plave*, 657 F. Supp. 95 (S.D. Fla 1987) held that "the disclosures were unnecessary and violated section 6103(k)(6)." [Emphasis added]. Section I.D.4.(f), cites *Payne v. United States*, No. H-93-1738 (S.D. Tex. Final Order entered 12/13/99), in which the court determined that "the United States was liable because the special agent had introduced himself as a special agent of the Criminal Investigation division conducting a criminal investigation and had issued summonses to the plaintiff's clients despite the plaintiff's assurances that he would supply the information." (It should be noted that Plaintiff in the instant case has twice requested a Criminal Investigation Conference (refused by the Ms. Burgess and AUSA Beard, respectively), and has requested three times to appear before the Grand Jury (twice refused, once not answered), at which Plaintiff stated unequivocally that he would answer "all their questions").

Section I.E. (Conclusions) reminded agents (Para 3) that, "The courts' customary inquiry is NOT whether the INFORMATION SOUGHT is necessary; the focus is on WHETHER THE DISCLOSURE IS NECESSARY to obtain the information; [Emphasis in original] and the admonition (4) "(Do not use the words 'Criminal Investigation Division' anywhere within circular letters [or, by extension, upon any envelope enclosed with or used to send circular letters].)"

In the instant case, the government cites *Comyns v. United States of America*, 287 F.3d 1034, (11 Cir. 2002). The court in *Comyns* was without the benefit of the above information as the *Comyns* cause of action originated from actions taken by agents in 1999 and the action for damages initiated in March of 2000. Thus, the *IRS Disclosure Litigation Reference Book* Rev. 4-2000 would have been unavailable for application by Plaintiff Comyns, the District Court, and subsequently the Eleventh Circuit in its deliberations.  Therefore, this Court is

reviewing with full knowledge of the training and guidelines under which agents worked during the disclosures of the case at bar.

It is important for the Court to note that Special Agent Burgess received training which would have included all of this information. If she ignored her training encompassed within this manual, then no "Good faith" exception may be made. There have been enough court rulings to indicate that what she did was, as a matter of fact and law, improper, and subject to damages under this action. Ignorance of the law, or the state of the law with regard to the rights of an individual under investigation, is no excuse. Particularly when the Service has gone so far as to produce a manual for specific guidance of agents. Therefore, Agent Burgess knew or should have known that the actions she took were prohibited and the Court cannot grant her a good faith exception.

## CONCLUSION

The issues of material fact cited above are significant, and are to be determined by the trier of fact, each determinative of a different facet of this action, with potentially wide ranging ramifications. Plaintiff avers that Special Agent Burgess lacked the requisite lawfully delegated authority to conduct her investigation. Therefore, all disclosures of return information she made were unlawful. The government will have to prove at trial that Agent Burgess in reality has the authority she has exercised to date. The disclosures made by Agent Burgess were wholly unnecessary, as evidenced by the attached affidavit, and as a matter of law were not made in "good faith." The issues of material fact in dispute are such that they cannot be termed "metaphysical doubt."

Defendants' 'Motion for Summary judgment should be Denied and this case should move forward for trial to determine damages.

Respectfully submitted,

Ward Dean, M.D. / Pro se
8799 Burning Tree Road
Pensacola, Florida 32514
Ph: (850) 484-0595

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of November, 2003, I have placed a true and exact copy of the foregoing in the U.S. Mail, first class postage, prepaid, addressed to:

Lindsey W. Cooper, Jr.
Civil Tax, Eastern Region
U.S. Department of Justice
P .0. Box 227, Ben Franklin Station
Washington, DC 20044

Ward Dean, M.D.