IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WARD DEAN, M.D.,
    Plaintiff,

vs.                                        No. 3:03cv65/MCR/MD

UNITED STATES OF AMERICA,
    Defendant.

_____

## REPORT AND RECOMMENDATION

This case is before the undersigned magistrate judge in accordance with the court's administrative order of January 27, 2004 concerning non-prisoner pro se cases. Plaintiff, Ward Dean, M.D. (Dr. Dean), filed suit against the United States of America and the Internal Revenue Service[1] (IRS) on February 20, 2003 claiming damages pursuant to 28 U.S.C. § 7431. That statute allows an individual to seek damages against the government for disclosure of confidential information relating to his tax return. He alleges that on October 3, 2002 IRS Special Agent Tonya Burgess and IRS revenue agent Wayne Jackson arrived at his residence and informed him that he was under criminal investigation. Thereafter Burgess allegedly contacted a number of Dr. Dean's patients and associates and informed them of the investigation. The contacts were made by telephone and by serving one or more summonses. By these and other actions Burgess and the IRS disclosed to third

---

[1] Dr. Dean has named the United States of America and the Internal Revenue Service as parties defendant. However, there is no statutory authority for suing the IRS as an agency. The only proper defendant in this case is the United States.

parties information concerning plaintiff's tax returns in violation of 26 U.S.C. § 6103, which provides generally that tax returns are confidential and may not be disclosed. The United States does not dispute that by issuing summonses and interviewing third party witnesses, Special Agent Burgess disclosed that Dr. Dean was under investigation by the Criminal Investigation Division (CID) of the IRS (doc. 44, p. 5). The United States also concedes that informing someone that a taxpayer is being investigated by CID constitutes disclosure of return information within the meaning of 26 U.S.C. § 6103. By way of affirmative defense the United States alleges that such return information concerning Dr. Dean was appropriately disclosed as authorized by 26 U.S.C. § 6103(k), and that to the extent any information was not appropriately disclosed, it was disclosed as a result of a good faith interpretation of 26 U.S.C. § 6013 by the IRS.

Now before the court is a motion for summary judgment filed by the United States (doc. 43), the United States' memorandum in support (doc. 44), and the United States' statement of material facts to which no genuine issue is to be tried (doc. 45). Attached to the statement of facts is a sworn declaration of Special Agent Burgess along with copies of various internal memoranda and IRS rules concerning investigations by special agents. Dr. Dean has filed a memorandum in opposition with attached exhibits and an affidavit (doc. 52).

**SUMMARY JUDGMENT STANDARD**

In order to prevail on its motion for summary judgment, the United States must show that plaintiff has no evidence to support his case, or must present affirmative evidence that plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If the United States successfully negates an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating

a genuine issue of fact for trial. *Id.*

In order for plaintiff to meet his burden, he may not rest upon the mere allegations or denials of his pleading; rather, he must produce affidavits or other summary judgment materials which "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis added).[2] Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Celotex Corp., supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997)("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"), *cert. denied,* 522 U.S. 1126 (1998) (quoting *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c), (e))); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994). When faced with a motion for summary judgment, while a court must view the evidence in the light most favorable to the non-moving party, the non-moving party still bears the burden of coming forward with sufficient evidence supporting every element that he must prove. *Celotex Corp.*, 477 U.S. 317 (1986).

This court's local rules require that a party opposing a motion for summary judgment file and serve a statement of the material facts which he contends there

---

[2] A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id.* Accord *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). Further, plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. *Celotex Corp.*, 477 U. S. at 324 (quoting FED.R.CIV.P. 56(e)).

exists a genuine issue to be tried. N.D. FLA. LOC. R. 56.1(A). Unless the material facts set forth in the moving party's statement are controverted by a statement filed by the opposing party, such facts will be deemed admitted.

