IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WARD DEAN, M.D.,                              )
                                             )
                    Plaintiff,               )
                                             )
        -vs-                                 )Civil Action No. 3:03-CV-65-MCR-MD
                                             )
UNITED STATES OF AMERICA,                    )
                                             )
                    Defendant.               )
_____)

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION OF MAY 14, 2004

COMES NOW Ward Dean, M.D. (hereinafter "Dean"), the plaintiff herein, who

submits his objections to the Report and Recommendation of United States Magistrate

Judge entered on May 14, 2004, pursuant to 28 U.S.C. Section 636(b)(1)(C), Rule 72(b)

of the Federal Rules of Civil Procedure, and the Local Rules for the Northern District of

Florida, as follows:

**I.      STATEMENT OF THE ISSUES**

1.    Whether the determination of a summary judgment motion was premature,

since Dean was denied all of his discovery and motion to compel same.

2.    Whether the disclosure of the criminal nature of the investigation against Dean

was necessary.

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.

2004 MAY 25   AM 9: 38

FILED

3. Whether the good faith, but erroneous, interpretation applies in this matter.

## I.   STATEMENT OF THE FACTS

United States does not dispute that Special Agent Tanya Burgess ("Burgess"), as plainly testified to in her declaration (Decl. Burgess, para.'s 17 - 26), disclosed to third parties that the nature of the investigation against Dean was criminal.   (Magistrate Judge's Report and Recommendation, pp. 1-2 ("R&R")) United States concedes that such disclosures constitute return information as defined by 26 U.S.C. Section 6103.  (R&R p. 2)

Burgess testifies that she disclosed the criminal nature of the investigation against Dean on the face of summonses, return addresses on envelopes, letters, telephone and personal contacts.  (Decl. Burgess, para's 16-27).  However, the number of summonses, letters, return addresses on envelopes, and contacts are unknown.  (Id.)

## II.   ARGUMENT

Pre-existing case law makes clear that revealing the fact that a person is under "criminal investigation" during an IRS' investigation is prohibited by 26 U.S.C. § 6103. See, e.g., Diamond v. United States, 944 F.2d 431, 435 (8th Cir. 1991) (as a **matter of law**, IRS agent did not need to identify himself as a member of the Criminal Investigation Division to secure desired information).  In short, this is not a factual issue, because the courts have determined, as a matter of law, that disclosing the nature of an investigation as criminal violates § 6103.

The disclosure of "Criminal Investigation" on the summonses is neither necessary

nor a good faith, but erroneous, interpretation of the law.  See, e.g., <u>U.S. v. Barrett, Jr.</u>, 837 F.2d 1341, 1356 (5th Cir. 1988);  <u>Gandy v. United States</u>, 1999 U.S. Dist. LEXIS 1029, 99-1 U.S.T.C. P50,237 (E.D.Tx. 1999), aff'd, <u>Gandy v. United States</u>, 234 F.3d 281 (5th Cir. 2000).

The disclosure of "Criminal Investigation" on the return address of envelopes and letters is also proscribed by the IRS' Disclosure Litigation Reference Book.  The Handbook for Special Agents, amended on June 12, 1992, provides that "neither the signature block nor the ancillary heading of the letter should contain the words 'Criminal Investigation Division.' *The heading and return address may contain the necessary symbols* for the letter to be returned to the special agent.  It is difficult to accept [United States'] argument that the disclosure was therefore "necessary."  <u>Schachter v. United States</u>, 866 F.Supp. 1273, 1276 (N.D. Calif. 1994).[1]

The IRS' Disclosure Litigation Reference Book also proscribes the disclosures at issue herein.  It explains that the Handbook for Special Agents, IRM 9.3.1.3.3, contains the current guidance and proscribes the use of the words "criminal investigation division" in the ancillary heading (return address), text, or signature block of circular letters.  "Although the text does not explicitly say so, by extension, the words should **not** be used on the return address of the envelope in which the letter is sent, nor on any return envelope which may be enclosed for the recipient's convenience in responding."

---

[1] Affirmed by <u>Schachter v. United States</u>, 77 F.3d 490, 1996 U.S. App. LEXIS 8899, 96-1 U.S. Tax Cas. (CCH) P50152 (9th Cir. 1996).