In its statement of undisputed facts, which is supported by an attached sworn declaration by Special Agent Burgess (doc. 45), the United States presents the following general narrative: In February 2002, after the IRS had sent a bank (and other institutions or persons) a civil summons seeking documents concerning Dr. Dean, he wrote to at least one bank ordering it not to respond, claiming that the summons was fraudulent and phony, and threatening to sue the bank if it responded to the summons. In October 2002 Special Agent Burgess of the IRS CID initiated a criminal investigation of Dr. Dean concerning tax years 1997, 1998, 1999, and 2001, in which Dr. Dean claimed to have earned no income, and tax year 2000, when Dr. Dean failed to file a tax return. Also in October 2002 Special Agent Burgess, accompanied by Revenue Agent Jackson, went to Dr. Dean's residence, informed him of who she was, and attempted to ask him questions. He refused to answer, and ordered the two agents off his property. Dr. Dean then wrote Special Agent Burgess asking for a conference at which he could present his documents, and Special Agent Burgess responded by telling him that he was free to provide the IRS with any information he thought would be beneficial. Dr. Dean he did not provide anything, then or later. Special Agent Burgess then issued a summons to one Dillon Vickery, which Dr. Dean attempted to quash. Dr. Dean was later summoned to appear before a grand jury for a handwriting exemplar, and he refused to provide it until ordered to do so by the court.

The United States' statement of facts further shows that Special Agent Burgess conducted her investigation by contacting third party witnesses and by issuing third party summonses as provided by then applicable IRS regulations and guidelines, and any disclosures of return information made during the investigation

were necessary to the investigation in light of Dr. Dean's lack of cooperation and his open attempts to impede it, and all such disclosures were made in accordance with IRS procedures.

      Dr. Dean's response to the motion for summary judgment and the United States' statement of undisputed facts appears at doc. 52, and consists of legal argument, an exhibit of 228 pages that traces the authority of the Secretary of the Treasury to issue summonses and conduct investigations, and a purported affidavit by Dillon Vickery, in which Mr. Vickery states that Special Agent Burgess told him she was conducting a criminal investigation of Dr. Dean. Mr. Vickery further states that Special Agent Burgess did not need to tell him of any criminal investigation, because he would have answered her questions without that information.

      Dr. Dean presents two basic grounds in opposition to the United States' motion for summary judgment. The first is a legal ground: Special Agent Burgess had no legal authority to serve summonses or otherwise make disclosures. The second is a factual ground: there are unresolved factual issues on whether the disclosures, which were undisputedly made, were necessary to the investigation.

**<u>Did Special Agent Burgess have the legal authority to issue summonses?</u>**

      As to the first issue, Dr. Dean presents the court with what he says is documented historical proof that the only person authorized by Congress to serve summonses in behalf of the Internal Revenue Service is the Secretary of the Treasury, and only the Secretary of the Treasury. His argument is correct up to a critical point. That is, he is correct in stating that Congress gave the Secretary of the Treasury the authority to issue summonses. Dr. Dean is incorrect in the rest of his argument, which he succinctly states as follows:

> **Agent Burgess states her authority to proceed in this investigation stems directly from Delegation Order #4. Delegation Order #4 was issued under T[reasury] D[epartment] O[rder] No. 150-10. However,**

> **TDO No. 150-10 was NEVER published in the Federal Register, and is thus without force and effect of law with regard to any obligation to the general public. Failure to publish TDO 150-10 left it bereft of the authority from which to grant investigative powers to Special Agents, or anyone else for that matter.**

(Doc. 52, p. 16). Treasury Department Orders (TDO) must be published in the Federal Register, he says, because they involve matters of general applicability and legal effect, citing *Pinkus v. Reilly*, 157 F. Supp. 548 (D. N.J. 1957), and if they are not published, they are without force and effect. Dr. Dean's fundamental argument, then, is that because TDO 150-10 has not been published in the Federal Register, no legal authority has ever been delegated by the Secretary of the Treasury, and no person other than the Secretary is empowered to issue summonses or investigate criminal matters in behalf of the IRS.