Burgess was, therefore, expressly instructed in her own Special Agent's Handbook to only include "the necessary symbols" for a return address; i.e., "CID" or "CI" instead of the identifier "Criminal Investigation Division." Burgess blatantly violated her own Handbook provisions. These Handbook provisions are written to prevent the unauthorized disclosure of return information. See also Payne v. United States, 91 F. Supp.2d 1014 (S.D. Tex. 1999),[2] holding that oral and written disclosures that the nature of the investigation is criminal by using the identifier "Criminal Investigation Division" were unauthorized and awarding damages. The Payne Court provides an extremely detailed analysis of the IR Manual provisions, statutes, and regulations.

Burgess makes bald assertions of reliance on IRS procedures in her declaration. A close examination of her testimony, however, discloses that she did not in fact rely upon the memorandums. The February 2, 2001, March 5, 2002, and December 3, 2002[3] memos pertain to Gandy v. United States, 234 F.3d 281 (5th Cir. 2000). The only reasonable reading of these memos is that they authorize the inclusion of the "CI" acronym for criminal investigation, and not as an authorization to announce to the world that someone is under "criminal investigation".

---

[2]  Reversed and remanded to the district court to re-evaluate the good faith issue. Payne v. United States, 289 F.3d 377 (5th Cir. 2002). Good faith exception found on remand because the disclosures were made before the change to the Handbook for Special Agents. Payne v. United States, 290 F. Supp. 2d 742 (S.D. Tex. 2003).

[3]Burgess could not have possibly relied upon this memorandum, because it was issued after she served the summonses at issue herein.

Any reasoning in the memos that since the IRS is permitted to display credentials and badges, then it is OK to include "criminal investigation" on summonses is unreasonable. This logic would also permit the IRS to include the phrase on any correspondence, envelopes, and circular letters. In sum, these memos can only be read in light of the case authority as authorizing the acronym "CI" to be used.

A.  <u>Summary Judgment</u>.

It is elemental that summary judgment must be denied when a party has not been afforded the opportunity to obtain discovery. The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-51 (1986). The self-serving statements by Burgess did not rise to this standard. In determining whether a triable issue of material fact exists, the evidence must be considered in the light most favorable to the non-moving party. <u>Barlow v. Ground</u>, 943 F.2d 1132, 1134 (9th Cir. 1991).

This record discloses that Dean served written discovery requests on United States, and he filed a motion to compel. Dean's discovery requests were unanswered, and the Court denied his motion to compel. Although Dean mustered up all of the evidence he could in response to United States' summary judgment pleadings, it was improper for the Magistrate Judge to hear and determine the Government's motion until

Dean was afforded discovery.

B. The Disclosures were Unnecessary.

The dispositive issues are:  1) whether the United States made unlawful disclosures, a question of law applied to what Burgess has done; 2) whether the exception of § 6103(k)(6) applies, as to the complained of violations, a question of law; and 3) whether the United States acted in good faith, a question of fact applying a "reasonable man" standard to Burgess' conduct.  It simply cannot be disputed that the disclosures that Dean is under criminal investigation were unlawful.  The other issues go to civil and criminal liability.

Congress has made the willful disclosure of return or return information a felony. See, e.g., 26 U.S.C. Section 7213; United States v. Ely, 140 F.3d 1089 (5th Cir. 1998); United States v. Moore, 1995 U.S. App. LEXIS 522 (6th Cir. 1995); Ellison v. Buckley, 1991 U.S. App. LEXIS 23008 (4th Cir. 1991); United States v. Author Servs, 804 F.2d 1520 (9th Cir. 1986).

Congress enacted Section 6103 of the IR Code to protect taxpayers' privacy and to prevent the misuse of the confidential information obtained in the course of collecting taxes.  See S.Rep.No. 938, 94th Cong., 2d Sess. 19, 317-18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 3439, 3455, 3746-47.  Section 6103(a)(1) provides, in relevant part:

> Returns and return information shall be confidential, and except as authorized by [the Internal Revenue Code,] no officer or employee of the United States ... shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section.