Dr. Dean has previously advanced this argument to this court, without success. Special Agent Burgess issued a summons addressed to one Dillon Vickery on October 16, 2002, and on October 25, 2002 Dr. Dean filed a motion in this court to quash the summons. *See* 3:03mc9/LAC. The motion came too late, and was denied as moot after the due date of the summons. Unsatisfied, Dr. Dean moved for sanctions, arguing that (1) the IRS wrongfully proceeded with Vickery's examination without waiting for the court to rule, and (2) Special Agent Burgess had no authority to issue summonses for the reasons outlined above. The court denied the motion for sanctions without comment.

In June 2003 Special Agent Burgess served a subpoena on Dr. Dean to appear before a grand jury then sitting in this court to give a handwriting exemplar. He appeared but refused to give the exemplar. He moved to stay the proceedings, and a hearing was held on July 15, 2003. Dr. Dean raised the same issue he raises here, arguing that Special Agent Burgess and the IRS had no authority to issue a subpoena. The court accepted a proffered exhibit from Dr. Dean which appears to be the same documents he now proffers to this court. The court overruled his

objections, finding that the narrow issue to be decided was whether Dr. Dean was required to comply with the subpoena.  All of Dr. Dean's objections directed to the power of the government to issue the subpoena and require him to participate in its tax investigation were overruled.

Dr. Dean's argument on the authority of IRS special agents to issue subpoenas has been heard by other courts as well, and although it is seemingly novel, it is not new.  Most recently, the Seventh Circuit, in *United States v. Crum*, 288 F.3d 332 (7th Cir. 2002) addressed an issue similar to the one raised here.  The defendants in that case challenged summonses issued by IRS revenue officers, arguing that the authority to do so was vested only in the Treasury Department, not the Department of the Treasury, which defendants argued was a separate and distinct agency.  The court found that the "semantic argument" was misplaced, and that the two names clearly applied to the same agency.  The exact issue raised here was not before the *Crum* court, but the court gave an instructive history of the delegation of authority to issue summonses:

> Federal regulations trace the delegation of summons authority.  First, the Secretary of the Treasury has delegated summons authority to the Commissioner of the IRS. 26 C.F.R. § 301.7602-1(b); 26 C.F.R. § 301.7701-9(b);  Treas. Dep't Order No. 150-10 (April. 22, 1982).  As authorized by the Secretary, the IRS Commissioner has redelegated this authority to certain IRS employees, including revenue officers such as Officer Dietrich.  26 C.F.R. § 301.7701-9(c); 26 C.F.R. § 301.7701-9(b); IRS  Delegation Order No. 4 (Rev.22) ¶¶ 7 & 8. Courts consistently have recognized that IRS officers have the delegated authority to issue administrative summonses.

288 F.3d at 334.

In *United States v. Saunders*, 951 F.2d 1065 (9th Cir. 1991) the Ninth Circuit addressed the *precise* issue raised here.  Saunders argued that the IRS had no authority to issue and seek enforcement of summonses because the order of delegation in question, TDO 150-10, the same order in contention here, had not been

published in the Federal Register as required by the Federal Register Act, 44 U.S.C. §§ 1501-1511. The court held that the Saunders' argument could not withstand a full reading of the Act, stating

> The Act requires the publication only of the following items in the Federal Register:
> (1) Presidential proclamations and Executive orders, except those not having general applicability and legal effect or effective only against Federal agencies or persons in their capacity as officers, agents, or employees thereof;
> (2) documents or classes of documents that the President may determine from time to time have general applicability and legal effect; and
> (3) documents or classes of documents that may be required so to be published by Act of Congress.
> 44 U.S.C. 1505(a).
> The TDOs are not Presidential proclamations or documents cited for publication by the President or by an Act of Congress. Nor are they orders having "general applicability and legal effect." Rather, the TDOs fall squarely within section 1505(a)'s express exception for orders "effective only against Federal agencies or persons in their capacity as officers, agents, or employees thereof." The TDOs had no legal impact on, or significance for, the general public. They simply effected a shifting of responsibilities wholly internal to the Treasury Department. Accordingly, we hold that the Federal Register Act does not mandate the publication of the TDOs and that, as a consequence, the government's failure to publish them does not affect the validity of the Secretary's delegation of authority to the Commissioner.