"Return information" is a term of art that includes, among other things, the taxpayer's identity, *whether the IRS is <u>investigating</u> the taxpayer*, and any information the IRS obtains with respect to a return.   Section 6103(b)(2)(A) defines "return information" in broad terms as follows:

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, over assessments, or tax payments, *whether the taxpayer's return <u>was</u>, <u>is</u> <u>being</u>, <u>or</u> <u>will</u> <u>be</u> <u>examined</u> <u>or</u> <u>subject</u> <u>to</u> <u>other</u> <u>investigation</u> or processing*, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense...

Prior to the enactment of The Tax Reform Act of 1976, Section 7213 of the Internal Revenue Code prohibited disclosure "in any manner not provided by law." 26 U.S.C. Section 7213(a) (amended by P.L. 94-455, Sec. 1202(d), 90 Stat. 1686).   This language permitted courts to find a waiver of the right to confidentiality of the tax returns and to permit disclosure even though the regulations had not been complied with.   See e.g., <u>United States v. Liebert</u>, 519 F.2d 542, 546 (3rd Cir. 1975).

The amended version of Section 7213 states that disclosure is prohibited "except as authorized in this title." 26 U.S.C. Section 7213 (1980).   Thus, the statute, as amended, does not provide for disclosure beyond that specifically provided for in the "title," and it does not permit even federal courts to create judicial exceptions to the general prohibition against disclosure. <u>Olsen v. United States</u>, 594 F.Supp. 644, 646-47 (S.D.N.Y. 1984); Sen.Rep. No. 938, 94th Cong., 2d Sess. 318, reprinted in 1976 U.S. Code Cong. & Ad. News at 3747 ("the committee felt that returns and return information

should generally be treated as confidential and not subject to disclosure except in those limited situations delineated in the newly amended section 6103 where the committee decided that disclosure was warranted."). This prohibition against disclosure of the returns, except as provided by the statute, may not be circumvented even when the returns relate to a matter in issue during litigation. The IRS also provides conduct guidelines for Special Agents during investigations. See, e.g., Internal Revenue Manual--Administration, Investigative Procedures, 9382.1 (3) and (4); Internal Revenue Manual--Administration, 9382.2.

Section 6103 prohibits the disclosure of "return information" except as authorized by Title 26. Return information is "essentially all data associated or identified with a particular taxpayer" (Tierney v. Schweiker, 718 F.2d 449, 452 (D.C.Cir. 1983)), and includes the taxpayer's identity, the *fact that the taxpayer is under investigation or subject to further investigation*, and data that the Internal Revenue Service has collected about a return. 26 U.S.C. 6103(a) & (b). Even the *implication* that a taxpayer *is under investigation* constitutes return information. Mid-South Music Corporation v. United States, 818 F.2d 536 (6th Cir. 1987); In re Grand Jury Investigation, 688 F.2d 1068 (6th Cir), reh. denied, 696 F.2d 449 (1982) ("A taxpayer's name and *the fact that he is, was or will be subject to an investigation* regarding title 26 obligations, does constitute 'return information' under section 6103(b)(2)(A).").

C.  Good Faith, but Erroneous, Interpretation does not Apply.

That Congress specifically had in mind disclosures in the course of investigation

8

of an individual, civil or criminal, is reflected by Section 6103(k)(6).  This was the clear

congressional intent reflected by the Senate Report and in the strictly limited disclosure

provisions.  The Senate Report broadly defined the term return information:

> [T]o include the following data pertaining to a taxpayer: his identity, *the nature, source or amount of his income*, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments and tax payments. It also includes any particular of any data, received by, recorded by, prepared by, furnished to, or collected by the IRS with respect to a return filed by the taxpayer or with respect to the determination of the existence, or possible existence, of liability (including the amount of liability) for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense provided for under the code.

> Senate Report No. 94_938 Tax Reform Act of 1976 (hereinafter cited as "S.Rep."), reprinted in Internal Revenue Cumulative Bulletin, 1976_3 (hereinafter cited as "Bulletin"). S.Rep. p. 318, U.S. Code Cong. & Admin. News 1976, pp. 2897, 3748, Bulletin, p. 356.

Of special importance are the words which immediately followed the above:

"Information as to whether a taxpayer's return was, is being, or will be examined or are

subject to other *investigation* or processing *is also to be considered return information*."