951 F.2d at 1067-68. Numerous other courts have agreed: *United States v. Derr*, 968 F.2d 943, 946-47 (9th Cir.1992) (rejecting argument that IRS District Examination revenue agent did not have delegated authority to issue summonses); *Lonsdale v. United States*, 919 F.2d 1440, 1446 (10th Cir. 1990) ("[W]e hold that the [Federal Register Act] did not require publication of TDO 150-37 or 150-10."); *Brewer v. United States*, 764 F. Supp. 309 (S.D.N.Y. 1991) (holding that plaintiff's argument that the IRS's failure to publish its forms such as Form 1040 violates the Federal Register Act, §§44 U.S.C. 1501 et seq. and the Administrative Procedure Act, §§ 5 U.S.C. 552

et seq., is groundless); *Neumann v. United States*, 1990 WL 209631, at *1, (W.D. Mich. 1990) ("An internal delegation of administrative authority does not adversely affect members of the public and need not be published in the Federal Register to be valid."); *United States v. McCall*, 727 F.Supp. 1252, 1254 (N.D.Ind.1990) ("It is well-settled that rules of agency organization, procedure, or practice need not be published to be effective. The court finds the delegation orders at issue here to be such rules of internal agency procedure, obviating their publication in the Federal Register."); *Hatcher v. United States*, 733 F.Supp. 218, 221 (M.D.Pa.1990) (failure to publish TDOs "does not allow an individual to ignore a summons"); *Murdock v. United States*, 90-2 U.S. Tax Cas. 50,420, at 85,324-25, 1990 WL 120664 (D.Utah 1990) (holding that the Federal Register Act and the Administrative Procedure Act did not require publication of TDO 150-10); *National Commodity*, 90-1 U.S. Tax Cas. 50,284, at 83,998; *Van Sant*, 90-1 U.S. Tax Cas. 50,179, at 83,651; *Reimer v. United States*, 90-1 U.S. Tax Cas. 50,285, at 84,000, 1990 WL 85686 (D.Hawaii), *aff'd*, 919 F.2d 145 (9th Cir.1990); *United States v. DeVaughn*, 414 F.Supp. 774, 779 (D.Md.1976) (IRS Handbook and Policy Statement need not be published in Federal Register), *aff'd*, 556 F.2d 575 (4th Cir.), *cert. denied*, 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 (1977).

Dr. Dean offers no cases directly holding otherwise,[3] nor has the undersigned found any. The case upon which he relies, *Pinkus v. Reilly*, 157 F. Supp. 548 (D. N.J. 1957), is unpersuasive. In *Pinkus* the issue was whether the Administrative Procedure Act, 5 U.S.C. § § 1002(a)(1956) (now 5 U.S.C. § 551(1)) required an administrative agency to publish its organization in addition to its procedures. The court held that because the Post Office Department had not published its delegation of final authority, it could not proceed against the defendant for violating a postal

---

[3] In his opposition brief Dr. Dean cites numerous examples of TDO's that have been published, particularly TDO 221. That order, however, was not merely a delegation of authority. It *created* the Bureau of Alcohol, Tobacco and Firearms as an agency within the Treasury Department and transferred to it all such Treasury personnel, records, duties, responsibilities and functions as would come within its purview.

regulation. That may have been good law in one district court almost 50 years ago, but *Pinkus* has never been cited approvingly or as authoritative by any other court in the United States. As held by the *Saunders* court, the Federal Register Act sets out those orders that "shall" be published in the Federal Register. Excepted are those "not having general applicability and legal effect or effective only against Federal agencies or persons in their capacity as officers, agents, or employees thereof." 44 U.S.C. § 1504(a)(1). The overwhelming weight of authority, cited above, instructs that orders like TDO 150-10 do not have general applicability and legal effect, are within the statutory exception, and need not be published. Thus, the legal basis for Dr. Dean's opposition to the United States' motion for summary judgment must fail.