S.Rep. p. 319, U.S. Code. Cong. & Admin.News 1976, p. 3748, Bulletin, p. 357.  The

intent to strictly limit disclosure is reflected by the Senate Report:

> IRS officials and employees would be permitted, *if no reasonable alternative exists*, to make limited disclosures of return information in connection with an audit or investigation to the extent necessary in arriving at a correct determination of tax, liability for tax, or the amount to be collected, or otherwise in the enforcement of any provisions in the Code.

> S.Rep. pp. 341_42, U.S.Code Cong. & Admin. News 1976, p. 377, Bulletin, pp. 379_80.

The report continues:

In certain instances, it may be necessary for IRS personnel, in obtaining information with respect to a taxpayer from a third party, to disclose the fact that the request for information is in connection with an audit or other tax investigation of the taxpayer. *In rare and extraordinary cases*, it may also be necessary for IRS personnel in obtaining information from a third party to disclose additional return information, such as the manner in which the taxpayer treated on his return a transaction with a third party. Disclosures under this provision are to be made only in situations and under conditions specified in the regulations....

S.Rep. p. 342, U.S.Code Cong. & Admin.News 1976, p. 377, Bulletin, p. 380.

It should not be forgotten that the Tax Reform Act of 1976 brought about revolutionary changes, not the least of which was the positive declaration that returns and return information are confidential. Likewise, as noted above, the Act defines "return or return information in the broadest way. Section 6103(b)(8) defines a "disclosure" equally broad, as "the making known to any person in any manner whatever a return or return information."

The Fifth Circuit summarized the intent of Congress this way:

Section 6103 is a *regulation of the conduct* of those who in the course of their duties as government employees or contractors glean information from tax returns. The regulation is prophylactic, *proscribing disclosure* by such an individual of any of such information so obtained by him. Plainly, Congress was not determining that all the information on a tax return would always be truly private and intimate or embarrassing. Rather, it was simply determining that since much of the information on tax returns does fall within that category, *it was better to proscribe disclosure of all return information*, rather than rely on ad hoc determinations by those with official access to returns as to whether particular items were or were not private, intimate, or embarrassing. Because such determinations would inevitably sometimes err, ultimately a broad prophylactic proscription would result in less disclosure by return handlers of such sensitive matters than would a more precisely tailored enactment.

Johnson v. Sawyer, 47 F.3d 716, 735 (5th Cir. 1995).

10

In the final analysis, common sense dictates that letters and envelopes associated therewith, summonses, and oral disclosures directed at business associates, patients, and others, disclosing to them that Dean is under criminal investigation without a single explanation as to why the disclosures of that information were necessary in order to obtain information is improper under Section 6103.  Common sense also dictates that no experienced IRS official would believe, in good faith, that such disclosures were authorized under Section 6103.  And most importantly, starting almost a quarter of a century ago before the unauthorized disclosures in the instant matter occurred, the federal courts repeatedly found such disclosures unauthorized.  Yet, after almost 25 years, the majority of Courts have continued to allow the IRS agents illegal and criminal conduct to go unpunished by finding "good faith".[4]

How can a disclosure that the courts have stated is unlawful for 25 years, even overlooking the plain language of the statutes, possibly be made in good faith.  As discussed above and below, the IRS itself has expressly instructed Special Agents that they cannot indirectly disclose that the nature of an investigation is criminal by including the identifier "Criminal Investigation Division", much less "Criminal Investigation".  It is

---

[4]The truth is that the federal courts have allowed government officials to be unleashed on American citizens to be punished for some perceived violation of over 2,000,000 federal statutes, regulations, and rules that either have a criminal or civil sanction attached thereto, while government officials' criminal conduct is effectively sanctioned.  The vast majority of these laws are patently unconstitutional, and some of them are anti-constitutional.

11

absurd to even attempt to rationalize that not placing such identifier on the correspondence, but, instead, placing it on a summons is authorized, or placing it somewhere else such as the envelope containing the summons, letter, or a certified mail return receipt, etc.