### Are there genuine issues of material fact?

For his second ground opposing the government's motion for summary judgment, Dr. Dean argues that there are factual disputes that must be resolved by the trier of fact. The disputed facts to which he points can be divided into three general categories: (1) whether Special Agent Burgess was authorized to issue summonses, (2) whether internal IRS procedures and guidelines were followed in this case, and (3) whether it was necessary to make disclosures of Dr. Dean's return information.

On the first question, the court has already determined that Special Agent Burgess was *legally* authorized to issue summonses. In her fourth declaration Special Agent Burgess states under oath that is employed as a special agent of tie IRS and as such is authorized to investigate possible criminal violations of the Internal Revenue Code pursuant to Delegation Order #4. The government has therefore proved that Special Agent Burgess was *factually* authorized to issue summonses. Dr. Dean has not challenged this statement of fact except by saying it has not been proven, but given Special Agent Burgess' sworn declaration, it

became incumbent on Dr. Dean to advance some evidence refuting it. This he has entirely failed to do. Dr. Dean's legal argument is without merit, and his "question" of her authority is insufficient. *Celotex Corp., supra.* The court therefore concludes that there is no genuine issue of material fact concerning Special Agent Burgess' authority to issue summonses.

Dr. Dean's second question concerns whether IRS guidelines were followed by Special Agent Burgess. Again, Burgess' fourth declaration specifically detailed the relevant guidelines and procedures, stated that she followed them, and explained what she did and why. Attached to the declaration are copies of relevant sections of the Internal Revenue Manual and relevant internal memoranda (doc. 45, Burgess Decl. tabs 6-12). The facts described by Special Agent Burgess in her declaration fit squarely within the procedures set out in the Manual and the relevant memoranda. Dr. Dean has presented no evidence that contradicts Special Agent Burgess' averments. Other than speculate on whether the procedures were followed properly, he offers no evidence in opposition. His only attempt at presenting evidence is a purported affidavit by one James V. Kelly, which will be discussed in the next section, and that affidavit does not contradict any relevant material factual statement by Special Agent Burgess concerning her manner and method of conducting the investigation. The court therefore concludes that there is no genuine issue of material fact about whether Special Agent Burgess followed the appropriate guidelines.

Dr. Dean's third disputed question goes to the necessity of the disclosures. There is no dispute that disclosures were made, and there is no dispute that such disclosures are prohibited unless a statutory exception applies. The exception is at 26 U.S.C. § 6103(k)(6), which provides

> **Disclosure by certain officers and employees for investigative purposes.--** An internal revenue officer or employee and an officer or employee of the Office of Treasury Inspector General for Tax

> Administration may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, *disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available,* with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. *Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.*

(Emphasis added). The United States argues that disclosure was necessary because a criminal tax investigation was being conducted and because the information sought was not otherwise available. As support, Special Agent Burgess averred that (1) in February 2002 Dr. Dean advised a bank that it should not respond to an IRS summons (issued as part of a civil investigation), and threatened the bank with legal action if it did (Burgess Decl. ¶ 8, tab 3), (2) in October 2002 Dr. Dean refused to answer any of Special Agent Burgess' questions and ordered her off his property (Burgess Decl. ¶ 3), (3) in October 2002 Special Agent Burgess informed Dr. Dean that he could provide any information that he would like the IRS to consider, but that he had provided none (Burgess Decl. ¶ 7, tab 3), (4) after summonses containing disclosures were issued, Dr. Dean challenged their legal validity in this court, and later refused to give a handwriting exemplar until ordered to do so by this court (Burgess Decl. ¶¶ 9, 10; *id.* tabs 4, 5).[4]

Evidence in opposition to these undisputed facts consists of a written statement by James Kelly (doc. 56, exh. 2), in which Mr. Kelly says that Special Agent Burgess told him on the telephone that she was with the Criminal Investigation Division of the IRS and that a criminal investigation was ongoing regarding Dr. Dean. He further states that such disclosure was unnecessary because he would have

---

[4] The court also notes that one of the subpoenas was served on John Graham, CPA. Dr. Dean cannot seriously argue that a CPA would voluntarily turn over his records to the IRS in violation of relevant ethical rules pertaining to public accountants.