The issue herein is not whether the disclosures by Burgess were necessary to conduct an effective investigation. This simply is not relevant to unauthorized disclosures proscribed by 26 U.S.C. Section 6103. "The questions are whether the disclosures are 'necessary' to ***obtain the information*** sought and whether the information sought is 'otherwise reasonably available.'" Barrett v. United States, 795 F.2d 446, 451 (5th Cir. 1986). To the extent that third-party communications were necessary, Burgess was required to abstain from improper disclosures. Burgess did not need to disclose any more than Dean's name, arguably his occupation, and the request. How could the disclosures of a criminal investigation be necessary to obtain information?

Every court addressing whether the disclosures at issue herein are necessary has held that it is not necessary in order to obtain the information. In the instant matter, Burgess repeatedly disclosed that Dean is under criminal investigation.

Certainly, the signature block, heading on letters, return envelopes and addresses, summonses, oral disclosures, and other disclosures should be considered in determining whether unauthorized disclosures have been made.

12

Even by assuming, arguendo, that the phrase "Criminal Investigation Division" or merely and arguably "Criminal Investigation" were not developed with an eye toward making an otherwise illegal disclosure, and not used with the specific intention of disclosing that the undersigned was under criminal investigation, the simple fact remains that it does disclose that Dean is under criminal investigation, and such disclosures are prohibited under the law. Of course, Dean contends that such a proposition is absurd.

In Schachter v. United States, 866 F.Supp. 1273 (N.D.Calif. 1994), the Court held:

> [United States] asserts that the disclosure was "necessary" under 26 U.S.C. 6103. [United States] suggests that the phrase "necessary" does not mean it was absolutely required, only that it would be appropriate or helpful, inter alia, in delivery of the mail, identification of the agent, and in encouraging forthrightness by the agent and respondent. The [United States] notes that in personal interviews, the special agent would have been required to identify himself, including the division for which he worked.
>
> However, [United States'] position is not convincing. Lavin sent the letters assertedly in an attempt to determine the nature of checks deposited in a bank account. ... The government offers no reason why the disclosure was necessary to determine whether the checks were in fact sales revenues of Cal-Ben. Id. [United States'] arguments regarding promotion of forthrightness and proper mail delivery appear to be post hoc rationalizations that lack merit. For instance, the self-address return envelopes were marked simply "CID", apparently sufficient identification to allow the mail to be returned to the proper person. ... Further, the new Handbook for Special Agents, amended on June 12, 1992, provides that "neither the signature block nor the ancillary heading of the letter should contain the words 'Criminal Investigation Division.' *The heading and return address may contain the necessary symbols* for the letter to be returned to the special agent." It is difficult to accept [United States'] argument that the disclosure was therefore "necessary."

This conclusion is similar to determinations in other courts. In ***Calhoun v. Wells***, the court found: "The information sought by said letters could have been obtained equally well and with far less damage to the plaintiff if the recipients of those letters had been simply been advised that the Internal Revenue Service was conducting an investigation of the plaintiff's income tax liabilities for the years 1974, 1975, and 1976." 80-2 U.S. Tax Cases 9643 (DC SC 1980).

Schachter, 866 F.Supp. at 1276.

Burgess was, therefore, expressly instructed in her own Special Agent's Handbook to only include "the necessary symbols" for a return address; i.e., "CID" instead of the identifier "Criminal Investigation Division" or "CI" for "Criminal Investigation". Burgess simply violated her own Handbook provisions. These Handbook provisions are written to prevent the unauthorized disclosure of return information that occurred herein.

In the case of Calhoun v. Wells, 80-2 U.S.T.C. 9643 (D.S.C. 1980), a complaint was filed by an individual alleging that the Internal Revenue Service, through its agents, had violated Section 6103 by mailing letters to clients informing them that the taxpayer was being investigated for possible violations of criminal provisions of the Internal Revenue Code. The Calhoun Court found that there was no need to state in the letters that the plaintiff was under criminal investigation by the IRS, and that such disclosures were in violation of 26 U.S.C. Section 6103. Calhoun, 80-2 U.S.T.C. at 85,140. Calhoun was, however, denied recovery due to good faith considerations. Id. At footnote 15 of the Calhoun case, the court noted:

> Throughout the trial of this case, the defendant Internal Revenue Service argued that paragraph 247.2 of the Special Agent's Handbook ... requires that the recipient of a circular letter, such as the ones sent in this case, be at least indirectly informed that the person about whom the information sought therein was under criminal

14

investigation, because it requires all such letters to be sent in the name of the Chief, Criminal Investigation Division. No useful purpose could be accomplished by addressing that point.   Suffice it to say that the manual provision in question does not have the force and effect of law, and is in no way binding on this court. Further, if interpreted as the defendant Internal Revenue Service argues, this court concludes that the manual provision referred to would require an unnecessary disclosure of return information in violation of 26 U.S.C. Section 6103.