Case No: 3:03cv65/MCR/MD

provided the same answers without any disclosures. However, Special Agent Burgess was not required to decide whether to make disclosures based on what Mr. Kelly would have done if asked. The reasonableness of the decision to disclose must be examined from the perspective of the one who made the disclosure. IRS regulations clearly give agents the authority to make such disclosures.

Before analyzing the merits of the necessity question, the court will review the law of the Eleventh Circuit that touches on this issue. Much of what is involved here was discussed in *Comyns v. United States*, 155 F. Supp.2d 1344 (S.D. Fla. 2001), the entirety of which decision was adopted by the Eleventh Circuit in affirming it. *Comyns v. United States*, 287 F.3d 1034 (11th Cir. 2002) ("Although this appears to be a case of first impression in this circuit, so that this decision establishes a precedent in this circuit, it is unnecessary for us to write a full-blown opinion because the opinion [on appeal] adequately reflects the facts, the law, and the reasoning that supports that holding."). In *Comyns* special agents of the IRS CID made disclosures as were done in this case, and Mr. Comyns sued. The court granted summary judgment in favor of the United States, holding that (1) there was an issue of fact on whether the disclosure was necessary as part of the investigation because My. Comyns averred that he did not refuse to cooperate with the investigation, but that (2) the United States was entitled to summary judgment under the "good faith" exception. Those same issues are under review here, and the court will consider them in reverse.

A. <u>Is the United States protected by the good faith exception?</u>

Title 26 U.S.C. § 7431, the statute sued under here, provides that a person may not recover damages for a disclosure that "results from a good faith, but erroneous, interpretation of [26 U.S.C. § 6103]." 26 U.S.C. § 7431(b). The good faith exception is judged by an objective standard. *Huckaby v. United States*, 794 F.2d 1041, 1048 (5th Cir. 1986); *Comyns*, 155 F. Supp. at 1350. The question is whether the agent's

conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. (internal quotations and citations omitted). In applying the objective standard, emphasis is on whether the agent followed the procedures and rules contained in the Special Agents Handbook. The law in the Eleventh Circuit, then, is that the good faith exception applies "where 1) the agent or agents who disclosed tax return information in violation of § 6103 followed the relevant agency regulations and/or manuals, and 2) the regulations and/or manuals followed by the agents constituted a reasonable interpretation of the law." *Comyns*, 155 F. Supp. 2d at 1350; 287 F.3d 1034.

      As to the first prong, Special Agent Burgess followed her agency regulations and instructions exactly. In a criminal investigation, she had a duty to interview the taxpayer and witnesses connected with the investigation. Int. Rev. Man. § 9.4.5.3(2). Gathering such information is necessary to assist in obtaining evidence that will be admissible in court if the investigation leads to prosecution. Int. Rev. Man. § 9.3.1.3.1(2). Disclosure of return information is allowed when necessary to obtain information not otherwise reasonably available, such as when the information is under the control of a third party. Int. Rev. Man § 11.3.21.3(5). Special Agent Burgess's telephone calls to third parties were discrete and specific based on her review and evaluation of bank records. (Burgess. Decl. ¶ 18). In each telephone call, she identified herself by name, stated that she was with the IRS Criminal Investigation Division, and that she was assigned to an investigation involving Dr. Dean. (*Id.*, ¶ 19). These disclosures were in accordance with IRS instruction and policy. (IRS memorandum of February 2, 2001, at Burgess Decl. Tab 9). The only personal contact was when Special Agent Burgess served a summons on Dillon Vickery. This was also done in accordance with the February 2, 2001 memorandum. (Burgess Decl. ¶ 20). All summonses issued to third parties contained the words "Criminal Investigation" as the issuing office, as required by IRS procedure.