It is certain that the Calhoun Court found that requiring correspondence to be sent in the name of the Chief, Criminal Investigation Division would "require an unnecessary disclosure of return information in violation of 26 U.S.C. Section 6103." Thus, the IRS has been put on notice for a quarter century that the inclusion of an identifier, such as "Criminal Investigation Division," is unnecessary and an unauthorized disclosure of return information.

Copies of Section 347 as it read before and after the "Calhoun amendment"[5] were attached to the pleadings filed in the case of Diamond v. U.S., 944 F.2d 431 (8th Cir. 1991). There were two primary changes in Section 347 of the *Handbook for Special Agents*. First, Section 347.2 contained suggested wording that "the Internal Revenue Service is conducting an investigation of...". Second, the letters before Calhoun were to be sent in the name of the Chief, Criminal Investigation Division, while after Calhoun the letters are to be signed by the special agent with prior approval of the Chief, Criminal Investigation Division, and the special agent was specifically directed to include the title

---

[5]The IRS specifically amended Section 347 Handbook for Special Agents in response to the decision of the District Court in Calhoun. In Diamond v. U.S., 944 F.2d 431 (8th Cir. 1991), in the Government's Answer to Request for Admission #7, also attached to Appellant's Petition for Rehearing as Exhibit B, Appeal No. 90-2890SID, is where this admission is on public record.

"Special Agent" and "Criminal Investigation Division" in the signature block. As discussed below, this was amended after the <u>Diamond</u> case, and instructs Special Agents <u>not</u> to include said identifier.

It should be immediately apparent that the amendments to Section 347.2 did not result from a good faith but erroneous interpretation of Section 6103. Rather, the directive that the special agent include the identifier "Criminal Investigation Division" was a blatant maneuver by the IRS, the same as it is continuing to maneuver today, to continue to knowingly disclose that the taxpayer is the subject of criminal investigation despite the <u>Calhoun</u> Court's findings that such disclosures were unnecessary and unlawful. Most importantly, the IRS specifically argued in the <u>Calhoun</u> case that the identifier "Criminal Investigation Division" indirectly discloses that the taxpayer was under criminal investigation. <u>Calhoun</u>, 80-2 U.S.T.C. at 85,138 (Footnote 15). The <u>Calhoun</u> Court noted that if the IRS' interpretation of the signature block requirement was correct, the Manual would be requiring an unnecessary disclosure of return information in violation of 26 U.S.C. Section 6103. <u>Id</u>.

Since the <u>Calhoun</u> Court decision, the IRS and Special Agents have known that they could not disclose that a taxpayer is under criminal investigation and, in fact, the IRS claimed to have revised the ***Handbook for Special Agents*** to avoid such disclosures in the **text** of letters. The IRS and Burgess knew, or should have known, as early as 1980, that the use of the identifier "Criminal Investigation Division" by whatever means it is used is an indirect disclosure that a taxpayer was under criminal investigation. The

16

IRS and Burgess knew, or should have known, that the <u>Calhoun</u> Court believed that the use of the identifier "Criminal Investigation Division" in the signature block of a circular letter was an unnecessary disclosure of return information in violation of 26 U.S.C. Section 6103. And, the IRS was aware that disclosures could be either direct or indirect. Section 384.2(4) *Handbook for Special Agents*.