Case No: 3:03cv65/MCR/MD

(Burgess Decl. ¶¶ 25-27; *id*, tabs 10-11). This was precisely the procedure followed by the agents in *Comyns*, 155 F. Supp. 2d at 1351, and Dr. Dean does not dispute these facts other than to present a statement by James Kelly which states that Special Agent Burgess told him that she was "conducting a criminal investigation regarding Dr. Ward Dean." (Doc. 52, exh. 2). This statement is discussed in detail in the next section. However, if Special Agent Burgess did indeed tell Mr. Kelly that she was "conducting a criminal investigation regarding" Dr. Dean, this is a distinction without a difference, since IRS procedure authorized her to say that she was with IRS Criminal Investigation, and was "assigned to an investigation involving Dr. Dean." (Burgess Decl. Tab 9, p. 2). The first is no more revealing than the second.

As to the second prong in determining whether the good faith exception applies, the *Comyns* court found explicitly that the IRS rules and procedures involved there, which are the same ones involved in this case, "constitute a reasonable interpretation of the law with respect to 26 U.S.C. § 6103 and the disclosure of criminal investigations to third-party witnesses." 155 F. Supp. 2d at 1351. The court's finding concerning the second prong is the law of this circuit. *Comyns v. United States*, 287 F.3d 1034 (11th Cir. 2002).

Based on the foregoing analysis, it is undisputed that Special Agent Burgess was acting in good faith when she made the third party contacts of which Dr. Dean complains. Therefore, the United States is not liable for any disclosures, and is entitled to summary judgment.

  B. <u>Is there a genuine issue of material fact concerning the necessity of making the disclosures?</u>

Under facts similar to those here, the *Comyns* court found that there were factual issues barring entry of summary judgment on one issue, because Mr. Comyns averred that he was and had been willing to cooperate with the investigation. Although the United States disputed this claim, it was sufficient to

raise an issue of fact. That is not the case here. Dr. Dean not only has not cooperated in this investigation, he has resisted it at every turn. That may be his right, but where he exercises that right, he should not be heard to say that seeking information from third parties was unnecessary. Other than the after-the-fact declaration by Mr. Kelly that he would have provided the information without the disclosures, Dr. Dean presents nothing that remotely suggests that any of his financial dealings were available to the IRS. The idea that Mr. Kelly or any other person would disclose financial information about himself or another person to a stranger on the telephone without being given a reason strains credulity, but it is not necessary for the court to make that credibility determination.

First, the decision on whether contact with third parties is necessary is not driven by third parties who have not yet been contacted. It is driven by what the agent knew at the time the decision was made. When Special Agent Burgess served her first Criminal Investigation summons, she did so knowing that Dr. Dean had earlier instructed his bank not to respond to a civil summons, had threatened to sue if it did, had refused to talk to Special Agent Burgess, had ordered her off his property, and when offered the opportunity to present anything he thought might be relevant to the investigation, had provided nothing.[5] It is clear from the facts, considered most favorably to Dr. Dean, that third party contacts were required if there was going to be an investigation. Since the contacts, and disclosures, were

---

[5] Dr. Dean makes much of his demand to attend a 26 C.F.R. § 601.107 conference, and the IRS' refusal to allow it. Not only was this demand further proof that any investigation would be on Dr. Dean's terms, his demand was misguided. Such a conference is available only after the criminal investigation is concluded and a recommendation for prosecution is being considered. "A taxpayer who may be the subject of a criminal recommendation will be afforded a Criminal Investigation conference [at which] . . . the IRS representative will inform the taxpayer by a general oral statement of the alleged fraudulent features of the case . . . and . . .[make] available to the taxpayer sufficient facts and figures to acquaint him with the basis, nature, and other essential elements of the proposed criminal charges against him." 26 C.F.R. § 107(b)(2). No such statement could be made, nor could any criminal charges be proposed, if there had not yet been an investigation. Moreover, the general purpose of the conference is clearly to give information to a taxpayer, not to receive it from him.