In <u>Barrett v. United States</u>, 100 F.3d 35 (5th Cir. 1996), Dr. Barrett had considerable litigation involving his attempts to enjoin the IRS from disclosing that he was under criminal investigation with additional mailings. In the decision in <u>U.S. v. Barrett, Jr.</u>, 837 F.2d 1341, 1356 (5th Cir. 1988), the majority ruled that a district court cannot conditionally enforce an IRS summons to insure that the IRS will not violate the non-disclosure of return information provisions contained in 26 U.S.C. Section 6103. Judge Brown, joined by three other judges, wrote a separate opinion concurring in part and dissenting in part with the majority. In arguing that the district court did have the power to conditionally enforce an IRS summons, Judge Brown opined that: (1) revealing that a taxpayer is under criminal investigation is a disclosure of return information, and (2) the disclosure that the taxpayer is under criminal investigation was not necessary. Judge Brown's comments regarding the disclosure of the criminal investigation as not being unnecessary are particularly applicable to the disclosures at issue herein:

> With a stringent code of confidentiality, excused only by similarly stringent exceptions, we come then finally to whether the disclosure of criminal investigation was necessary in obtaining information, which would not otherwise [be] available.' See Section 6103(k)(6).

17

I would add to the cumulative literature of Barrett I, II and III, only that to this day there has been no statement, either from on high in the solicitor's office or the Department of Justice, or on the lower rungs of the IRS field agents, concerning why it was reasonably necessary to inform the patient interviewees that Dr. Barrett was under criminal investigation. *All that the IRS could conceivably want from their inquiry was (I) the amount which the doctor charged the patient for the reconstructive plastic surgery, (iia) the amount that the patient paid, (iib) whether paid in cash or check, and (iii) the amount, if any, paid by an insurer*. The fact that Dr. Barrett was facing criminal prosecution and punishment would have nothing to do with those inquiries. In any event, as a revelation was not necessary to obtain information, there is no need to question whether the information was not otherwise available. The requirements of Section 6103(k)(6) were not met. The disclosure not being exempt, there was an explicit violation of Section 6103 demand for confidentiality.

Here the taxpayer is branded as a criminal suspect, with no criminal charge yet filed, much less tried. The statement of criminal investigation was a disclosure of return information. The disclosure was not authorized. It was a violation of statutorily imposed confidentiality.

Even more than litigious frustration, the damage remedy -- no matter how extravagant the damage award -- cannot undo the harm wrought by the illegal disclosure. Here, revealing that the Doctor is under criminal investigation is of irreparable damage to his personal and professional reputation. Congress, in furtherance of its goal of strengthening the rights of taxpayers, intended that taxpayers should not be exposed to such damning, untried, unproved accusations.

Barrett, 837 F.2d at 1356.

The decision by four Appellate Justices through Judge Brown with regard to the Barrett disclosures hold true in this case. There is no conceivable reason why it would be necessary to inform Dean's associates, patients, or others that he is under criminal investigation. The return envelopes, associated correspondence, and summonses could have been signed and/or provided a return address to simply the Special Agent, without the additional language being added informing these third-parties that the Special Agents

18

were part of the Criminal Investigation Division of the Internal Revenue Service. Clearly, the summonses stating "Criminal Investigation," as well as the return addresses on envelopes and on letterheads are as blatant of a disclosure as any can be, unauthorized by law, and a criminal violation of the law.  See also <u>Heller v. Plave</u>, 657 F.Supp. 95 (S.D.Fla. 1987);   <u>Heller v. Plave</u>, 66 AFTR2d 90-5746, 90-5748 (S.D.Fla. 1990); <u>Diamond v. U.S.</u>, 944 F.2d 431, 434 (8th Cir. 1991); <u>Marre v. U.S.</u>, 70 AFTR2d 92-5159 (S.D.Tex. 1992); <u>Mallas v. United States</u>, 993 F.2d 1111 (4th Cir. 1993); <u>Marre v. United States</u>, 38 F.3d 823 (5th Cir. 1994); <u>Barrett v. U.S.</u>, 51 F.3d 475 (5th Cir. 1995); <u>Miller v. U.S.</u>, 66 F.3d 220, 223 (9th Cir. 1995); <u>Jones v. United States</u>, 97 F.3d 1121, 1124-25 (8th Cir. 1996); <u>Gandy v. United States</u>, 1999 U.S. Dist. LEXIS 1029, 99-1 U.S.T.C. P50,237 (E.D.Tx. 1999), aff'd, <u>Gandy v. United States</u>, 234 F.3d 281 (5th Cir. 2000).