Case No: 3:03cv65/MCR/MD

done in accordance with the agency's good faith interpretation of the law, there is no issue of fact on whether the disclosures were necessary.

If the court were to find that Mr. Kelly's statement might raise a factual issue, that statement cannot be the foundation of an issue because it is fatally flawed. Mr. Kelly's statement is neither notarized nor given under oath or penalty of perjury. Indeed the only indication that Mr. Kelly might have considered himself to be under oath was the introductory sentence, which reads: "Pursuant to 28 U.S.C. § Section 1746, I, James V. Kelly, the undersigned affiant, state the following: * * *" (Doc. 52, exh.2). The cited statute provides that an affidavit may, with the same force and effect as if it had been sworn declaration, be valid if it is

> subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
> ***
> (2) *** "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." ***

28 U.S.C. § 1746. Mr. Kelly's statement made no mention of the penalty of perjury, and he did not *subscribe* the document by stating that the *foregoing* statement was true and correct. Whether his mere reference to the statement being made pursuant to 28 U.S.C. § 1746 is enough to make his statement "substantially within the . . . form" dictated by that statute has not been addressed by an appellate court. However, in *United States v. McNeal*, 82 F. Supp. 2d 946, 950 (S.D. Ind. 2000) the court held that a declaration that did not track the language of 29 U.S.C. § 1746 was nevertheless adequate where it contained the *critical elements* of (1) an acknowledgment of the penalties of perjury and (2) a statement that the information in the declaration was true. Mr. Kelly's statement contains neither. The mere citation to the statute, without any indication that Mr. Kelly knew what the statute provided, or that he was subjecting himself to possible prosecution for perjury if he spoke falsely, and without even a statement that what he was saying was true, is not

a statement substantially in the form prescribed by the statute. Consequently, it cannot be considered as evidence in opposition to a motion for summary judgment. Based on the foregoing, the court concludes that there is no material issue of relevant fact concerning whether the disclosures were necessary, and the United States is entitled to summary judgment.

In addition to challenging Special Agent Burgess's legal authority and the necessity of the disclosures, discussed above, Dr. Dean posits other factual issues that he says remain to be determined (doc. 52, pp. 2-3). These questions can be consolidated into the following general questions: (1) Did Special Agent Burgess have factual, as opposed to legal, authority to act? (2) Did Dr. Dean file a tax return for 2000? (3) Were Grand Jury proceedings lawfully conducted?

Special Agent Burgess has sworn that she is and was a special agent of the IRS with authority under applicable law and regulations to conduct investigations and issue summonses (doc. 45, Burgess Decl. ¶¶ 1,2). Dr. Dean asks whether she took the prescribed oath of office and whether that oath is appropriately on file, but he presents no evidence, other than his own speculative questions, that Special Agent Burgess' authority is factually in question. Her sworn declaration is sufficient to prove this "issue." Whether Dr. Dean filed a tax return for 2000 is irrelevant to the issues raised in this suit. The alleged failure to file a 2000 return was just one of the reasons for the investigation, and even if a return was filed, that fact has no bearing on whether the disclosures were wrongful. Whether the Grand Jury proceedings were lawfully conducted is also irrelevant. And if that is a viable issue, Dr. Dean has presented absolutely no evidence to show that grand jury proceedings are subject to challenge.

**CONCLUSION**

The court having considered all the pleadings, arguments and evidence

presented, and having viewed the evidence in the light most favorable to the non-moving party, the court concludes that there are no issues of material fact to be determined by the trier of fact, and that defendant is entitled to judgment as a matter of law.

Accordingly, it is respectfully RECOMMENDED that the defendant's motion for summary judgment (doc. 43) be GRANTED and that judgment be entered in favor of the defendant, United States of America.

At Pensacola, Florida this 14th day of May, 2004.


*/s Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**