The Court should not continue to stand idly by while the IRS subjects Dean to the ridicule and humiliation of being labeled as a criminal tax evader in the eyes of his fellows by the damning disclosures that he is the subject of a criminal investigation.  This case presents a perfect illustration of the harm which has been brought as a result of the courts protecting IRS' agents criminal conduct.  Despite the instruction in the IRS Manual that "caution must be exercised not [to] damage the reputation of the taxpayer by making [mailings, oral disclosures, business cards etc.] either offensive or suggestive of any wrongdoing by the taxpayer."  5 CCH, Internal Revenue Manual, para. 9781 ch. 347 at 26,891, this is exactly what Burgess did and will continue to do until sanctioned.

The IRS has branded Dean as a criminal suspect, with no criminal charge yet filed,

19

much less tried.  The disclosures of a criminal investigation were disclosures of return information. The disclosures were not authorized.  They are violations of statutorily imposed confidentiality.  The remedy for violation of the Tax Reform Act of 1976 is possible criminal prosecution of the offending Special Agents or a damage suit against the United States. The instant action is the damage suit, but the Magistrate Judge has expressly allowed the IRS to continue violating the Act with absolute impunity.  The Court could have ended the illegal disclosures, *sua sponte*, at any time, but it has chosen not to do so.

It is patently obvious that the damage remedy affords no real protection to Dean. The damage suit remedy is fruitless.  Prospective criminal penalties lie in the almost limitless discretion of the prosecutor.  The prosecutor himself has joined in on the unauthorized disclosures as well by acting in active concert with Burgess.  Considering that the Department of Justice and U.S. Attorney's Office are the principal advocates against Dean, and they are working with Burgess, there is no realistic likelihood that criminal prosecution would ever be initiated against her.

Even more than litigious frustration, the damage remedy -- no matter how extravagant the damage award -- cannot undo the harm wrought by the illegal disclosures. Here, revealing that Dean is under criminal investigation is of irreparable damage to his personal and professional reputation. Congress, in furtherance of its goal of strengthening the rights of individuals, intended that they should not be exposed to such damning, untried, unproved accusations.

20

The President must comply with Section 6103. The Congress and its committees must comply with Section 6103. The Department of Justice and all other executive departments or agencies must comply with Section 6103.[6] But apparently, Special Agent Burgess need not, as the Court has to the present date expressly authorized Burgess' illegal conduct by delaying justice and failing to remedy the illegal conduct.

Congress enacted the provisions of 26 U.S.C. §§ 6103 and 7431 to protect the public from unlawful disclosures of return and return information. The Congressional concern was so strong that a criminal sanction was enacted. Section 7213(a)(1). In U.S. v. Richey, 924 F.2d 857 (9th Cir. 1991), the Ninth Circuit ruled that the strong policy of keeping tax return information confidential outweighed a criminal defendant's right to free speech in upholding a criminal conviction for unlawful disclosure of return information. Certainly, those strong policy considerations regarding the confidentiality of tax return information are equally applicable here.

---

[6] Section 6103 takes precedence over even the Freedom of Information Act. See, e.g., Church of Scientology v. Internal Revenue Service, 484 U.S. 9, 108 S. Ct. 271, 98 L. Ed. 2d 228 (1987).

## CONCLUSION

For the foregoing reasons, the Court should find that the Magistrate Judge erred in his Report and Recommendation. Accordingly, the Magistrate Judge's Report and Recommendation must be rejected in its entirety.

DATED this 25 day of May, 2004.

Ward Dean, M.D.
Plaintiff pro se
8799 Burning Tree Road
Pensacola, Florida 32514
850-484-0595

## CERTIFICATE OF SERVICE

I, Ward Dean, M.D., certify that on this 25 day of May, 2004, mailed a true and correct copy of the foregoing to MICHAEL J. SALEM & LINDSEY W. COOPER, JR., Trial Attorney, Tax Division, U.S. Department of Justice, P .0. Box 227, Ben Franklin Station, Washington, DC 20044, at the last known address.

Ward Dean, M.D.
Plaintiff pro se
8799 Burning Tree Road
Pensacola, Florida 32514
850-484-0595

22